1

THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT
8                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE

9  PETER B., individually and as guardian of     )
10 M.B., a minor,                                 )      Case No. 2:16-CV-01904-BAT
                                                  )
11                            Plaintiff,          )      DEFENDANTS' MOTION FOR
                                                  )      SUMMARY JUDGMENT
12        v.                                      )
                                                  )      NOTE ON MOTION CALENDAR:
13 PREMERA BLUE CROSS, MICROSOFT                  )      OCTOBER 19, 2017
   CORPORATION, and the MICROSOFT                 )
14 CORPORATION WELFARE PLAN,                      )      ORAL ARGUMENT REQUESTED
                                                  )
15                            Defendant.          )
   _____       )

16        Pursuant to Federal Rule of Civil Procedure 56, Defendant Premera Blue Cross

17 ("Premera"), and Defendants Microsoft Corporation and Microsoft Corporation Welfare Plan

18 (collective, "Microsoft") move for dismissal of Plaintiff Peter B.'s Complaint.

19                          I.       INTRODUCTION

20        Plaintiff Peter B., seeks coverage under his ERISA health benefit plan—the Defendant

21 Microsoft Corporation Welfare Plan ("the Plan")—for boarding school tuition for his son, M.B.

22 The  Plan, which is administered by Defendant Premera Blue Cross ("Premera"), paid for the

23 tuition for over two months, but denied coverage for tuition for an extended stay  because it was

24 not medically necessary under the Plan terms.

25        The Court should dismiss this action as a matter of law (regardless of whether the standard

26 of review is abuse of discretion or de novo) because, as part of Premera's Internal Appeal process,

27 Premera included the participation of an "Independent Physician Reviewer", relied in part on his

MOTION FOR SUMMARY JUDGMENT - 1
CASE NO. 2:16-CV-01904-BAT

opinion in determining that the tuition payments were not medically necessary, and Premera's decision was subsequently affirmed by an Independent Review Organization as required by Washington state law. Peter B. has not offered and cannot offer any competent admissible medical evidence to support his claim or contravene the decisions of the independent reviewers.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Plan and Premera as Third-Party Administrator.

Peter B. is a participant in the Microsoft Corporation Welfare Plan ("the Plan"), and M.B., Peter's son, is a beneficiary of the Plan. Complaint, ¶¶ 2, 6. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 et. seq., of the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* Premera is the Plan's third-party administrator. Complaint, ¶ 4; Exhibit 1 (Premera-Microsoft Administrative Services Contract, "ASC"); *see* Declaration of G. Payton. As such, Premera has complete discretion to accept or deny claims, but the Plan is financially responsible to pay them. *See infra* at 9-10; Exhibit A (ASC, pp. 3-4).

### B.   The Daniels Academy.

In this action, Peter B. claims reimbursement from the Plan for tuition for his son M.B.'s residency and treatment at Daniels Academy, a self-described "boarding school for boys" who suffer from "learning disabilities or social differences" that provides a "residential, homelike environment to introduce a new set of coping skills for our students who have learning disabilities or social differences." Ex. 2. Daniels Academy is located in Uintah County, Utah[1]. Ex. 2.

During the relevant time period, M. B. was 16-years-old, and had been diagnosed with "autism spectrum disorder (a serious neurodevelopmental disorder that impairs a child's ability to communicate and interact with others), obsessive -compulsive disorder (an anxiety disorder in

---

[1] The Complaint alleges, "[Daniels Academy] is a licensed health care provider in the State of Utah and provides residential treatment for adolescent boys with mental health conditions -- specifically, autism spectrum disorders, pervasive developmental disorders, social pragmatic communication disorders, and attention and anxiety disorders." Complaint, ¶7. However, there is no evidence in the record that Daniels Academy itself carries any license, though its website identifies various staff who are licensed in certain mental health care disciplines. The website identifies Daniels as a "boarding school." Ex. 2.

MOTION FOR SUMMARY JUDGMENT - 2
CASE NO. 2:16-CV-01904-BAT

which people have unwanted and repeated thoughts, feelings, ideas, sensations (obsessions), or behaviors that make them feel driven to do something), and mood related problems."  Ex. 8 [PRE_BER000273]; Complaint, ¶¶ 15-29.

Peter B. seeks over $100,000 for tuition charged by or paid to Daniels Academy for M.B.'s residency and treatment at Daniels Academy for a period subsequent to Premera's denial of coverage.  Complaint, ¶ 43. The care provided at Daniels Academy is not "acute care," but "sub-acute residential treatment."  Complaint, ¶ 45.

