THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER B., individually and as guardian of M.B., a minor,<br><br>                              Plaintiff,<br><br>        v.<br><br>PREMERA BLUE CROSS, MICROSOFT CORPORATION, and the MICROSOFT CORPORATION WELFARE PLAN,<br><br>                              Defendant. | Case No. 2:16-CV-01904-BAT<br><br>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: OCTOBER 13, 2017<br><br>ORAL ARGUMENT REQUESTED |

Pursuant to Federal Rule of Civil Procedure 56, Defendant Premera Blue Cross ("Premera"), and Defendants Microsoft Corporation and Microsoft Corporation Welfare Plan (collectively, "Microsoft"), hereby oppose Plaintiff Peter B.'s Motion for Summary Judgment.

## I.       INTRODUCTION

The Court should deny Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), and for the reasons previously explained in Premera's and Microsoft's Motion for Summary Judgment (Dkt. 37), grant summary judgment in favor of Defendants.  To resolve this dispute, the Court requires the assistance of qualified experts.  The only qualified experts who have addressed Peter B.'s claim are the two independent psychiatrists whose opinions are in the administrative record.  Peter B. offers no cognizable evidence to contradict opinions of those independent doctors that the residential treatment provided by Daniels Academy's "boarding school" environment is not medically necessary and not improving his condition

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 1
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP<br>1420 5TH AVENUE, SUITE 3700<br>SEATTLE, WA  98101<br>206.467.9600  FAX: 206.623.6793

from a clinical standpoint.   Premera's adjudications and the independent physicians' opinions all support the same conclusion: Daniels Academy is not medically necessary to treat M.B. The independence of these physicians is irrefutable.   Pursuant to state law, the second of these independent physicians to review Peter B.'s claim is wholly independent and his findings are binding on Premera.   The Court should dismiss this case, or, in the alternative, deny Plaintiff's Motion for Summary Judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendants hereby incorporate by reference the Factual and Procedural Background set forth in their Motion for Summary Judgment, Dkt. 37 at 2-9.

## III.   ARGUMENT

**A.   The Standard of Review Should Be Abuse of Discretion, but Regardless, the Court Should Not Substitute Its Judgment for That of the Independent Physicians Who Reviewed M.B.'s Claim and Are Not Contradicted by Credible Evidence.**

The parties disagree about which standard of review applies.   Premera contends that the appropriate standard of review here is abuse of discretion, but even if de novo review applies, as Plaintiff contends, the Court should dismiss this case by summary judgment; for the reasons discussed below, there certainly is no basis for granting Plaintiff's Motion. Depending on the language of an ERISA plan, including its delegation of authority and discretion to a plan administrator, a district court reviews a plan administrator's decision to deny benefits either de novo or for an abuse of discretion.   The district court reviews the determination "'under a de novo standard' unless the plan provides to the contrary."   *See* Premera's Motion for Summary Judgment, Dkt 37, at 9-12, and the cases cited therein.

Here, the Plan contains a clear, unambiguous grant of discretionary authority to interpret the Plan's terms and determine benefits eligibility through the Administrative Services Contract between Premera and Microsoft.   *See* Premera's Motion for Summary Judgment, Dkt 37 at 10; Ex.   1[1].   Under sections 1.02 and 1.03, discretion was successfully conferred to

---

[1] The exhibits referenced were submitted appended to the Declaration of Gwendolyn Payton, filed with Defendants' Motion for Summary Judgment, Dkt. 37.

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 2
CASE NO. 2:16-CV-01904-BAT

1    Premera under the Supreme Court's standard.  *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105,

2    108, 128 S.Ct. 2343 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115,

3    109 S.Ct. 948 (1989)(citing 29 U.S.C. § 1132(a)(1)(B)); *Harlick v. Blue Shield of Cal.,* 686

4    F.3d 699, 706–07 (9th Cir. 2012)).  Based on that standard, courts apply abuse of discretion

5    review where "the plan provides to the contrary by 'granting the administrator or fiduciary

6    discretionary authority to determine eligibility for benefits.'"  *Id.*  Here, because Microsoft has

7    discretion over the benefits, and Premera administers the benefits for which Microsoft

8    Corporation is solely and totally responsible, abuse of discretion applies to this dispute.  *Id. Cf.*

9    *K.F. ex rel. Fry v. Regence Blueshield*, No. 08 Civ. 0890 (RSL), 2008 WL 4223613, at *2

10   (W.D. Wash. Sept. 10, 2008) (The de novo standard of review applies where the

11   administrator's adoption and implementation of the independent review organization's decision

12   "was mechanical and did not involve the exercise of discretion," as required by RCW

13   48.43.535).

