THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PETER B., individually and as guardian of M.B., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>PREMERA BLUE CROSS, MICROSOFT CORPORATION, and MICROSOFT CORPORATION WELFARE PLAN,<br><br>Defendants. | Case No. 2:16-cv-01904-JCC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff Peter B., individually and as guardian of M.B., a minor, through his undersigned counsel and pursuant to F.R.C.P. 56, files the following Response in Opposition to the Motion for Summary Judgment filed by Defendants Premera Blue Cross, Microsoft Corporation, and Microsoft Corporation Welfare Plan (collectively "PBC") on September 15, 2017.

## OVERVIEW

PBC denied coverage for M.B.'s residential treatment at Daniels Academy ("DA"), a residential treatment center located in Utah. Before his admission to DA on January 1, 2015, M.B. received treatment at Second Nature wilderness program from September 30, 2014 through January 1, 2015, where he was diagnosed with Persistent Depressive Disorder ("PPD") in

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 1**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

addition to his previous Autism Spectrum Disorder ("ASD") and Obsessive Compulsive Disorder ("OCD") diagnosis. Although the treatment at Second Nature was somewhat beneficial, M.B. still suffered from debilitating OCD symptoms in addition to symptoms from his ASD. M.B.'s condition was exacerbated by the fact that he suffered from two functionally significant co-occurring disorders, ASD and OCD.

PBC covered a part of M.B.'s residential treatment, from January 1, 2015 through March 11, 2015, but refused to cover the remaining treatment. Each of PBC's denial letters, specifically the March 11, 2015 and the October 2, 2015, maintenance of denial, along with the December 2, 2015 external review letter provided different rationale for the denial of M.B.'s residential treatment. PBC refused to consider the ample evidence in M.D.'s medical record that Peter B. provided in his appeals, showing that M.B. was responding to and was in need of continuing residential treatment. M.B. was treated in an outpatient setting without any success.

Peter B. asks this Court to reverse PBC's denial of benefits because PBC's constant shifting of the denial rationale indicates that PBC was bent on the denial of benefits regardless of Peter B.'s arguments in his appeals and M.B.'s medical record. The argument below will demonstrate that PBC's decision was arbitrary and capricious.

**PETER B.'S RESPONSES TO DEFENDANTS' FACTS**

Peter B. only cites facts that are disputed. The rest of PBC's facts in its Opening Brief are undisputed.

**A.     The Plan and Premera as Third –Party Administrator.**

**PBC's Facts:** Premera is the Plan's third-party administrator. Complaint, ¶ 4; Exhibit 1 (Premera-Microsoft Administrative Services Contract, "ASC"); *see* Declaration of G. Payton. As

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 2
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

such, Premera has complete discretion to accept or deny claims, but the Plan is financially responsible to pay them. *See infra* at 9-10; Exhibit A (ASC, pp. 3-4).

**Peter B.'s Response**: Disputed that PBC is the Plan's third party administrator, and that, as such has complete discretion to determine benefits under the Plan. There is no master plan document in the record designating PBC as a third party administrator, the 2015 and the 2016 SPDs do not contain discretionary language granting PBC discretionary authority and the services agreement between Microsoft and PBC cannot serve as a master plan document. The rest of the factual background in this paragraph is undisputed.

**B. The Daniels Academy.**

**PBC's Facts:** In this action, Peter B. claims reimbursement from the Plan for tuition for his son M.B.'s residency and treatment at Daniels Academy, a self-described "boarding school for boys" who suffer from "learning disabilities or social differences" that provides a "residential, homelike environment to introduce a new set of coping skills for our students who have learning disabilities or social differences." Ex. 2.

**Peter B.'s Response:** Disputed that Peter B. seeks reimbursement for his son M.B.'s tuition at DA. Rather, Peter B. seeks reimbursement for medical care costs incurred when M.B. received residential treatment at DA. Peter B. also disputes that DA is a boarding school in a traditional sense. Although, DA calls itself a "boarding school for boys" it is a residential treatment center and PBC never disputed that in the pre-litigation process. In its March 11, 2015, denial letter, PBC stated: "This letter is regarding your admission on January 1, 2015, for Continued Mental Health Residential Treatment." PRE_BER001377. The rest of the factual background in this paragraph is undisputed.