On its website, Daniels Academy describes itself as follows:

An Authentic Setting

Most often students with learning disabilities or differences benefit from close relationships in a low-stimulus setting. Daniels Academy is a small boarding school for boys with no more than 33 students enrolled at any given time. Each of our residences reflect a natural home environment and are specifically tailored to support the needs and developmental focuses of our students. Students receive individual attention and mentoring daily by caring staff who understand the nature of learning disabilities and differences. Each student is considered individual with unique strengths, talents and needs. The Daniels Academy team develops an individualized educational, treatment, and sensory plan for each student.

Over time, we've learned that no two students in this audience are alike. As a result, we focus on individualized care. We respect and encourage the unique strengths and talents of our students.

Ex. 2.

Who We Are

At Daniels Academy, we use our residential, homelike environment to introduce a new set of coping skills for our students who have learning disabilities or social differences to learn and practice in their daily lives. At our boarding school for boys, students spend time with caring, professionally-trained coaches, therapists, and teachers to help them develop their skills through academics, therapy, adventure education, and residential life.

Ex. 2.

C.     **Premera's Medical Policy for Residential Treatment Centers.**

The plan excludes from coverage services that are not medically necessary as follows:

MOTION FOR SUMMARY JUDGMENT - 3
CASE NO. 2:16-CV-01904-BAT

**Exclusions and limitations**

- Services or supplies not medically necessary for diagnosis, care, or treatment of a disease, illness, injury, or medical condition, except for the following: (a) newborn nursery care covered under the hospital benefit; (b) male circumcision benefit; (c) sterilization benefit; (d) termination of pregnancy benefit; (e) infertility benefit; (f) hospice care benefit; and (g) well-child care and adult physical exam benefits.

**Health plan terms**

**Medically necessary**—A covered service or supply that meet certain criteria including:

- It is essential to the diagnosis or the treatment of an illness, accidental injury, or condition that is harmful or threatening to the enrollee's life or health, unless it is provided for preventive services when specified as covered under this plan.

- It is appropriate for the medical condition as specified in accordance with authoritative medical or scientific literature and generally accepted standards of medical practice.

- It is a medically effective treatment of the diagnosis as demonstrated by the following criteria:

  o There is sufficient evidence to draw conclusions about the positive effect of the health intervention on health outcome.

  o The evidence demonstrates that the health intervention can be expected to produce its intended effects on health outcomes.

  o The expected beneficial effects of the health intervention on health outcomes outweigh the expected harmful effects of the health intervention.

- It is cost-effective, as determined by being the least expensive of the alternative supplies or levels of service that are medically effective and that can be safely provided to the enrollee. A health intervention is cost-effective if no other available health intervention offers a clinically appropriate benefit at a lower cost.

- It is not primarily for research or data accumulation.

- It is not primarily for the comfort or convenience of the enrollee, the enrollee's family, the enrollee's physician or another provider.

- It is not experimental or investigational.

- It is not recreational, life-enhancing, relaxation or palliative therapy, except for treatment of terminal conditions.

MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 2:16-CV-01904-BAT

> For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature that is generally recognized by the relevant medical community, Physician Specialty Society recommendations, the views of physicians practicing in relevant clinical areas, and any other relevant factors.

Ex. 4 [PRE_BER001389].

Premera's criteria for evaluating the medical necessity of residential treatment are set forth in "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment." The policy stated that "[p]sychiatric residential treatment may be considered medically necessary when treatment is provided in a licensed psychiatric residential treatment or sub-acute treatment facility or a psychiatric residential treatment or sub-acute treatment unit in a licensed hospital, and the criteria listed below are met." Ex. 5 [PRE_BER001391]. The document then proceeds to list eight pages of detailed and objective criteria. Ex. 5 [PRE_BER001391- PRE_BER001398]. Among other things, these criteria provided that residential treatment is medically necessary for a temporary stay to stabilize a patient until he or she can be transferred to a lower level of care. *Id.*