14        Because under sections 1.02 and 1.03 of the Administrative Services   Agreement

15   discretion was successfully conferred to Premera under the Supreme Court's standard, the

16   standard of review here should be abuse of discretion.  Contrary to Plaintiff's contention that

17   the Administrative Services Contract is not in the record, insinuating that it cannot be

18   considered here, this Court may review the evidence at this time to determine the standard of

19   review.  *See Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) (Holding

20   that it was improper for a district court to decline to review the governing administrative

21   services agreement where review of that document was necessary "to establish which entity

22   actually decided her claim and therefore which standard of review was applicable in federal

23   court").

24        Regardless, the Court should not substitute its judgment for that of the independent

25   physicians who reviewed M.B.'s claim and determined that his residency at the Daniels

26   Academy was not medically necessary.

27

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 3
CASE NO. 2:16-CV-01904-BAT

**B.      Plaintiff Fails to Establish Entitlement to the Claimed Benefits as a Matter of Law.**

The parties agree that Daniels Academy is a "boarding school for boys" that provides residential treatment to minors suffering from mental illness, and Defendants do not challenge M.B.'s diagnosis.  But Plaintiff fails to establish a prima facie case that the treatment that M.B. has received at Daniels Academy is medically necessary.   Indeed, noticeably absent from Plaintiff's motion is any significant discussion from Daniels Academy employee Douglas W. Maughan, LCMHC, the one individual who has interacted with M.B. at Daniels Academy.  *See* Plaintiff's Motion at 8-9.   Specifically, Plaintiff provides nothing more than one single quote from Mr. Maughan, and even that is nothing more than a conclusory fragment from a hearsay letter that should be given little weight or disregarded.  *See* Premera's Motion for Summary Judgment, Dkt 37, at 5-7, 15-16.

Two independent psychiatrists—who are free of conflict of interest—have concluded that the treatment that Daniels Academy has provided to M.B. is not medically necessary and has not improved his condition.  The opinions of these independent experts at the very least preclude summary judgment.

**1.      Plaintiff Bears the Burden of Proving Entitlement to Benefits.**

A plaintiff such as Peter B. challenging a benefits decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits by a preponderance of the evidence, regardless of whether this Court applies a de novo or abuse of discretion standard. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("As concluded by other circuit courts which have addressed the question, when the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant"). *See also*, *Schwartz v. Metro. Life Ins. Co.*, 463 F.Supp.2d 971, 982 (D. Ariz. 2006) ("Plaintiff has the burden of proof to show that he was eligible for continued long term disability benefits based on the terms and conditions of the ERISA plan"); *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F.Supp.2d 1222, 1232 (N.D. Cal. 2003) ("The Court concludes that Plaintiff must carry the burden to prove that she was disabled under the meaning

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 4
CASE NO. 2:16-CV-01904-BAT

of the plan"); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F.Supp.2d 1145, 1155 (C.D. Cal. 1999) ("[T]he burden in making such a claim [for entitlement to benefits] is on Plaintiff"); *see also*, *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff suing under [29 U.S.C. § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits"); *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992) ("[W]e agree that it was [the claimant's] burden to show that he was entitled to the 'benefits ... under the terms of his plan,'" quoting 29 U.S.C. § 1132(a)(1)(B) (ellipsis and omission in original)).

### 2. Plaintiff Fails to Establish a Prima Facie Case or Undisputed Evidence that He is Entitled to the Benefits Claimed.

Plaintiff's Motion asserts, "[i]f the Plan provides coverage for services that are in accordance with generally accepted standards of medical practice, discontinuing coverage for M.B.'s residential treatment was not in accordance with the terms of the Plan." Plaintiff's Motion at 16. Tellingly, Plaintiff offers no evidence or authority to support this assertion, as Plaintiff has failed to provide any support that the treatment received by M.B. at Daniels Academy is medically necessary. Plaintiff therefore fails to establish a prima facie case—or, at the very least, undisputed evidence—that M.B. is entitled to the benefits claimed.