**C. Premera's Medical Policy for Residential Treatment Centers.**

**Peter B.'s Response**: Undisputed.

**D. M.B.'s Claim for Residential Treatment is Reviewed and Denied by Premera and Two Independent Reviewers.**

**PBC's Facts:** Premera notified Peter B. that for chronically non-acute cases such as M.B.'s, the Plan provides coverage for residential treatment only where short-term stabilization treatment

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 3  
MOTION FOR SUMMARY JUDGMENT  
Case No. 2:16-cv-01904 JCC  

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

was required. *Id.* Premera noted that Daniels Academy expected M.B.'s residency would last for fourteen months, and therefore Premera concluded that there was no coverage under the Plan for such services. *Id.* In addition, Premera notified Peter B. that the claim was deficient because Daniels Academy had not developed a discharge plan for M.B., which was required by the Plan. *Id.* Therefore, as Premera notified Peter B., M.B.'s residency at Daniels Academy was not medically necessary, and the plan would not cover Daniels Academy tuition payments. Complaint, ¶ 36; Ex. 3 [PRE_BER000255-56].

**Peter B.'s Response:** Disputed that in a letter dated March 11, 2015, PBC "notified Peter B. that for chronically non-acute cases such as M.B.'s, the Plan provides coverage for residential treatment only where short-term stabilization treatment was required. "In the letter PBC informed Peter B. that the Plan's guidelines for continued residential treatment "is medically necessary only when the plan is to stabilize your difficulties in a short-term stay, usually approximately 90 days or less, and then transfer to another level of care." PRE_BER001377. Disputed that PBC it its March 11, 2015 letter, refers to M.B.'s treatment at DA as "M.B.'s residency" or to coverage for medical services provided as "tuition payments." *Id*.

**PBC's Facts:** On September 3, 2015, Peter B. appealed the denial of coverage through Premera's internal appeal process ("Internal Appeal"). Complaint, ¶ 37. Peter B.'s Internal Appeal letter argued that the Plan's coverage did not impose any limitation that treatment be medically necessary or any time limit on treatment for mental health conditions. *Id.*

**Peter B.'s Response:** Disputed that in the September 3, 2015, appeal Peter B. "argued that the Plan's coverage did not impose any limitation that treatment be medically necessary." Instead Peter B. argued that the guidelines utilized by PBC to determine medical necessity of M.B.'s treatment were superseded by the 2015 SPD that does not contain "any exclusions, limitations or restrictions on mental health and substance abuse care." PRE_BER000046.

**PBC's Facts:** Mr. Weiss treated M. B. from December 31, 2013 to September 24, 2014 for Obsessive Compulsive Disorder. Ex. 7 [PRE_BER000495]. He has had no contact with M.B. since September 24, 2014, and had no contact with Daniels Academy in connection with M.B.'s treatment. *Id.*

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 4
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

**Peter B.'s Response:** Disputed that Mr. Peter Weiss, M.B.'s former therapist "had no contact with M.B. since September 24, 2014, and no contact with Daniels Academy in connection with M.B.'s treatment." PBC makes this speculation based on Mr. Weiss letter, which contain no specific facts to support PBC's conclusion. PRE_BER000495.

**PBC's Facts:** Mr. Maughan's letter was dated August 11, 2015. At that time, M.B. had spent over seven months at Daniels Academy (since January 1, 2015). Ex. 6 [PRE_BER000492-93]. In terms of the benefit that Daniels Academy could provide M. B. if he stayed there, the crux of Mr. Maughan's opinion was that M. B. "has recently started to take accountability and responsibility for his choices rather than assigning blame to external things or people, taking Victim Stance, or Externalizing Blame, both cognitive distortions that interfere with the ability to take responsibility." Ex. 6 [PRE_BER000492].

**Peter B.'s Response:** Disputed that the language from the August 11, 2015, letter written by Mr. Douglas Maughan, cited in PBC's Brief, p. 7, is "the crux of Mr. Maughan's opinion" '[i]n terms of the benefit that Daniels Academy could provides to M.B." PBC makes a conclusion that is better suited for the argument than the facts section. PRE_BER000283.