### C.    M.B.'s Claim for Residential Treatment is Reviewed and Denied by Premera and Two Independent Reviewers.

Claims were submitted to Premera for M.B.'s residency and treatment at Daniels Academy, and Premera issued payments for the claim between January 1, 2015 and March 11, 2015. Complaint, ¶ 34. Then, in a letter dated March 11, 2015, Premera notified Peter B. that the Plan would deny coverage after March 11. Complaint, ¶ 35; Ex. 3 [PRE_BER000255-56]. Premera notified Peter B. that for chronically non-acute cases such as M.B.'s, the Plan provides coverage for residential treatment only where short-term stabilization treatment was required. *Id.* Premera noted that Daniels Academy expected M.B.'s residency would last for fourteen months, and therefore Premera concluded that there was no coverage under the Plan for such services. *Id.* In addition, Premera notified Peter B. that the claim was deficient because Daniels Academy had not developed a discharge plan for M.B., which was required by the Plan. *Id.*

Therefore, as Premera notified Peter B., M.B.'s residency at Daniels Academy was not

MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 2:16-CV-01904-BAT

1  medically necessary, and the plan would not cover Daniels Academy tuition payments.

2  Complaint, ¶ 36; Ex. 3 [PRE_BER000255-56]. Premera advised Peter B. that its evaluation of

3  the medical necessity of M.B.'s residential treatment was based on application of Premera's

4  criteria set forth in "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment," and

5  "review of the information given to us by Daniels Academy." *Id.*

6        On September 3, 2015, Peter B. appealed the denial of coverage through Premera's

7  internal appeal process ("Internal Appeal"). Complaint, ¶ 37. Peter B.'s Internal Appeal letter

8  argued that the Plan's coverage did not impose any limitation that treatment be medically

9  necessary or any time limit on treatment for mental health conditions. *Id.* Peter B. also provided

10  a detailed chronology of M.B.'s development and past treatment; the appeal letter included copies

11  of Premera's "Utilization Management Guideline", relevant pages from the Plan and from The

12  Principles of Medical Ethics, and medical records and reports from M.B.'s therapists. *Id.*  Peter

13  B. also included two letters from M.B.'s treating therapists, Peter Weiss, MA, LMHC and

14  Douglas W. Maughan, LCMHC, who was designated M.B.'s "Primary Therapist" at Daniels

15  Academy and is a Daniels Academy employee. Ex. 2; Ex. 6 [PRE_BER000492-93]; Ex. 7

16  [PRE_BER000495].

17        Mr. Weiss treated M. B. from December 31, 2013 to September 24, 2014 for Obsessive

18  Compulsive Disorder. Ex. 7 [PRE_BER000495]. He has had no contact with M.B. since

19  September 24, 2014, and had no contact with Daniels Academy in connection with M.B.'s

20  treatment. *Id.* In conclusion, he wrote, "I referred [M.B's] parents to an educational consultant

21  who then guided the parents to an out-of-state therapeutic residential program. It is my hope that

22  [M.B.], with a therapeutic/residential level of support, will be able to regain important aspects of

23  his life and return to home and a mainstream school program." Ex. 7 [PRE_BER000495]. Mr.

24  Weiss's letter was dated August 6, 2015, nearly a year after he last treated M.B. *Id.*

25        Mr. Maughan's letter was dated August 11, 2015. At that time, M.B. had spent over

26  seven months at Daniels Academy (since January 1, 2015). Ex. 6 [PRE_BER000492-93]. In

27  terms of the benefit that Daniels Academy could provide M. B. if he stayed there, the crux of Mr.

Maughan's opinion was that M. B. "has recently started to take accountability and responsibility for his choices rather than assigning blame to external things or people, taking Victim Stance, or Externalizing Blame, both cognitive distortions that interfere with the ability to take responsibility." Ex. 6 [PRE_BER000492]. According to Mr. Maughan, "[c]linically this is the first step in a persons [sic] treatment that indicates they have a desire to change and believe that they can be responsible for that change." Ex. 6 [PRE_BER000492-93]. However, "[M.B.] continues to struggle daily and engages in continual boundary testing, pushing, and crossing. When he does this he looses [sic] his privileges for a time. Priority Assessment is a teaching tool used at Daniels Academy where the student is given a chance to make a healthy and effective choice and if their choice is to continue ineffective and healthy [sic] behaviors they loose [sic] their privileges until the make proper repairs and complete a Social Behavior Map so they think about their impact on themselves and others around them as they made the choice. Safety is another consequence where students loose privileges for 24 to 48 hours for demonstrating unsafe behaviors. [M.B.] consistently needs redirection and teaching around healthy and appropriate choices and spends an inordinate amount of time with these two precautions." "He has much work to do and it is anticipated that while the interventions of Priority Assessment and Safety are significant that he will soon start making choices that will diminish the need for correction." Dr. Maughan concluded, "It is my recommendation that [M.B.] continue in Residential Treatment Level of Care to ensure and until he reaches a level of functioning that is conducive to success in a less restrictive environment." Ex. 6 [PRE_BER000492-93].