Plaintiff's argument goes no further than showing that Daniels Academy is a residential treatment center and that the average stay at a residential treatment center is 7-12 months. Plaintiff characterizes Daniels Academy as providing "a level of sub-acute, non-hospital, inpatient care." *See* Plaintiff's Motion at 15. Plaintiff's motion contains little explanation of what is meant by this; it contains only cryptic references to web pages and case citations. *See* Plaintiff's Motion at 15-16 (citing http://store.samhsa.gov/shin/content/SMA06-4167/SMA06-4167.pdf, p. 20, Table III.4; https://www.magellanprovider.com/23 media/1771/mnc.pdf, pp. v-vi; *Harlick v. Blue Shield of California*, 686 F.3d 699, 709 (9th Cir. 2012). In any event, the web pages, even if they do provide otherwise helpful information[2], are hearsay when not

---

[2] The U.S. Department of Health and Human Services article cited by Plaintiff via an Internet

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

presented as evidence or factual information upon which an expert relies.[3]

Plaintiff's motion does not clarify or analyze the only explanation of M.B.'s treatment provided by an individual who interacted with  him at Daniels Academy, Douglas W. Maughan, LCMHC.  Mr. Maughan is a Daniels Academy employee who was designated M.B.'s "Primary Therapist."  Ex. 6 [PRE_BER000492-93].  Plaintiff's motion only includes a passing, fragmentary, and conclusory quote from Mr. Maughan's opinion (Motion at 8-9), which was issued after working with M.B. at Daniels Academy for seven months.[4]

Describing the benefit that Daniels Academy could provide M. B. if he stayed there, the crux of Mr. Maughan's opinion was that M. B.

> continues to struggle daily and engages in continual boundary testing, pushing, and crossing. When he does this he looses [sic] his privileges for a time. Priority Assessment is a teaching tool used at Daniels Academy where the student is given a chance to make a healthy and effective choice and if their choice is to continue ineffective and healthy [sic] behaviors they loose [sic] their privileges until the make proper repairs and complete a Social Behavior Map so they think about their impact on themselves and others around them as they made the choice.  Safety is another consequence where students loose privileges for 24 to 48 hours for demonstrating unsafe behaviors. [M.B.] consistently needs redirection and teaching around healthy and appropriate choices and spends an inordinate amount of time with these two precautions.

Ex. 6 [PRE_BER000492-93].  It may be that such an ongoing regimen of punishment/reward

---

address contains information that undermines Plaintiff's case: "Length of stay is an important variable because of concerns that long lengths of stay are associated with greater difficulties in returning to family and community after discharge." http://store.samhsa.gov/shin/content/SMA06-4167/SMA06-4167.pdf, p. 20, Table III.4 at 19. Moreover, this DHHS document is clear that the data it has used to calculate average stay is incomplete. "[D]ata on length of stay were unavailable for more than one-fifth of the 71 facility types, accounting for 39.1 percent of all facilities and almost half (46.3 percent) of all beds in residential facilities for children with mental illness.  Data from surveys was submitted by only 38 states. *Id.* at 19-20.

[3] It is true that "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  But Plaintiff has no means to get them admitted at the trial phase.

[4] Mr. Maughan's letter was dated August 11, 2015.  At that time, M.B. had spent over seven months at Daniels Academy (since January 1, 2015).  Ex. 6 [PRE_BER000492-93].

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT - 6
CASE NO. 2:16-CV-01904-BAT

for desirable/undesirable conduct that is a staple of parenting in many families is in some way of benefit to M.B., but it is not medically necessary.

At pages 5-6 of his Motion, Plaintiff cites provisions of Premera's guidelines for determining medical necessity of residential treatment.  Such guidelines constitute threshold requirements for coverage—one of these requirements must be met in order for the residential treatment to be medically necessary.   The criteria establish that, except in one of the circumstances described, insurance coverage is provided for "a very brief additional period (five to seven days) of residential treatment" medically necessary to stabilize a patient until he or she can be transferred to a lower level of care.  *See* Ex. 5 [PRE_BER0013991-92] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment," "Severity of Illness Criteria for Continued Stay," subsections b.-d).  The one circumstance (subsection a.) that allows for a longer period of residential treatment is set forth as follows:

> Significantly impaired functioning or behavioral dyscontrol continues to be present at a severity that requires 24/7 containment and treatment, or continued repetitive harm to self or others or active risk of harm to self or others continues to be present at a severity that requires 24/7 containment and treatment, or sufficient stabilization for partial hospitalization or outpatient treatment has still not occurred following step-down from inpatient treatment or treatment in a crisis stabilization facility. However, clinical progress must also be evident. If the stay reaches thirty days without clinical progress, then beginning improvement must be evident within an additional seven days, followed by observable clinical progress in symptom reduction, functional improvement, or improvement in behavioral control every seven to ten days.