**PBC's Facts:** According to Dr. Holmes, M.B.'s chronic sub-acute condition had stabilized, and residency at Daniels Academy after March 11, 2015 was not medically necessary: "The patient continues to display difficulties that are consistent with his diagnoses, including interpersonal conflict and episodes of aggression. Since there is no evidence of improvement in the residential setting, there is no need for such treatment to continue. The patient is in need of chronic treatment, but this does not need to take place in the residential treatment setting." Ex. 8 [PRE_BER000273].

**Peter B.'s Response:** Disputed that Dr. Holmes stated, "M.B.'s chronic sub-acute condition has stabilized," in the record cited. PRE_BER000273.

**PBC's Facts:** The Washington Office of the Insurance Commissioner selected an independent review organization, Advanced Medical Reviews, to conduct the independent review. Ex. 10

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 5
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

[PRE_BER000934]. "Advanced Medical Reviews is an Independent Review Organization (IRO) certified by the Washington State Department of Health to review cases concerning adverse carrier decisions issued to managed care plan members." Ex. 10 [PRE_BER000934].

**Peter B.'s Response:** Disputed that the record cited states that the Washington Office of the Insurance Commissioner selected an independent review organization. PRE_BER000934.

**PBC's Facts:** On February 12, 2016, the IRO upheld the prior denial of coverage. Ex. 10 [PRE_BER000934-39]. The IRO concluded that M.B. did not meet the criteria for an acute condition requiring residential care, and therefore Daniels Academy was not medically necessary (Daniels Academy is not qualified in any event to treat acute conditions). Ex. 10 [PRE_BER000934-39]; Complaint, ¶ 43.

**Peter B.'s Response:** Disputed that the date on which AMR completed its final report is February 12, 2016. The AMR's final report was completed on December 2, 2016. PRE_BER000934. The rest of the factual background in this paragraph is undisputed.

## ARGUMENT

### I. THE APPROPRIATE STANDARD OF REVIEW IS *DE NOVO* BECAUSE PBC HAS NO DISCRETIONARY POWER TO DETERMINE BENEFITS UNDER THE PLAN

PBC does not contest in its Opening Brief, docket #37, p. 10, that under any ERISA plan the standard of review is *de novo* unless the plan-governing document grants discretionary authority to a plan administrator to interpret the terms of the plan and determine eligibility for benefits under the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Ninth Circuit held that "for a plan to alter the standard of review from the default of *de novo* to the more lenient abuse of discretion, the plan must unambiguously provide discretion to the administrator. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 6  
MOTION FOR SUMMARY JUDGMENT  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999)). "The essential first step of the analysis, then, is to examine whether the terms of the ERISA plan unambiguously grant discretion to the administrator." *Id.*

As Peter. B. argued in this Opening Brief, docket #42, pp. 12-13, there is no master plan document in the record for the Court to determine whether PBC in fact has discretionary authority to determine benefits under the Plan. It is well established that "the record that was before the administrator furnishes the primary basis for review" *Kearney a*t 1090.  ERISA requires that:

> Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

29 U.S.C. 1102(a)(1)

The copies of the 2015 and 2016 SPD that are in the record are summaries of the governing plan documents, not the documents themselves. *CIGNA Corp v. Amara*, 563 U.S. 421, 436-438 (2011). Also, there is nothing in the record indicating the SPDs are part of the master Plan either.  *Prichard v. Metropolitan Life Ins. Co.,* 783 F.3d 1166, 1169 (9th Cir. 2015).  Even if the Court accepts the possibility that the SPDs in the record were incorporated into the master Plan, there is no discretionary language in the SPDs granting discretionary authority to PBC.

PBC argues in its Opening Brief, p. 10, that "the Plan contains a clear, unambiguous grant of discretionary authority to interpret the Plan's terms and determine benefits eligibility through the Administrative Services Contract between Premera and Microsoft." The Administrative Services Contract between Microsoft and Premera provides:

> **1.02**   **Benefits**. The Plan Sponsor shall have final discretionary authority to determine the benefit provisions and to construe and interpret the terms of the Plan.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 7**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

  **1.03 Eligibility.** The Plan Sponsor shall have final discretionary authority to determine eligibility for benefits and the amount to be paid by the benefit program(s).