In Premera's Internal Appeal process, Premera included the participation of an "Independent Physician Reviewer," William Holmes, MD, a psychiatrist who is Board Certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry. Ex. 8 [PRE_BER000269-275]. Dr. Holmes's opinion included a "conflict of interest statement" certifying his independence and an absence of any conflict of interest on his part. *See* Ex. 8 [PRE_BER000274-75].

Dr. Holmes, a physician and medical specialist, reviewed Peter B.'s appeal submission,

MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. 2:16-CV-01904-BAT

1   other relevant claim information including from Daniels Academy, M.B.'s medical records,

2   Premera's Medical Policy titled, "Behavioral Health: Psychiatric Residential Treatment Number

3   3.01.508," and the Plan's coverage terms and conditions.  Ex. 8 [PRE_BER000273].  An internal

4   Medical Director and physician employed by Premera who is Board Certified in Public Health

5   and General Medicine also reviewed Premera's review. Ex. 9 [PRE_BER000033-36]; Ex. 8

6   [PRE_BER000269-275].

7       On October 2, 2015, Premera denied Peter B.'s Internal Appeal.   Ex. 9

8   [PRE_BER000033-36].  Premera affirmed its prior determination that "the residential treatment

9   center stay from March 12, 2015, and onwards is not considered medically necessary," "based

10  on the plan language, which specifically excludes benefits for services or supplies that are not

11  medically necessary."  Ex. 9 [PRE_BER000033].  Premera based its decision in part on the

12  opinion of Dr. Holmes, the independent psychiatrist unaffiliated with Premera who reviewed the

13  appeal. Ex. 9 [PRE_BER000033].  Dr. Holmes concluded, "[t]he residential treatment center is

14  no longer within standard of care. The patient is in need of long-term placement, but this is

15  different than the benefit or need for residential treatment."  Ex. 8 [PRE_BER000271].

16      According to Dr. Holmes, M.B.'s chronic sub-acute condition had stabilized, and

17  residency at Daniels Academy after March 11, 2015 was not medically necessary: "The patient

18  continues to display difficulties that are consistent with his diagnoses, including interpersonal

19  conflict and episodes of aggression. Since there is no evidence of improvement in the residential

20  setting, there is no need for such treatment to continue. The patient is in need of chronic treatment,

21  but this does not need to take place in the residential treatment setting." Ex. 8

22  [PRE_BER000273].

23      On January 28, 2016, Peter B. accepted Premera's offer that an "Independent Review

24  Organization" examine the records and the appeal correspondence between the parties and

25  provide an opinion about whether Daniels Academy was medically necessary for M.B.

26  Complaint, ¶ 41. The Washington Office of the Insurance Commissioner selected an independent

27  review organization, Advanced Medical Reviews, to conduct the independent review. Ex. 10

MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. 2:16-CV-01904-BAT

[PRE_BER000934].  "Advanced Medical Reviews is an Independent Review Organization (IRO) certified by the Washington State Department of Health to review cases concerning adverse carrier decisions issued to managed care plan members."  Ex. 10 [PRE_BER000934].

A physician reviewer, board certified in Psychiatry, Psychiatry Child & Adolescent, reviewed M.B.'s case as the IRO.  Ex. 10 [PRE_BER000940].  The IRO, Paul E. Hartman MD, graduated from University of Western Australia School of Medicine and completed training in Psychiatry at St Ann's Hospital of Bournemout UK.  *Id.*  He also completed a Fellowship in Psychiatry Child & Adolescent from the Cambridge Hospital of Harvard University.  *Id.*  A physicians credentialing verification organization verified Dr. Hartman's state licenses, board certification, and OIG records.  *Id.*  Dr. Hartman also successfully completed Medical Reviews training by an independent medical review organization.  *Id.*  He has been practicing Psychiatry since May 5, 1997.  *Id.*

On February 12, 2016, the IRO upheld the prior denial of coverage.  Ex. 10 [PRE_BER000934-39].  The IRO concluded that M.B. did not meet the criteria for an acute condition requiring residential care, and therefore Daniels Academy was not medically necessary (Daniels Academy is not qualified in any event to treat acute conditions).  Ex. 10 [PRE_BER000934-39]; Complaint, ¶ 43.