Ex. 5 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment," "Severity of Illness Criteria for Continued Stay," subsection a.).  Plaintiff has not offered any evidence that establishes clinical progress even after 90 days, much less the thirty days required by the foregoing criteria.  Indeed, after more than seven months of M.B.'s stay at Daniels Academy, his "Primary Therapist" Mr. Maughan wrote, "He has much work to do and it is anticipated that while the interventions of Priority Assessment and Safety are significant that he will soon start making choices that will diminish the need for correction."  Mr. Maughan concluded, "[i]t is my recommendation that [M.B.] continue in Residential Treatment

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT - 7
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

1  Level of Care to ensure and until he reaches a level of functioning that is conducive to success

2  in a less restrictive environment."  Ex. 6 [PRE_BER000492-93].

3        Mr. Maughan does describe limited progress occurring at Daniels Academy after seven

4  months:  "[M.B.] has recently started to take accountability and responsibility for his choices

5  rather than assigning blame to external things or people, taking Victim Stance, or Externalizing

6  Blame, both cognitive distortions that interfere with the ability to take responsibility."   Ex. 6

7  [PRE_BER000492].  According to Mr. Maughan, "[c]linically this is the first step in a persons

8  [sic]  treatment  that  indicates  they  have  a  desire  to  change  and  believe  that  they  can  be

9  responsible for that change." Ex. 6 [PRE_BER000492-93].

10       However,  this  is  the  very  kind  of  modest  progress  interacting  with  his  social

11 environment that is identified in the criteria as far from meeting the Plan's standard for clinical

12 progress:

13         Increased participation in treatment, increased attendance at treatment activities,
increased  compliance  with  treatment  recommendations,  increased  compliance

14         with  facility/program  rules,  increased  completion  of  assignments,  increased
"openness," building trust, increased discussion of problems or issues, increased

15         insight, exploring or working on past or present issues, improving relationships,

16         or similar processes, are not considered to be clinical progress in the absence of
symptom  reduction,  functional  improvement,  or  improvement  in  behavioral

17         control.

18 Ex.  6  [PRE_BER001392]  ("Policy:  3.01.508  Behavioral  Health:  Psychiatric  Residential

19 Treatment," "Severity of Illness Criteria for Continued Stay," subsection a.).

20       During  the  administrative  appeals  process,  Peter  B.  offered  two  letters  from  M.B.'s

21 treating therapists discussing and recommending the need for residential treatment.  In addition

22 to the letter from Mr. Maughan, Plaintiff offered a letter from Peter Weiss, MA, LMHC.  Mr.

23 Weiss treated M. B. from December 31, 2013 to September 24, 2014 for Obsessive Compulsive

24 Disorder.  Ex. 7 [PRE_BER000495].  Mr. Weiss's opinion, however, has little bearing on the

25 medical necessity of Daniels Academy, as Mr. Weiss has had no contact with M.B. since

26 September 24, 2014 and has had no contact with Daniels Academy in connection with M.B.'s

27 treatment.  *Id*.  As Mr. Weiss wrote, "I referred [M.B's] parents to an educational consultant

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 8
CASE NO. 2:16-CV-01904-BAT

who then guided the parents to an out-of-state therapeutic residential program. It is my hope that [M.B.], with a therapeutic/residential level of support, will be able to regain important aspects of his life and return to home and a mainstream school program." Ex. 7 [PRE_BER000495]. Mr. Weiss's letter was dated August 6, 2015, nearly a year after he last treated M.B. *Id*. For the foregoing reasons, Mr. Weiss's statement lacks foundation and is irrelevant.

Peter B. has not offered, designated, or disclosed any other treating therapists, or physicians, nor any independent expert opinions. This Court should as a matter of law reject the opinions of Mr. Weiss and Mr. Maughan as lacking reliability and therefore relevance. *See Mason v. Equitable*, 32 F. App'x 289, 292 (9th Cir. 2002) (In an action to recover benefits under ERISA, the Ninth Circuit explained that the district court may reject opinions offered by the claimant that lack reliability and relevance pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993)).

Moreover, Plaintiff's experts' opinions must be considered in light of their potential conflicts of interest. As an employee of Daniels Academy, Mr. Maughan has an interest in this appeal. In contrast, both physicians who concluded that M.B.'s residential treatment at Daniels Academy is not medically necessary established that they are not impaired by conflict of interest. *See Jennifer A.*, No. 11 Civ. 01813 (DSF) (PLAx), 2012 WL 3996877, at *8–9 (C.D. Cal. Sept. 11, 2012) (Discussing the importance of conflict of interest in reviewing an ERISA plan's benefits determination).