*Id.* (emphasis in original).

The service agreement between Microsoft and PBC is a contract for services and its provisions cannot serve as the terms of the Plan, much less than provisions of the 2014 and 2015 SPDs. *Amara* at 436-438. There is no evidence in the record that the Administrative Service Contract is part of the Plan's governing document, and consequently cannot confer any discretionary authority on PBC. Even if the terms of the Administrative Service Contract were part of the master Plan document, "[a]ny terms that concern the relationship between the claims administrator and the beneficiaries cannot be held against the beneficiaries where, [], the terms appear in a financing arrangement between the employer and the claims administrator that was never seasonably disseminated to the beneficiaries against whom enforcement is sought." *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.,* 813 F.3d 420, 429 (1st Cir. 2016). There is no evidence that PBC ever disclosed the terms of Administrative Service Contract to the Plan participants. Moreover, PBC attached the Administrative Contract Agreement to their Opening Brief as Ex.1, and that is something PBC cannot do. The Administrative Services Contract is not part of the record before the Court, and the Court should not consider its terms. *Kearney a*t 1090.

Additionally, the language in the Administrative Services Contract does not mention PBC as a plan administrator; it only states that the plan sponsor, who is Microsoft Corporation, "shall have final discretionary authority." Opening Brief, p. 10.

Because there is no governing Plan document before the Court there is no ability for the Court to verify that the SPDs in the record accurately reflect the terms of that document. This

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 8**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

Court has no way of knowing whether (1) the terms of the SPDs conflict with the master Plan document or (2) the terms of the SPDs are authorized by, or reflected in, the master Plan. Without an opportunity to review the governing master Plan document(s), the SPDs may not be enforced as containing the terms of the ERISA benefit Plan. *Prichard,* 783 F.3d at 1171.

PBC argues that this Court should ignore decision in *K.F. v. Regence BlueShield*, 2008 U.S. Dist. LEXIS 69150, *6 (W.D. Wash., Sept. 10, 2008) where the Court applied a *de novo* standard to an external reviewer decision adopted by a plan administrator reasoning that an external reviewer decision "was mechanical and did not involve the exercise of discretion." PBC's Brief, pp.10, 11. The importance of the application of a *de novo* standard to an external reviewer's decision as discussed in *K.F.*, is clearly demonstrated in this case. AMR's decision to uphold the denial relied not just on a different rationale, but took a new direction utilizing criteria for acute psychiatric hospitalization instead of residential criteria for continued stay to evaluate medical necessity of M.B's continued treatment at DA. PREJ_BER 000938-39, 000140-144.

PBC's contends that "IRO strengthens not weakens grounds for an abuse of direction standard" PBC's Brief, p. 11, citing *Estate of Larrimer v. Med. Mut.,* No. 2:06-CV-0920, 2009 U.S. Dist. LEXIS 47839 *25, (S.D. Ohio May 27, 2009). In *Estate of Larrimer* the plan administrator and the two external reviewers denied coverage based on the same rationale that the condition of a patient did not necessitate medical air transport. *Id.* at 3-12. The facts in this case are clearly distinguishable where Peter B. received three different rationales for denial of M.B.'s treatment based on different criteria. Even if PBC is accorded deference, its denial of benefits cannot survive an arbitrary and capricious standard. To have this Court consider whether the external reviewer's decision deserves the same deference, PBC has to prove first that it in fact was granted discretionary power by the Plan's governing document. PBC did not meet the

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 9**  
**MOTION FOR SUMMARY JUDGMENT**  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

standard the Supreme Court set in *Firestone* and a *de novo* standard of review applies to its decision to deny benefits.

## II. SUBSTANTIAL EVIDENCE IN M.B'S MEDICAL RECORDS AND HIS BEHAVIORAL AND TREATMENT HISTORY DEMONSTRATE THAT RESIDENTIAL TREATMENT WAS MEDICALLY NECESSARY TO TREAT M.B.' CONDITION

### A. Evidence Containing Opinions of M.B.'s Treating Providers is a Part of the Record and Clearly Demonstrates that M.B. Made a Progress While in Treatment at DA.