### III.    ARGUMENT

**A.    The Court Should Grant Summary Judgment to Premera Regardless of Whether the Standard of Review is Abuse of Discretion or De Novo.**

#### 1.    The court should apply the abuse of discretion standard.

Premera contends the standard of review here is abuse of discretion, but even if de novo review applies, the Court should dismiss this case by summary judgment.  "Under a de novo standard of review, the district court must review de novo the plan administrator's decision to deny benefits," but "[i]n conducting that review, the district court may decide the case by summary judgment" "if there are genuine issues of material fact in dispute."  *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 978 (9th Cir. 1999).  There are no genuine issues of material fact here

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

whether the Court applies a de novo or abuse of discretion standard of review.

Depending on the language and structure of an ERISA plan, a district court reviews a plan administrator's decision to deny benefits either de novo or for an abuse of discretion. The district court reviews the determination "'under a de novo standard' unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111, 128 S.Ct. 2343 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989)(citing 29 U.S.C. § 1132(a)(1)(B))); *Harlick v. Blue Shield of Cal.,* 686 F.3d 699, 706–07 (9th Cir.2012). The decision will be reviewed for an abuse of discretion where "the plan provides to the contrary by 'granting the administrator or fiduciary discretionary authority to determine eligibility for benefits.'" *Metro. Life Ins.,* 554 U.S. at 108 (quoting *Firestone,* 489 U.S. at 115); *Harlick,* 686 F.3d at 707 (citing *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 967 (9th Cir.2006) (en banc)); *see also*, *Abatie,* 458 F.3d at 967 at 962-63 ("When a plan confers discretion, abuse of discretion review applies; when it does not, de novo review applies.").

Here, the Plan contains a clear, unambiguous grant of discretionary authority to interpret the Plan's terms and determine benefits eligibility through the Administrative Services Contract between Premera and Microsoft.   The Administrative Services Contract between Microsoft and Premera provides:

> **1.02    Benefits.**  The Plan Sponsor shall have final discretionary authority to determine the benefit provisions and to construe and interpret the terms of the Plan.
>
> **1.03    Eligibility.**  The Plan Sponsor shall have final discretionary authority to determine eligibility for benefits and the amount to be paid by the benefit program(s).

Ex. 1 (ASC, pp. 3-4).  Under sections 1.02 and 1.03, discretion was successfully conferred to Premera under the Supreme Court's standard. Because Microsoft has discretion over the benefits, and Premera administers the benefits for which Microsoft Corporation is solely and totally responsible, Premera contends that the abuse of discretion is the correct standard of review here.

Courts have occasionally held that a state-mandated external review that is binding on the plan administrator removes the plan from the administrator's discretion, compelling de novo

MOTION FOR SUMMARY JUDGMENT - 10
CASE NO. 2:16-CV-01904-BAT

review of the final denial of benefits. *See K.F. ex rel. Fry v. Regence Blueshield*, No. 08 Civ. 0890(RSL), 2008 WL 4223613, at *2 (W.D.Wash. Sept. 10, 2008) (The de novo standard of review applies where the administrator's adoption and implementation of the independent review organization's decision "was mechanical and did not involve the exercise of discretion," as required by 48.43.535). However, this standard is not applied uniformly in the Ninth Circuit. For example, a recent Ninth Circuit case applied the abuse of discretion standard to its review of a plan denial of benefits without addressing whether Oregon's IRO requirement should change that outcome. In *Yox v. Providence Health Plan*, 659 F. App'x 941 (9th Cir. 2016), the court held that Oregon's IRO requirement, at O.R.S. § 36.110(1), did not constitute an arbitration such that the Federal Arbitration Act barred judicial review of the IRO's decision. *Id*. at 943–44 (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 382–83, 122 S.Ct. 2151 (2002)). Then the Court went on to apply the abuse of discretion standard. *See id*. ("Where, as here, the plan administrator is granted discretionary authority to determine benefits eligibility and to construe plan terms, the administrator's decision is generally reviewed for abuse of discretion.") (citing *Montour v. Hartford Life & Acc. Ins. Co*., 588 F.3d 623, 629-30 (9th Cir. 2009); *Abatie v. Alta Health & Life Ins. Co*., 458 F.3d 955, 971–72 (9th Cir. 2006) (en banc)).