The case upon which Plaintiff relies, *Harlick v. Blue Shield of California*, 686 F.3d 699 (9th Cir. 2012), provides a striking and instructive contrast to the case at bar. The claimant, Harlick, had suffered from anorexia for more than twenty years. *Id*. at 703. She relapsed and began intensive outpatient treatment with a hospital and physicians. *Id*. Harlick's doctors told her that she needed a higher level of care than the intensive outpatient treatment then being provided. *Id*. Following her doctors' recommendations, she registered at Castlewood Treatment Center, a residential treatment facility in Missouri that specializes in eating

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 9
CASE NO. 2:16-CV-01904-BAT

1   disorders.  *Id*. at 704.

2          The record before the Ninth Circuit showed that, according to Castlewood's website, it

3   is a "Residential Treatment Facility and Day Hospital program for individuals needing

4   comprehensive treatment for anorexia nervosa, bulimia nervosa, and binge eating disorders."

5   *Id.*  Six levels of care are available at Castlewood.  *Id.*

6          When Harlick entered Castlewood, she was at 65% of her ideal body weight. *Id.* When

7   she had been there less than a month, a feeding tube was inserted because her "caloric level

8   needed to gain weight was so high."  *Id*.  Harlick stayed at Castlewood from April 17, 2006 to

9   January 31, 2007.  *Id.*

10         The court concluded, "[g]iven that Harlick's doctors believed that outpatient treatment

11  was insufficient, that Harlick entered Castlewood at 65% of her ideal body weight, and that

12  Harlick needed a feeding tube while at Castlewood, it appears that inpatient residential

13  treatment was indeed necessary" (but the Court concluded that the because the plan failed to

14  assert during the administrative process that medical necessity was a reason for denying

15  Harlick's claim, it forfeited the ability to assert lack of medical necessity as a defense).  *Id*. at

16  721.

17         In contrast to the boarding school experience provided to M.B. while he was in a

18  relatively stable, sub-acute condition by Daniels Academy—which had not been referred to

19  M.B. by his doctors—Castlewood, the residential treatment center at issue in Harlick, provided

20  the claimant urgently needed medical care in response to her doctors' recommendations, while

21  she was in an acute condition[5].

22         Thus, here Plaintiff has failed to establish a prima facie case for benefits that he claims;

23  he certainly has not established a case for summary judgment.

24

25

26

27  [5] The opinion does not say that the Plan alleged that Harlick failed to improve while being
    treated at Castlewood, even though it did belatedly raise a medical necessity argument. *See id*.

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 10
CASE NO. 2:16-CV-01904-BAT

**3.      The Independent, Unconflicted Opinions of Two Psychiatrists Who Reviewed Peter B.'s Claim, and Concluded that M.B.'s Residential Treatment at Daniels Academy Was Not Medically Necessary, of Themselves Preclude Summary Judgment.**

For the reasons discussed above, the Court should give no weight to the opinions of the only two expert opinions in the record supporting Plaintiff's case.  In any event, even if the Court were to credit them, the Court could not grant Plaintiff summary judgment, because the opinions of Messrs. Maughan and Weiss are contradicted by the opinions in the record of two independent psychiatrists who reviewed Plaintiff's claim and concluded that M.B.'s residential treatment at Daniels Academy was not medically necessary.  Summary judgment is improper when there is a conflict between expert opinions; this applies to a claim for ERISA health care benefits.  *See Hodosh v. Block Drug Co.*, 786 F.2d 1136, 1143 (Fed. Cir. 1986); *Hilgraeve Corp. v. McAfee Assocs.*, 224 F.3d 1349, 1353 (Fed. Cir. 2000) ("[D]ifferences in the experts descriptions of [the allegedly infringing program] raise a genuine issue of material fact.... The determination of whether either [expert's] description (or neither) is correct requires a factual determination of the actual operation of the [program]."); *see also, Tedesco v. I.B.E.W. Local 1249 Insurance Fund*, No. 14-CV-3367 (KBF), 2017 WL 3608246, at *11 (S.D.N.Y. Aug. 21, 2017) ("'it is inappropriate for a court to grant summary judgment where the resolution of an ERISA benefits dispute entails adopting one medical expert's opinion over another'") (quoting *Tretola v. First Unum Life Ins. Co.*, No. 13-CV-231 (PAE), 2015 WL 509288, at *23 (S.D.N.Y. Feb. 6, 2015) (citing *Napoli v. First Unum Life Ins. Co*., 78 Fed.Appx. 787, 789 (2d Cir. 2003)).

In Premera's Internal Appeal process, Premera included the participation of an "Independent Physician Reviewer", William Holmes, MD, a psychiatrist who is Board Certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry and who is not employed by Premera. Ex. 8 [PRE_BER000269-275]. Dr. Holmes's opinion included a "conflict of interest statement" certifying his independence and an absence of any conflict of interest on his part. *See* Ex. 8 [PRE_BER000274-75].