PBC argues in its Opening Brief, p. 13, that there is "no competent medical evidence" supporting Peter B.'s claim. To support that conclusion PBC relies on "two letters from M.B.'s treating therapists discussing and recommending the need for residential treatment: Peter Weiss, MA, LMHC and Douglas W. Maughan, LCMHC," ignoring the rest of M.B's medical record. *Id*. at 15. In its discussion regarding the apparent lack of competent medical evidence" PBC ignored the second letter from Mr. Maughan, dated January 23, 2016, providing an extensive update on the progress M.B made as a result of the therapy he received at DA, and the opinion of Steve Debois, Ph.D., M.B's therapist from the Second Nature wilderness program, expressed in the Discharge Summary. PRE_BER000693-692, PRE_BER000278-280.

Mr. Weiss treated M.B. for Obsessive Compulsive Disorder ("OCD") from December 31, 2013 through September 24, 2014, on an outpatient basis. PRE_BER000495. Based on his training and experience as a licensed mental health counselor, Mr. Weiss observed that M.B. "had a particularly severe case, which was made more complicated and difficult to treat due to [M.B.'s] persistent denial that he had OCD. [M.B.'s] compulsions could quickly become violent and destructive in nature, and on many occasions his parents reported to me aggressive behavior at home, directed toward property and a times his parents." *Id.* Mr. Weiss' opinion and

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 10**  
**MOTION FOR SUMMARY JUDGMENT**  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

recommendation for M.B. to receive a residential treatment was based on the observations made when he treated M.B., and it was apparent to Mr. Weiss that M.B.'s mental condition was declining. During the treatment M.B.'s "physical aggression escalated [] to a degree that [M.B.] needed more support and intensive care than he could receive in an outpatient setting." *Id*. Mr. Weiss recommended what in his professional opinion was the best course of action to get M.B. adequate treatment. He referred M.B.'s parents to an educational consultant, which subsequently led to M.B. being admitted to the Second Nature's wilderness program. *Id*.

Contrary to PBC's assertion that "Peter B. has not offered, designated, or disclosed any other treating therapists or physicians, nor any independent expert opinions," PBC Brief, p. 15, Peter included in the record the opinion of Steve Debois, Ph.D., M.B.'s treating clinician from Second Nature wilderness program where M.B was treated from September 30, 2014, through January 1, 2015. PRE_BER000278-280. PBC also ignored numerous therapy notes from DA. PRE_BER000283-470.

At Second Nature, where M.B. was admitted after unsuccessful outpatient treatment, he was treated for Obsessive Compulsive Disorder, Autism Spectrum Disorder and Persistent Depressive Disorder symptoms. Steve Debois, Ph.D., M.B.'s treating therapist, noted in the Second Nature's Discharge Summary the following:

> [M.B.] was genuinely motivated to make progress at Second Nature…However, I remain extremely concerned regarding his risk for relapsing in the areas of debilitating OCD, social difficulties, and depression if he were to return to his home environment…if any log-term gains are to be made, [M.B.] must be in a residential treatment setting…Returning to his home environment, even with intensive outpatient therapy or school accommodations, would most certainly result in significant regression and a return to his previous level of functioning.

PRE_BER000280.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 11**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    Mr. Debois' statement about M.B. being motivated to participate in therapy and to make

2 progress shows that even the wilderness program at Second Nature was beneficial to M.B. Mr.

3 Weiss described difficulties in treating M.B on an outpatient basis because he was in "persistent

4 denial that he had OCD." PRE_BER000495.

5    PBC's conclusion that Mr. Maughan wrote his August 11, 2015 letter, after M.B. "had

6 spent over seven months at Daniels Academy (since January 1, 2015), and Mr. Maughan

7 recognized that M.B.'s condition had not improved," is an overstatement and does not reflect the

8 analysis and conclusions made by Mr. Maughan in both of his August 11, 2015 and January 23,

9 2016, letters. PBC's Brief, p.16.