Further, the Sixth Circuit has expressly held what may seem intuitively obvious—that an IRO strengthens not weakens grounds for an abuse of discretion standard, because the IRO is by definition free of conflict of interest. *See Estate of Larrimer v. Medical Mut. of Ohio*, 2009 WL 1473981 *9 (S.D.Ohio 2009) ("Where the plan administrator's decision enjoys the support of an independent review organization, 'it is sufficiently grounded to satisfy the "least demanding form of judicial review,"' the arbitrary and capricious standard."[2]) (quoting *University Hospitals of Cleveland v. Emerson Electric Co*., 202 F.3d 839, 847 (6th Cir. 2000)); *see also Douglas v.*

---

[2] In this context, "arbitrary and capricious" and "abuse of discretion" mean the same thing. *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003) ("If a plan does grant such discretion, a reviewing court applies an 'abuse of discretion' or-what amounts to the same thing-an 'arbitrary and capricious' standard.") (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 n. 2 (9th Cir.1994)).

*General Dynamics Long Term Disability Plan*, 43 Fed. Appx. 864, 869 (6th Cir. 2002) ("Because the Plan Administrator received opinions from two independent medical evaluators . . .  the district court correctly held that the Plan Administrator's decision . . .  was not arbitrary and capricious."); *see also*, John Bronsteen, Brendan S. Maher & Peter K. Stris, *ERISA, Agency Costs, and the Future of Health Care in the United States*, 76 Fordham L. Rev. 2324-26 (2008) (explaining that external review significantly diminishes agency risk because the agent's discretion for opportunistic behavior is circumscribed by the determinations of an impartial reviewer); *see also*, *Jennifer A. v. United Healthcare Ins. Co.*, No. 11 Civ. 01813 (DSF) (PLAx), 2012 WL 3996877, at *8–9 (C.D. Cal. Sept. 11, 2012) (discussing the importance of conflict of interest in reviewing an ERISA plan's benefits determination).

Since the *K.F. ex rel. Fry* decision, the Affordable Care Act ("ACA") mandated an IRO review process for all health plans offered in the United States, with the exception of plans grand-fathered under pre-ACA rules. See 42 U.S.C. §300gg-19(b) (mandating that group health plans and insurance issuers offering group or individual health insurance coverage implement an external review process); 29 C.F.R. §2590.715-2719(c)(2)(vii)-(ix). *Group Health Plans and Health Insurance Issuers: Rules Relating to Internal Claims and Appeals and External Review Processes*, 76 Fed. Reg. 37,208, 37,210-11 (June 24, 2011) (codified at 45 C.F.R. pt. 147) (explaining the IRO process for self-insured plans).  It cannot be that the ACA's IRO requirement vitiates the arbitrary and capricious standard set forth in *Firestone*, 489 U.S. 101,  and its progeny, and  to the undersigned's knowledge, no statute or court has so provided or held.

Accordingly, applying the arbitrary and capricious standard, Premera's reliance on the informed opinions of two independent reviewers demonstrates reasonableness, and therefore, Premera did not act arbitrary and capriciously.

**2.**     **If de novo review is applied, Premera is still entitled to summary judgment.**

Regardless, the Court should grant summary judgment to Premera under the de novo standard of review.  When review is de novo, "the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately

MOTION FOR SUMMARY JUDGMENT - 12
CASE NO. 2:16-CV-01904-BAT

1    established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt.*

2    *Inc.*, 623 F.3d 1290, 1295–96 (9th Cir. 2010).  Nevertheless, a plaintiff challenging a benefits

3    decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits by

4    a preponderance of the evidence. *Muniz*, 623 F.3d at 1294 ("As concluded by other circuit courts

5    which have addressed the question, when the court reviews a plan administrator's decision under

6    the de novo standard of review, the burden of proof is placed on the claimant"). *See also*,

7    *Schwartz v. Metro. Life Ins. Co.*, 463 F.Supp.2d 971, 982 (D.Ariz. 2006) ("Plaintiff has the

8    burden of proof to show that he was eligible for continued long term disability benefits based on

9    the terms and conditions of the ERISA plan"); *Sabatino v. Liberty Life Assurance Co. of Boston*,

10   286 F.Supp.2d 1222, 1232 (N.D.Cal.2003) ("The Court concludes that Plaintiff must carry the

11   burden to prove that she was disabled under the meaning of the plan"); *Jordan v. Northrop*

12   *Grumman Corp. Welfare Benefit Plan*, 63 F.Supp.2d 1145, 1155 (C.D.Cal.1999)("[T]he burden

13   in making such a claim [for entitlement to benefits] is on Plaintiff"); see also, *Horton v. Reliance*

14   *Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir.1998) ("A plaintiff suing under [29 U.S.C.