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

1    Dr. Holmes, a physician and medical specialist, reviewed Peter B.'s appeal submission,

2    other relevant claim information including from Daniels Academy, M.B.'s medical records,

3    Premera's Medical Policy titled, "Behavioral Health: Psychiatric Residential Treatment

4    Number 3.01.508," and the Plan's coverage terms and conditions.  Ex. 8 [PRE_BER000273].

5    An internal Medical Director and physician employed by Premera who is Board Certified in

6    Public Health and General Medicine also reviewed Premera's decision.     Ex. 9

7    [PRE_BER000033-36]; Ex. 8 [PRE_BER000269-275].

8    Premera based its decision to deny Peter B.'s Internal Appeal in part on the opinion of

9    Dr. Holmes, the independent psychiatrist unaffiliated with Premera who reviewed the appeal.

10   Ex. 9 [PRE_BER000033].  Dr. Holmes concluded, "[t]he residential treatment center is no

11   longer within standard of care. The patient is in need of long-term placement, but this is

12   different than the benefit or need for residential treatment."  Ex. 8 [PRE_BER000271].

13   According to Dr. Holmes, M.B.'s chronic sub-acute condition had stabilized, and

14   residency at Daniels Academy after March 11, 2015 was not medically necessary: "The patient

15   continues to display difficulties that are consistent with his diagnoses, including interpersonal

16   conflict and episodes of aggression.  Since there is no evidence of improvement in the

17   residential setting, there is no need for such treatment to continue.  The patient is in need of

18   chronic treatment, but this does not need to take place in the residential treatment setting."  Ex.

19   8 [PRE_BER000273].

20   On January 28, 2016, Peter B. accepted Premera's offer that an "Independent Review

21   Organization" examine the records and the appeal correspondence between the parties and

22   provide an opinion about whether Daniels Academy was medically necessary for M.B.  The

23   independent review organization Advanced Medical Reviews conducted the independent

24   review.   Complaint, ¶ 41, Ex. 10 [PRE_BER000934].   "Advanced Medical Reviews is an

25   Independent Review Organization (IRO) certified by the Washington State Department of

26   Health to review cases concerning adverse carrier decisions issued to managed care plan

27   members."  Ex. 10 [PRE_BER000934].

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 12
CASE NO. 2:16-CV-01904-BAT

1    At the IRO stage, a physician reviewer, board certified in Psychiatry, Psychiatry Child

2    & Adolescent, reviewed M.B.'s case.  Ex. 10 [PRE_BER000940].  The physician appointed by

3    the IRO, Paul E. Hartman MD, graduated from University of Western Australia School of

4    Medicine and completed training in Psychiatry at St. Ann's Hospital of Bournemout UK.  *Id.*

5    He also completed a Fellowship in Psychiatry Child & Adolescent from the Cambridge

6    Hospital of Harvard University.  *Id*.   A physicians credentialing verification organization

7    verified Dr. Hartman's state licenses, board certification, and OIG records.  *Id.*  Dr. Hartman

8    also successfully completed Medical Reviews training by an independent medical review

9    organization. *Id*.  He has been practicing Psychiatry since May 5, 1997. *Id.*

10    On February 12, 2016, the IRO upheld the prior denial of coverage.   Ex. 10

11    [PRE_BER000934-39].  The IRO concluded that M.B. did not meet the criteria for an acute

12    condition requiring residential care, and therefore Daniels Academy was not medically

13    necessary (Daniels Academy is not qualified in any event to treat acute conditions).  Ex. 10

14    [PRE_BER000934-39]; Complaint, ¶ 43.

15    These opinions of themselves preclude summary judgment in favor Plaintiff.

16    **C.    There is No Evidence that Premera Violated Any ERISA Claim Procedures.**

17    Plaintiff baldly asserts that Premera has violated "numerous" ERISA claim procedures

18    because it has used "shifting of rationales for the denial of coverage M.B.'s, coupled with

19    PBC's [Premera's] failure to provide adequate explanation of the denial rationales and respond

20    to the information and arguments Peter B."  This assertion is unsupported by the evidence, and

21    therefore is not a basis for summary judgment. As explained further below, each internal

22    review at Premera consistently relied on the clear standards set forth by Premera's Policy:

23    3.01.508 Behavioral Health: Psychiatric Residential Treatment.   Each stage of Premera's

24    review considered M.B.'s condition and the care provided by Daniels Academy in light of that

25    standard, and found that the stay at Daniels Academy was not medically necessary.  To the

26    extent that the rationale used by Independent Medical Review Organization (IRO) diverged

27    from that of Premera's internal reviews – which it did not in any significant way – that is

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 13
CASE NO. 2:16-CV-01904-BAT

irrelevant to whether Premera administered the ERISA claim consistently, because the IRO was approved by the state of Washington, and was unaffiliated with Premera.