10    On August 11, 2015, Mr. Maughan, M.B.'s primary therapist at DA wrote that M.B has

11 "two functionally significant diagnosis" Autism Spectrum Disorder (ASD) and Obsessive

12 Compulsive Disorder (OCD), described as co-occurring disorders. PRE_BER000492. The

13 Substance Abuse and Mental Health Services Administration (SAMSHA) describes co-occurring

14 disorders:

15    Co-occurring disorders can be difficult to diagnose due to the complexity of
16    symptoms, as both may vary in severity. In many cases, people receive treatment
17    for one disorder while the other disorder remains untreated. This may occur
18    because both mental and substance use disorders can have biological,
19    psychological, and social components. Other reasons may be inadequate provider
20    training or screening, an overlap of symptoms, or that other health issues need to
21    be addressed first.

23    *Id* at https://www.samhsa.gov/disorders/co-occurring (last checked 9/25/17).

25    The complexity involved in diagnosing and treating co-occurring mental health disorders

26 is clearly demonstrated in Mr. Maughan's August 11, 2015, letter when he wrote:

27    Treatment prior to Daniels Academy focused on attempting to treat OCD, which
28    in essence was not successful because [M.B] was being asked to do things he is

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 12**  
**MOTION FOR SUMMARY JUDGMENT**  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

> not neurologically capable of doing, but with his high IQ was able to say what was needed to be said without the ability to act on his "insight."
>
> …
>
> [M.B.] has just crossed a pivotal milestone in his personal treatment just [sic] recently. Most students at Daniels Academy with just ASD often reach this milestone within a month to three months. **Due to [M.B.'s] compromised neurological state with the addition to OCD it has taken his longer. [M.B.] has recently started to take accountability and responsibility for his choices.**

PRE_BER000492 (emphasis added).

M.B.'s ASD and OCD were co-occurring, slowing down the progress and improvement he would have made had there only been only one disorder present. PBC points to the opinion of Dr. William Holmes, in the October 2, 2015 denial, who on behalf of Medical Review Institute of America, Inc. (MRIoA) performed the review and concluded that M.B.'s residential treatment was not medically necessary because "he continues to have problems related to his obsessive-compulsive disorder, along with poor social interactions, which are characteristic of autism spectrum disorder" PRE_BER000039. Dr. Holmes reasoned that because M.B. has "frequent interpersonal conflict, including episodes of mild to moderate aggression along with temper outbursts" he should be put in "some type of long term placement that would provide supervision while also providing ongoing outpatient therapy and medication management. The patient needs supervision and structure to assist him in his daily activities. PRE_BER000039-40. In other words, based on his simplistic analysis, Dr. Holmes recommended institutionalizing M.B., without recognizing the interplay, complexity and therapeutic demands of treating co-occurring mental health disorders.

PBC's contention that "Mr. Maughan recognized that M.B.'s condition had not improved" is patently wrong. PBC's Brief, p. 16. In his August 11, 2015, letter Mr. Maughan wrote:

**PLAINTIFF'S RESPONSE TO DEFENDANTS' –** Page 13  
**MOTION FOR SUMMARY JUDGMENT**  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

> Seven months of consistent moment to moment interventions and [M.B.] choosing to be actively engaged in the process of skill development and change is starting to have dividends.
>
> …
>
> Now that [M.B.] **has made the previously mentioned neurological connections and because they are skilled based, he will retain his growth and be able to continue demonstrating the skills** and continue to develop the skills that will support his desire to improve himself so that he can be functional.

PRE_BER000493 (emphasis added).

In addition to the August 11, 2015, letter, Peter B. included a second letter written by Mr. Maughan dated January 23, 2016, in which he detailed the progress M.B. made in several areas including life skills, social learning an executive functioning. PRE_BER00062-693. In that letter Mr. Maughan touched on co-occurrence of M.B.s disorders:

> There is 38% co-occurrence of ASD an OCD. The ASD executive function deficits interfere with the ability of the Cognitive structures to down-regulate the effects of this OCD. [M.B] seems to be about half way through his journey of learning skills for his ASD so that he successfully down-regulate the effects of his OCD.

PRE_BER000492.