15   § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits"); *Farley v.*

16   *Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir.1992) ("[W]e agree that it was [the

17   claimant's] burden to show that he was entitled to the 'benefits . . . under the terms of his plan,'

18   " quoting 29 U.S.C. § 1132(a)(1)(B) (omission original)).

19          As explained below, though Premera contends that the abuse of discretion standard of

20   review applies, the Court should grant summary judgment under either that or the de novo

21   standard.

22   **B.     The Opinions of the Two Independent Physicians Who Reviewed Peter B.'s Claim**
23   **Stand Undisputed by Admissible Evidence, and Therefore, the Court Should Grant**
     **Summary Judgment.**

24          The Court should dismiss this action because no competent admissible medical evidence

25   supports Peter B.'s claim.  In an action to recover benefits under ERISA, the Ninth Circuit held

26   that the district court may reject opinions offered by the claimant that lack reliability and

27

MOTION FOR SUMMARY JUDGMENT - 13
CASE NO. 2:16-CV-01904-BAT

relevance pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993):

> Mason contends that the district court abused its discretion in rejecting Mason's proffered medical evidence. We find no abuse of discretion. We agree with the district court's conclusion that even assuming some exposure to some chemicals may be necessary to perform his occupation, Mason provided no competent admissible medical evidence that the type of chemicals he would be exposed to pose any greater risk of causing cancer or its recurrence in him than such exposure would in the population at large. The district court acted within its discretion in rejecting the report from Dr. Brautbar and the medical opinion of Dr. Neustein on the basis of their lack of reliability and relevancy pursuant to the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Domingo v. T.K.,* 276 F.3d 1083, 1088 (9th Cir.2002). We affirm the summary judgment granted to Equitable.

*Mason v. Equitable*, 32 F. App'x 289, 292 (9th Cir. 2002).

Here, there is no competent, admissible evidence that M.B.'s residential treatment and the Daniels Academy boarding school is medically necessary. Premera's conclusion, in reviewing Peter B.'s internal appeal, that M.B.'s continued residency at Daniels Academy was not medically necessary, was based on the opinion of an "Independent Physician Reviewer," William Holmes, MD, a psychiatrist who is Board Certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry. Subsequently, the IRO, by a similarly qualified physician, agreed.

Neither of these independent reviewers disputed M.B.'s diagnosis or denied that he requires long-term treatment. Rather, they concluded, based on the "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment," and/or their professional experience and judgment and the entire record, that Daniels Academy's boarding school (i) had not improved M.B.'s condition, (ii) and was not the treatment that he needed or required for his chronic condition. There is no responsive, cognizable evidence in the record. Their conclusion resembled that of the independent reviewers in a recent case, where the district court concluded:

> Furthermore, even under *de novo* review, Plaintiffs have failed to show by a preponderance of the evidence that the residential treatment criteria were met. Even accepting all of Plaintiff's factual assertions as true, none of S.O.' s

MOTION FOR SUMMARY JUDGMENT - 14
CASE NO. 2:16-CV-01904-BAT

treatment providers analyzed her condition with respect to the residential treatment factors. **A review of the submissions of Dr. Woodall, Ms. Maskin, and Dr. Biesinger demonstrates that S.O. had a long history of mental and behavioral health symptoms and conditions, but does not demonstrate that her condition had deteriorated from its usual status or that a short in-patient stay would improve her symptoms.** As such, Defendants reasonably concluded that S.O. did not meet the residential treatment criteria.

*Tracy O. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 2:16-CV-422-DB, 2017 WL 3437672, at *9 (D. Utah Aug. 10, 2017) (appeal filed September 7, 2017) (emphasis added). Here the independent physician reviewers reached similar conclusions with respect to M.B.

During the administrative appeals process, Peter B. offered two letters from M.B.'s treating therapists discussing and recommending the need for residential treatment: Peter Weiss, MA, LMHC and Douglas W. Maughan, LCMHC, who was designated M.B.'s "Primary Therapist" at Daniels Academy and is a Daniels Academy employee. See Ex. 2; Ex. 6 [PRE_BER000492]. Peter B. has not offered, designated, or disclosed any other treating therapists, or physicians, nor any independent expert opinions. This Court should as a matter of law reject the opinions of Mr. Weiss and Mr. Maughan as lacking reliability and therefore relevance.