In making this claim, Peter B. looks to the opinion of the IRO, an opinion which was rendered by an entity wholly independent of Premera.  According to Plaintiff, "the [IRO] reviewer selectively picked two instances from M.B.'s treatment history to demonstrate that M.B. had not shown sufficient progress to remain in treatment, and analyzed M.B.'s condition under 'Admission to Residential Acute Level of Care' criteria provided in his appeal."[6] Regardless of this assertion, the IRO's decision is not Premera's decision—it is made by an independent entity approved by the State of Washington, not Premera.

In any event, the IRO's decisions and Premera's decisions are not "shifting" or inconsistent.  Plaintiff uses three examples to support his assertion:

- When PBC [Premera] originally declined to cover M.B.'s residential treatment on March 11, 2015, it reasoned that the treatment was not medically necessary because a "treatment to treat mental health condition is medically necessary only when the plan is to stabilize your difficulties in a short term stay, usually approximately 90 days or less," and "only when discharge planning is started early in the stay and continues during the stay until completed." PRE_BER001377.

- After Peter B. appealed the denial on September 3, 2015, arguing that the Plan's continuous residential treatment criteria do not contain any reference to the 90-day stay limitation and asking PBC to include in its response specific references M.B.'s medical records supporting the lack of medical necessity determination, PBC responded on October 2, 2015, arguing that the denial was proper because "due to the fact that the patient has not shown evidence of consistent improvement in the time he has been in this residential setting." PRE_BER000033.

- On January 28, 2016, Peter B. requested an external review of PBC's denial, and on December 2, 2016[7], AMR [the IRO] issued the final report upholding the PBC's denial of coverage referring to the MCG Guidelines for Residential Acute Behavioral Health Level of Care, Child or Adolescent criteria. PRE_BER000938. It is apparent that AMR utilized improper criteria because the terms such as "imminent danger to self," or "imminent danger to others," are not part of the residential treatment continued stay criteria. PRE_BER000938, 001392-001396. AMR also reasoned that M.B. did not

---

[6] Plaintiff erroneously states that the IRO issued its opinion on December 2, 2016.  However, it was issued on February 12, 2016.  The reviewer was Australian and placed the month before the day before the year in numerically identifying the date. Ex. 10 [PRE_BER000934-39].
[7] Again, the review was actually issued on February 12, 2016, not December 2, 2016.

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 14
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

1

exhibit "[s]evere psychiatric symptoms [] (eg. hallucinations, delusions, other acute

2

psychotic symptoms, mania, severe autistic behaviors). [sic] [not met from 3/12/15

3

onwards, as there was no documented psychosis, mania, or severe autistic

behaviors….]" PRE_BER000938.

4

Plaintiff's Motion at 16-17. "In sum," according to Plaintiff, "Peter B. received three denials of

5

coverage for M.B.'s residential treatment, each of them containing a different rationale for why

6

M.B.'s residential treatment at DA was not medically necessary." Plaintiff's Motion at 17.

7

Actually, all three rationales are consistent, and supported by the threshold criteria set

8

forth in Premera's "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment."

9

As discussed above, the one circumstance (subsection a.) that is described as justifying a longer

10

period of residential treatment than 5-7 days, and therefore the relevant criterion here, states

11

that "clinical progress must be evident" "within thirty days," or, if it is not, "beginning

12

improvement must be evident within an additional seven days, followed by observable clinical

13

progress in symptom reduction, functional improvement, or improvement in behavioral control

14

every seven to ten days." Ex. 5 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health:

15

Psychiatric Residential Treatment," "Severity of Illness Criteria for Continued Stay,"

16

subsection a.).

17

Thus, in deciding the first Internal Appeal, Premera gave Plaintiff the benefit of the

18

doubt in concluding that the M.B.'s residential treatment at Daniels Academy was not

19

medically necessary because a "treatment to treat mental health condition is medically

20

necessary only when the plan is to stabilize your difficulties in a short term stay, usually

21

approximately 90 days or less," and "only when discharge planning is started early in the stay

22

and continues during the stay until completed." PRE_BER001377. Pursuant to the relevant

23

criteria, Premera could have limited coverage for Plaintiff's stay to 30 days or less even were

24

his condition acute, if his condition were not improving— i.e., "clinical progress must be

25

evident" "within thirty days." The guidelines say that if the member is in an acute condition,