If the Plan's definition of medically necessary services includes services that are "essential to the diagnosis or treatment of an illness," the "standard of care" PBC recommended for M.B.'s treatment clearly does not meet that standard. PRE_BER000040. As Mr. Maughan explained in both of his letters, M.B.'s condition is clearly treatable and M.B. responded to the residential treatment. But PBC recommends managing M.B.'s condition long term rather than providing treatment that would equip M.B. with skills to become a fully functioning adult. *Id.* If M.B. were to be put in "some type of long term placement that would provide supervision…ongoing outpatient therapy and medication management," as PBC recommends, it does not explain how its proposed treatment would improve M.B.'s condition when residential

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 14**  
**MOTION FOR SUMMARY JUDGMENT**  
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC  
800 Fifth Avenue, Suite 4100  
Seattle, WA 98104  
206-447-1342; 206-577-5380 (fax)

treatment allegedly did not. PRE_BER000040. M.B. had already been treated in an outpatient setting before admission to DA, which proved to be inadequate to treat his condition, as Mr. Weiss noted in his letter. ." PRE_BER000495. M.B.'s co-occurring disorders required more intensive and comprehensive treatment, which is a residential treatment, and denying M.B. such treatment, is equivalent to denying M.B. a chance to fully develop his potential to become a fully functioning adult.

### B. The Constantly Shifting Rationale for the Denial Renders PBC's Decision to Deny Coverage for M.B.'s Treatment at DA Arbitrary and Capricious.

PBC argues that because two "Independent External Reviewer[s]" agreed that M.B.'s condition had not improved while being treated at "Daniels Academy's boarding school," PBC's denial of coverage was justified. PBC's Brief, p. 14. In fact, the three denials provide rationales that don't relate to each other and stand on different grounds.

PBC cites *Tracy O. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 2:16-CV-422-DB, 2017 WL 3437672, at *9 (D. Utah Aug. 10, 2017) (appeal filed September 7, 2017), to show that "the independent physician reviewers reached similar conclusions with respect to M.B." agreeing that M.B.'s condition had not improved and that he needed a different course of treatment. PBC' Brief, pp. 14-15. *Tracy O.* is distinguishable because the reviewers in this case did not utilize the same rationale for the denials and PBC cannot say that they agreed. Peter B. explained in his Opening Brief, docket# 42, pp. 16-18, how PBC shifted rationales for the denial during the appeal process.

Moreover, in arguing that M.B.'s residential treatment was not medically necessary PBC focuses mainly on the rationale provided in their second denial, namely that M.B. "has not shown evidence of consistent improvement in the time he has been in this residential setting."

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 15**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

PRE_BER000033. PBC provides no analysis relating to their first denial rationale that residential treatment is medically necessary "only when the plan is stabilize your difficulties in a short term stay, usually approximately 90 days or less" and when there is early discharge planning. PRE_BER001377. There is also no analysis of AMR's final denial in which AMR concluded that M.B.'s residential treatment was not medically necessary because he did not present imminent danger to self and others, was not hallucinating, delusional or manic, including lack of "severe autistic symptoms." PRE_BER000937-38. AMR's analysis of medical necessity under the Plan's acute inpatient treatment criteria was a clear departure from Dr. Holmes' reasoning that M.B. was not showing consistent progress. PRE_BER000033.  It would be hard to reconcile AMR's denial rationale with the other two rationales, and, in fact, all three rationales with each other.

As Peter B. discussed in his Opening Brief, the Ninth Circuit has considered this problematic issue of shifting rationales in ERISA claims is several of its decisions, concluding that changing of rationales for denial of benefits suggests abuse of discretion by insurance providers, contravening the purpose of ERISA, especially when the new denial rationale is raised in the final decision, as in this case. See *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011) (holding shifting of the grounds for denial suggests abuse of discretion); *Collins v. Liberty Life Assur. Co.*, 988 F.Supp.2d 1105, 1130 (C.D. Cal. 2011) (finding that shifting rationales contravenes the purpose of ERISA); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945 (9th Cir. 2014) (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir 2006) (*en banc*)) (determining that raising a new rationale in the final denial prevents a plan participant to respond to it). It is not only the Ninth Circuit that recognizes this problematic issue in ERISA claims. The Sixth Circuit reasoned that providing a different rationale for the denial of

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 16
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

benefits in the final denial letter is "unreasoned and unprincipled," finding the denial of benefits arbitrary and capricious due to internal inconsistencies in the record. *Houston v. UNUM Life Ins. Co. of Am.,* 246 Fed. Appx. 293 *301-303 (6th Cir. 2007). In *Robinson v. Aetna Life Ins. Co., the* Fifth Circuit found that "Aetna's shifting justification for its decision [] meant that Robinson was unable to challenge Aetna's information or to obtain meaningful review of the reason his benefits were terminated. 443 F.3d 389, 394 (5th Cir. 2006).