Mr. Weiss treated M. B. from December 31, 2013 to September 24, 2014 for Obsessive Compulsive Disorder, has had no contact with him since September 24, 2014, had no contact with Daniels Academy, and offered no opinion about M.B.'s need for treatment and residency at Daniels Academy. Ex. 6 [PRE_BER000495]. His statement therefore lacks foundation and is irrelevant.

Mr. Maughan has not addressed the specific opinions of the two independent physicians who determined that Daniels Academy's boarding school was not medically necessary. Nor is his opinion inconsistent with their opinions; and the two independent physicians did not challenge M.B.'s diagnosis; they only challenge whether residential treatment is necessary to treat these conditions.

When Mr. Maughan wrote his letter, M.B. had spent over seven months at Daniels

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

1   Academy (since January 1, 2015), and Mr. Maughan recognized that M.B.'s condition had not

2   improved.   Ex. 6 [PRE_BER000492].   In terms of the benefit that Daniels Academy could

3   provide M. B. if he stayed there, he described an ongoing regimen of punishment/reward for

4   desirable/undesirable conduct that is a staple of parenting in many families, but does not address

5   the clinical opinion of Dr. Holmes that while M.B. requires long-term care, residency at the

6   Daniels Academy boarding school under such a program is not working and not what M.B. needs

7   for his condition to improve.  Ex. 6 [PRE_BER000492].

8       Finally, while both physicians who concluded that M.B.'s residential treatment at Daniels

9   Academy is not medically necessary established that they are not impaired by conflict of interest,

10  Mr. Maughan is employed by Daniels Academy and therefore interested. *See Jennifer A.*, No. 11

11  Civ. 01813 (DSF) (PLAx), 2012 WL 3996877, at *8–9 (C.D. Cal. Sept. 11, 2012) (discussing

12  the importance of conflict of interest in reviewing an ERISA plan's benefits determination).

13  Accordingly, for the foregoing reasons, there is no issue of fact to preclude summary judgment

14  in favor of Premera and the Plan.

15                  **IV.     CONCLUSION**

16      For the foregoing reasons, the Court should grant summary judgment in favor of the

17  Defendants and dismiss this case.

18      DATED:   September 15, 2017.

19                                  Kilpatrick Townsend & Stockton LLP

20

21      By   *s/ Gwendolyn C. Payton*

22          Gwendolyn C. Payton, WSBA No. 26752
            gpayton@kilpatricktownsend.com

23          Address:  1420 5TH Avenue, Suite 3700
            Seattle, WA  98101

24          Telephone:  206.467.9600
            Fax:  206.623.6793

25

26

27

MOTION FOR SUMMARY JUDGMENT - 16
CASE NO. 2:16-CV-01904-BAT

1

2

Lane Powell PC

3
By _s/ Jessica N. Walder_
    Jessica N. Walder, WSBA No. 47676

4
    walderj@lanepowell.com
    1420 5th Avenue, Suite 4200

5
    Seattle, WA 98101
    Telephone: 206.223.7000

6
    Fax: 206.223.7101

7
_Attorney for Microsoft Corporation and_
_Microsoft Corporation Welfare Plan_

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR SUMMARY JUDGMENT - 17
CASE NO. 2:16-CV-01904-BAT

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury of the laws of the State of Washington that on September 15, 2017, I caused to be served a copy of the attached documents to the following person(s) in the manner indicated below at the following address(es):

Brian S. King
BRIAN S. KING, PC
336 South 300 East, Ste 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facscimile: (801) 532-1936
Brian@briansking.com

John Walker Wood
THE WOOD LAW FIRM PLLC
800 5TH AVENUE STE 4100
SEATTLE, WA 98104
206-447-1342
Email: john@woodfirm.com

Jessica N. Walder, WSBA No. 47676
walderj@lanepowell.com
1420 5th Avenue, Suite 4200
Seattle, WA 98101
Telephone: 206.223.7000
Fax: 206.223.7101

☑ **by CM/ECF**
☐ **by Electronic Mail**
☐ **by Facsimile Transmission**
☐ **by First Class Mail**
☐ **by Hand Delivery**
☐ **by Overnight Delivery**

s/*Gwendolyn C. Payton*
Gwendolyn C. Payton

KILPATRICK TOWNSEND 70138909 2
MOTION FOR SUMMARY JUDGMENT - 18
CASE NO. 2:16-CV-01904-BAT

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793