26

then he can stay in a residential facility for 30 days, if there's improvement. If there is no

27

improvement, then he has to be checked every 7 days to see if there is improvement. Premera

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 15
CASE NO. 2:16-CV-01904-BAT

1   denied the claim after 90 days—not 30 days—and paid for 90 days (even though his condition

2   was sub-acute, as Plaintiff has repeatedly represented in this case). Ex. 5 [PRE_BER001392]

3   ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment," "Severity of Illness

4   Criteria for Continued Stay," subsection a.) ("If the stay reaches thirty days without clinical

5   progress, then beginning improvement must be evident within an additional seven days,

6   followed by observable clinical progress in symptom reduction, functional improvement,

7   orimprovement in behavioral control every seven to ten days.").

8        In reimbursing 90 days of treatment with no clinical progress, Premera gave M.B. the

9   benefit of the doubt, substantially relaxing the foregoing limitation.  The next Internal Appeal

10  conclusion that the Daniels Academy residency was not medically necessary "due to the fact

11  that the patient has not shown evidence of consistent improvement in the time he has been in

12  this residential setting" was wholly consistent with the foregoing and the relevant criterion.

13  Residential treatment of over thirty days is medically necessary where "clinical progress" is

14  "evident."

15       However, the relevant criterion provides that even residential treatment of thirty days is

16  not medically necessary unless "[s]ignificantly impaired functioning or behavioral dyscontrol

17  continues to be present at a severity that requires 24/7 containment and treatment, or continued

18  repetitive harm to self or others or active risk of harm to self or others continues to be present at

19  a severity that requires 24/7 containment and treatment, or sufficient stabilization for partial

20  hospitalization or outpatient treatment has still not occurred following step-down from inpatient

21  treatment or treatment in a crisis stabilization facility."  Ex. 5 [PRE_BER001392] ("Policy:

22  3.01.508 Behavioral Health: Psychiatric Residential Treatment," "Severity of Illness Criteria

23  for Continued Stay," subsection a.).   Thus, the IRO's criteria referencing terms such as

24  "imminent danger to self," or "imminent danger to others," are indeed a part of the relevant

25  residential treatment continued stay criterion.

26       Regardless, as this Court has held, the IRO's opinion is not Premera's. It is  performed

27  by an independent organization that has been certified by the State of Washington, and the

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 16
CASE NO. 2:16-CV-01904-BAT

IRO's opinion is binding on the plan administrator.  *See K.F. ex rel. Fry v. Regence Blueshield*, No. 08 Civ. 0890(RSL), 2008 WL 4223613, at *2 (W.D. Wash. Sept. 10, 2008); *see also*, Complaint, ¶ 41, Ex. 10 [PRE_BER000934] ("Advanced Medical Reviews is an Independent Review Organization (IRO) certified by the Washington State Department of Health to review cases concerning adverse carrier decisions issued to managed care plan members.")  Therefore, the IRO's rationale, even if it differs from Premera's, cannot support an argument that Premera violated ERISA claims procedures.

There is no evidence of any violation by Premera of ERISA claim procedures.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the Defendants and dismiss this case, or, in the alternative, deny Plaintiff's Motion for Summary Judgment.

DATED:  October 9, 2017.

Kilpatrick Townsend & Stockton LLP

By   *s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
Address:  1420 5th Avenue, Suite 3700
Seattle, WA  98101
Telephone:  206.467.9600
Fax:  206.623.6793

Lane Powell PC

By *s/ Jessica N. Walder*
Jessica N. Walder, WSBA No. 47676
walderj@lanepowell.com
1420 5th Avenue, Suite 4200
Seattle, WA 98101
Telephone: 206.223.7000
Fax: 206.223.7101

*Attorney for Microsoft Corporation and Microsoft Corporation Welfare Plan*

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 17
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX:206.623.6793

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury of the laws of the State of Washington that on

October 9, 2017, I caused to be served a copy of the attached documents to the following

person(s) in the manner indicated below at the following address(es):

Brian S. King
BRIAN S. KING, PC
336 South 300 East, Ste 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facscimile: (801) 532-1936
Brian@briansking.com


☑  **by CM/ECF**
☐  **by Electronic Mail**
☐  **by Facsimile Transmission**
☑  **by First Class Mail**
☐  **by Hand Delivery**
☐  **by Overnight Delivery**


s/*Gwendolyn C. Payton*
Gwendolyn C. Payton

DEFENDANTS' OPP. TO PLAINTIFF'S MOT. FOR
SUMMARY JUDGMENT - 18
CASE NO. 2:16-CV-01904-BAT