In its Opening Brief, PBC now suggests that DA is a boarding school and that PBC refused to pay "tuition" for M.B.'s "extended stay", implying yet another rationale for the denial of coverage. *Id*. at 1-2. Although DA calls itself a boarding school for boys, PBC is well aware that it is not a traditional boarding school offering general education, but is a licensed residential treatment center where charges are as for medical services, not tuition. https://hslic.utah.gov/db-search (last checked 10/10/2017). PBC recognized that DA is in fact a residential treatment center when in its March 11, 2015, denial letter, PBC stated: "This letter is regarding your admission on January 1, 2015, for Continued Mental Health Residential Treatment." PRE_BER001377.

PBC refers to Mr. Maughan's August 11, 2015 letter and Mr. Weiss' August 6, 2015, letter as if those two letters comprise M.B's entire medical record and the question of medical necessity entirely hinges on the credibility of it authors, even implying that Mr. Maughan had a conflict of interest as an employee of DA. PRE_BER000492, PRE_BER000495, PBC Brief, p. 16.

It should be noted that while PBC attempts to discredit Mr. Maughan's statements in his August 11, 2015, letter as "lacking foundation" and "irrelevant," at the same time PBC relies on

PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 17
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

those same statements to argue that M.B. did not make any progress in residential treatment. PBC's Brief, p.16.

Second, PBC argues that Mr. Maughan's and Mr. Weiss' letters are "no competent admissible evidence that M.B.'s residential treatment…is medically necessary" because PBC initially concluded that it wasn't and Dr. Holmes, "Independent Physician Reviewer" agreed. PBC's Brief, p. 14. The difference in opinion about the medical necessity of M.B.'s residential treatment does not automatically mean that Mr. Maughan's and Mr. Weiss' letters are excluded and that there is "no responsive, cognizable evidence in the record." *Id.* Both letters are already part of the record and it is in the Court's discretion to decide how much weight it will afford them.

Finally, PBC asserts that because Mr. Maughan is a DA employee, he is "impaired by a conflict of interest." PBC's Brief, p. 16. But PBC does not explain how is it any different from Dr. Robert Small signing the March 11, 2015, denial letter or PBC hiring MRIoA and AMR to perform an external review on PBC's behalf. PRE_BER001378, 000037, 000934.

The inconsistent treatment of Peter B.'s appeal and providing different rationale on each review of his case indicates that PBC's denial of benefits was arbitrary and capricious and should be reversed.

Dated this 10th day of October, 2017.

    /s/ Brian S. King
Brian S. King (admitted *pro hac vice*)
BRIAN S. KING, P.C.
336 South 300 East, Suite 200
Salt Lake City, UT 84111
(801) 532-1739 (telephone)
(801) 560-0769 (cell)
brian@briansking.com

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 18**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

  John Walker Wood (WSBA #39120)
  The Wood Law Firm, PLLC
  800 5th Avenue, Suite 4100
  Seattle, WA 98104
  (206) 447-1342 (telephone)
  (206) 650-0765 (cell)
  (206) 577-5380 (facsimile)
  john@woodfirm.com

  Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 10th day of October 2017, the foregoing document was presented to the Clerk of the Court for filing and unloading to the CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of such filing to the following:

  Gwendolyn C. Payton
  Kilpatrick Townsend & Stockton LLP
  Suite 3700, 1420 Fifth Avenue
  Seattle, WA 98101
  (206) 626-7714
  (206) 299-0414
  GPayton@kilpatricktownsend.com

Dated this 10th day of October 2017.

        /s/ John Walker Wood
        John Walker Wood, WSBA #39120
        The Wood Law Firm, PLLC
        800 5th Ave, Ste 4100
        Seattle, WA 98104
        (206) 650-0765
        (206) 577-5380 (fax)
        john@woodfirm.com

**PLAINTIFF'S RESPONSE TO DEFENDANTS' – Page 19**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)