THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER B., individually and as guardian of M.B., a minor,<br><br>                  Plaintiff,<br><br>   v.<br><br>PREMERA BLUE CROSS, MICROSOFT CORPORATION, and the MICROSOFT CORPORATION WELFARE PLAN,<br><br>                  Defendant. | Case No. 2:16-CV-01904-BAT<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTE ON MOTION CALENDAR: OCTOBER 16, 2017<br><br>ORAL ARGUMENT REQUESTED |

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT
CASE NO. 2:16-CV-01904-BAT

103475.0003/6983675.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Pursuant to Federal Rule of Civil Procedure 56, Defendant Premera Blue Cross ("Premera"), and Defendants Microsoft Corporation Welfare Plan ("the Plan") and Microsoft Corporation (collectively, "Microsoft"), hereby submit their reply in support of their Motion for Summary Judgment.

## I.   INTRODUCTION

Plaintiff has failed to offer evidence establishing a prima facie case supporting his claim.

## II.   ARGUMENT

### A. Regardless of the Standard of Review, Plaintiff's Claim Should be Dismissed for a Failure of Proof.

Plaintiff's focus on the standard of review is a distraction from the real deficiencies in Plaintiff's case – regardless of the standard of review, Plaintiff has not shown that M.B.'s continued stay at the Daniels Academy boarding school was medically necessary.

#### 1. Plaintiff Has Not Demonstrated that a Continued Stay was Medically Necessary per the Plan Terms.

Plaintiff asserts that Premera "provides no analysis" of its denial rationale. Dkt 44 at 14-15 (citing PRE_BER001377 & PRE_BER000937-38). Premera thoroughly reviewed the records submitted by Plaintiff. To the extent that the record may be thin, that is due to Plaintiff's failure to provide robust evidence. **Plaintiff bears the burden of proving entitlement to benefits.** Further, Plaintiff has not designated an expert witness to present the clinical evidence supporting this theory that a long-term stay at Daniels Academy was medically necessary for M.B. The flimsy evidence set forth by unreliable providers is not sufficient to show that Plaintiff's treatment was medically necessary. See Dkt 37 at 5-9; Dkt 45 at 4-5 and cases cited therein.

In fact, William Holmes, MD, the "Independent Physician Reviewer" included by Premera in its appeals process[1], reviewed Peter B.'s appeal submission, other relevant claim

---

[1] Again, Dr. Holmes is a physician and a psychiatrist who is Board Certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry.

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 1
CASE NO. 2:16-CV-01904-BAT

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

information including from Daniels Academy, M.B.'s medical records, Premera's Medical Policy titled, "Behavioral Health: Psychiatric Residential Treatment  Number 3.01.508", and the Plan's coverage terms and conditions.  Ex. 8[2] [PRE_BER000273].

In denying Peter B.'s internal appeal on October 2, 2015, Premera relied in part on the opinion of Dr. Holmes that "[t]he residential treatment center is no longer within standard of care. The patient is in need of long-term placement, but this is different than the benefit or need for residential treatment."  Ex. 8 [PRE_BER000271].  According to Dr. Holmes, M.B.'s chronic sub-acute condition had stabilized, and residency at Daniels Academy after March 11, 2015 was not medically necessary: "The patient continues to display difficulties that are consistent with his diagnoses, including interpersonal conflict and episodes of aggression. Since there is no evidence of improvement in the residential setting, there is no need for such treatment to continue. The patient is in need of chronic treatment, but this does not need to take place in the residential treatment setting." Ex. 8 [PRE_BER000273].

Dr. Holmes detailed the information upon which he relied to reach his decision, including the information provided by M.B.'s providers.  Ex. 8 [PRE_BER000273].

As previously explained, each internal review at Premera consistently relied on the clear standards set forth by Premera's Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment.  Each stage of Premera's review considered M.B.'s condition and the care provided by Daniels Academy in light of that standard, and found that the stay at Daniels Academy was not medically necessary.

As previously discussed, the one circumstance (subsection a.) that is described as justifying longer than 5-7 days of residential treatment, and therefore the relevant criterion here, states that "clinical progress must be evident" "within thirty days", or if it is not,

---

Ex. 8 [PRE_BER000269-275].  Dr. Holmes's opinion included a "conflict of interest statement" certifying his independence and an absence of any conflict of interest on his part. *See* Ex. 8 [PRE_BER000274-75].

[2] The numbered exhibits referenced were submitted appended to the Declaration of Gwendolyn Payton, filed with Defendants' Motion for Summary Judgment, Dkt. 37.  Exhibits A and B are being submitted at this time with the declaration of Jessica Walder.

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 2
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

"beginning improvement must be evident within an additional seven days, followed by observable clinical progress in symptom reduction, functional improvement, or improvement in behavioral control every seven to ten days." Ex. 5 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a.).

In reimbursing 90 days of treatment with no clinical progress, Premera gave M.B. the benefit of the doubt in deciding the first Internal Appeal. Premera gave Plaintiff the benefit of the doubt in concluding that the M.B.'s residential treatment at Daniels Academy was not medically necessary because a "treatment to treat mental health condition is medically necessary only when the plan is to stabilize your difficulties in a short term stay, usually approximately 90 days or less", and "only when discharge planning is started early in the stay and continues during the stay until completed." PRE_BER001377. Pursuant to the relevant criteria, Premera could have limited coverage for Plaintiff's stay to 30 days or less even were his condition acute, if his condition were not improving— i.e., "clinical progress must be evident" "within thirty days."

The guidelines say that if the member is in an acute condition, then he can stay in a residential facility for 30 days, if there's improvement. If there is no improvement, then he has to be checked every 7 days to see if there is improvement. Premera denied the claim after 90 days—not 30 days—and paid for 90 days (even though his condition was sub-acute, as Plaintiff has repeatedly represented in this case). Ex. 5 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a.) ("If the stay reaches thirty days without clinical progress, then beginning improvement must be evident within an additional seven days, followed by observable clinical progress in symptom reduction, functional improvement, or improvement in behavioral control every seven to ten days.").

Further, Defendants have previously explained that the IRO's criteria referencing terms such as "imminent danger to self", or "imminent danger to others", are indeed a part of the

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 3
CASE NO. 2:16-CV-01904-BAT

Kilpatrick Townsend & Stockton LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600  FAX: 206.623.6793

relevant residential treatment continued stay criterion upon which Premera had previously relied in denying Peter B.'s claim. The relevant criterion provides that even residential treatment of thirty days is not medically necessary unless "[s]ignificantly impaired functioning or behavioral dyscontrol continues to be present at a severity that requires 24/7 containment and treatment, or continued repetitive harm to self or others or active risk of harm to self or others continues to be present at a severity that requires 24/7 containment and treatment, or sufficient stabilization for partial hospitalization or outpatient treatment has still not occurred following step-down from inpatient treatment or treatment in a crisis stabilization facility." Ex. 5 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a.).

**2.     The Provider Letters Contained in the Claims Record Are Insufficient to Demonstrate Medical Necessity.**

Plaintiff relies on letters submitted by three providers who treated M.B. Two of the providers, Steve Debois and Peter Weiss, had no contact with him while he was at Daniels Academy, and thus could not speak to the medical necessity of a continued stay at Daniels Academy. The third, Mr. Maughan, provided only brief and conclusory opinions explicitly for the purpose of persuading Defendants to cover the fees that his employer would charge. His letter contains no reference to the medical records per se.

Moreover, Plaintiff's argument that Defendants, as well as the two independent psychiatrists who reviewed Plaintiff's claim, relied upon Mr. Maughan's opinion should be disregarded. Dkt 44 at 17-18. Defendants' claim denial does not turn on whether M.B. has the conditions described in Mr. Maughan's letter, but rather whether a long term stay in a residential treatment center is medically necessary under the terms of Plaintiff's Plan. As explored more fully in Defendants' opening brief, Mr. Maughan's opinion fell well short of establishing that M.B.'s treatment at Daniels Academy was medically necessary as Plaintiff failed to meet the criteria necessary for establishing coverage. In other words, it is not a question of Mr. Maughan's credentials or the diagnoses of M.B., it is a question of whether

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 4
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600  FAX: 206.623.6793

Plaintiff, through Mr. Maughan's opinion or the opinions of others, has shown that this particular course of treatment was medically necessary.

The provider letters upon which Plaintiff relies are irrelevant because they do not address the policy contract's criteria for medically necessary treatment. Plaintiff's providers fail to address the critical Plan criteria necessary for establishing medical necessity. The Plan's standard for clinical progress is clear:

> Increased participation in treatment, increased attendance at treatment activities, increased compliance with treatment recommendations, increased compliance with facility/program rules, increased completion of assignments, increased "openness," building trust, increased discussion of problems or issues, increased insight, exploring or working on past or present issues, improving relationships, or similar processes, are not considered to be clinical progress in the absence of symptom reduction, functional improvement, or improvement in behavioral control.

Ex. 6 [PRE_BER001392] ("Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a.).

Instead of addressing this criteria or providing clear and detailed contemporaneous medical records to establish how M.B. meets this criteria, the providers instead make vague assertions about M.B.'s medical condition, but do not provide concrete benchmarks or evidence to establish that a stay at Daniels Academy is medically necessary. These provider opinions fall well short of providing the evidence necessary to establish medical necessity as defined in the Plan Instrument. *See* Ex. 4 [PRE_BER001389] (defining medical necessity).

Plaintiff selectively quotes from Mr. Maughan's two letters, but these excerpts do not provide any support for Plaintiff's claim, particularly when considering the Plan's strict guidelines for medical necessity and clear criteria for covering long-term residential treatment center stays. Mr. Maughan's letters certainly fail to establish clinical progress even after 90 days, much less the thirty days required by the applicable criteria, "Policy: 3.01.508 BehavioralHealth: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a. Ex. 5 [PRE_BER001392]; Dkt 43 at 7-8.

These letters, addressed "To Whom it May Concern", are not proper medical records.

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 5
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

No contemporaneously observed facts or objective metrics are provided to support the letters' conclusions. Specifically, Plaintiff focuses on the following quotations as follows:

- **"Due to [M.B.'s] compromised neurological state with the addition to OCD it has taken his [sic] longer. [M.B.] has recently started to take accountability and responsibility for his choices**. PRE_BER000492." (emphasis added by Plaintiff).

- "Now that [M.B.] **has made the previously mentioned neurological connections and because they are skilled based, he will retain his growth and be able to continue demonstrating the skills** and continue to develop the skills that will support his desire to improve himself so that he can be functional. PRE_BER000493." [emphasis added by Plaintiff].

- "There is 38% co-occurrence of ASD an [sic] OCD. The ASD executive function deficits interfere with the ability of the Cognitive structures to down-regulate the effects of this OCD. [M.B] seems to be about half way through his journey of learning skills for his ASD so that he successfully down-regulate the effects of his OCD. Dkt 44 at 14. [PRE_BER000492]."

Mr. Maughan provides nothing to substantiate the assertions about "neurological connections" or enable duplication of the artificially precise assertions, "38% co-occurrence of ASD an OCD" or "[M.B] seems to be about half way through his journey of learning skills." No explanation of or support for the foregoing assertions is provided. These statements do not provide any basis, grounded in the Plan's criteria, to support coverage for Plaintiff's claim. Moreover, they lack the basic indicia of reliability and relevance to hold up in Court. *See Mason v. Equitable*, 32 F. App'x 289, 292 (9th Cir. 2002) (In an action to recover benefits under ERISA, the Ninth Circuit explained that the district court may reject opinions offered by the claimant that lack reliability and relevance pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993)).

Further, assertions such as "[M.B.] has recently started to take accountability and responsibility for his choices", "he will retain his growth and be able to continue demonstrating the skills and continue to develop the skills that will support his desire to improve himself so that he can be functional", and "[M.B] seems to be about half way through his journey of

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 6
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

learning skills for his ASD so that he successfully down-regulate the effects of his OCD" reveal the very kind of modest progress interacting with his social environment that is identified in the criteria that are far from establishing clinical progress even after 90 days, much less the thirty days required by the applicable criteria, "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment", "Severity of Illness Criteria for Continued Stay", subsection a. Ex. 5 [PRE_BER001392]; Dkt 43 at 7-8. Mr. Maughan's subjective, self-serving assessments lacking basis in objective facts or science that fail to meet standards for medical necessity. Notably, Plaintiff has not designated any expert witnesses to testify to scientific evidence and industry standards supporting his claim that modest progress in social interactions demonstrates medical necessity for long-term residential treatment.

Moreover, the statements of the other two providers that Plaintiff relies upon are not remotely relevant to Plaintiff's claim as neither can opine on the treatment M.B. received at Daniels Academy nor on M.B.'s progress. For one, Steve Debois, Ph.D. was M.B.'s treating therapist at "Second Nature", did not see M.B. after he began his residency at Daniels Academy, or indeed after M.B. left Second Nature. *See* Dkt 11 at 44 (citing PRE_BER000280). He does not address Daniels Academy, and would lack foundation to do so. Similarly, Peter Weiss, MA, LMHC, treated M.B. for Obsessive Compulsive Disorder ("OCD") from December 31, 2013 through September 24, 2014, on an outpatient basis. PRE_BER000495. He did not see M.B. while he was at Daniels Academy and therefore is unqualified to opine as to the medical necessity of his treatment there.

Further, Plaintiff again attempts to buttress evidentiary deficiencies in his case with citations to Internet pages that are outside the administrative recorded. See Dkt 44 at 12. These Internet pages are generic and do not actually support Plaintiff's claim. Regardless, Plaintiff has failed to provide any basis for the Court to review such evidence. As an initial matter, such extra-record information gleaned from the Internet is inadmissible hearsay unless offered through an expert witness who lays the proper foundation for it. *See Bartholomew v. Unum Life Ins. Co. of Am.*, 588 F. Supp. 2d 1262, 1267–68 (W.D. Wash. 2008) (hearsay rule

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 7
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

barred court from considering law review article detailing administrator's abusive claims handling practices).  Furthermore, Plaintiff does not even attempt to have this page considered through judicial notice.  Thus, Plaintiff has failed to lay a proper foundation for these Internet pages, and they are therefore inadmissible.

Plaintiff's claim must be dismissed for a failure of proof.

**C.     There Are no "Shifting Rationales" for Denying Plaintiff's Claim.**

Plaintiff attempts to fit this case's record into the Ninth Circuit's admonition against "shifting rationales."  But here, this is just an empty catchphrase.  Defendants address this assertion by M.B. in depth in Dkt 43 at 13-18, and above at infra 2-5.  The independent physicians who have concluded that Daniels Academy's treatment, while perhaps beneficial, is not medically necessary for M.B., have expressed consistent rationales: all were based on Plaintiff's failure to meet the criteria clearly set forth in the applicable policy.

**D.     The Collective Plan Documents Establish that the Abuse of Discretion Standard Applies Here, Though Even Under a De Novo Review Standard, Plaintiff Has Failed to Establish a Prima Facie Case.**

For the reasons discussed above, regardless of whether the standard of review is de novo, as Plaintiff contends, or abuse of discretion, which should apply here given the unambiguous language of the plan documents, Plaintiff has failed to meet his burden of proof.  The standard of review here should be abuse of discretion, because the Plan gives Microsoft, as fiduciary, the discretionary authority to determine eligibility for benefits or to construe terms of the plan.  In turn, Microsoft has delegated these responsibilities to Premera to administer the Plan.  "The de novo standard is appropriate '**unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan**.'" *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations*, 244 F.3d 1109, 1112 (9th Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)) (emphasis added).

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 8
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

The Administrative Services Agreement ("ASA") between Premera and Microsoft is evidence that the appropriate standard of review here is abuse of discretion. The ASA discloses that the Plan contains a grant of discretionary authority to the "Plan Sponsor", i.e., Microsoft, to interpret the Plan's terms and determine benefits eligibility, and Microsoft has delegated certain administrative functions inherent to its discretionary authority, including claims adjudication, to Premera. *See* Premera's Motion for Summary Judgment, Dkt 37 at 10; Ex. 1 ("WHEREAS, the Plan Sponsor desires to engage the services of the Claims Administrator to provide administrative services for the Plan." "'Plan Sponsor' means Microsoft Corporation." "'Claims Administrator'" means Premera Blue Cross.")[3]

Courts have held that an administrative services agreement may establish the standard of review. *See Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) (holding that it was improper for a district court to decline to review the governing administrative services agreement where review of that document was necessary "to establish which entity actually decided her claim and therefore which standard of review was applicable in federal court").

Plaintiff, however, contends that the "master plan document"—the operative Plan instrument (hereinafter "Plan Instrument") that sets forth the beneficiary's benefits and the rules underlying the Plan—establishes the standard of review, not an administrative services agreement. The Plan Instrument is Exhibit A to the Declaration of Jessica Walder submitted herewith. Section 5.1 of the Plan Instrument provides, "[t]he Employer, [i.e., Microsoft] shall be the Named Fiduciary and the Plan Administrator of this Plan." Exhibit A at 13. Further, the

---

[3] Thus, Plaintiff has named both Microsoft and Premera in this litigation—Microsoft as plan sponsor retains final discretion to decide claims, in reliance on Premera's expertise as clams administrator. *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1204 (9th Cir.2011). The *Cyr* court explained that, in some circumstances, "[i]t is not enough to identify a plan administrator as a potential defendant, in addition to the plan itself," because "the plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay them." *Id*. at 1207. Here the Plan gives Microsoft authority to resolve benefit claims and delegates Microsoft with authority to pay them.

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 9
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

Plan Instrument grants Microsoft the requisite discretionary authority to establish the abuse of discretion standard of review:

> The Plan Administrator shall have all powers necessary or appropriate to carry out its duties, including, without limitation, the sole discretionary authority to take the actions described in Section 5.2(a) and to interpret the provisions of the Plan and the facts and circumstances of claims for benefits. Any interpretation or construction of or action by the Plan Administrator with respect to the Plan and its administration shall be conclusive and binding upon any and all parties and persons affected hereby, subject to the exclusive appeal procedure set forth in Section 5.6. Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them.

Exhibit A at 13-14, section 5.2 (b). These provisions are in turn disclosed to members through the Summary Plan Description ("SPD"). Indeed, here the operative SPD was clear: "The Microsoft plan administrator has the exclusive responsibility and complete discretionary authority to control the operation and administration of this plan, with all powers necessary to enable it to properly carry out such responsibility, including, but not limited to, the power to construe and interpret the terms of this summary plan description and any other plan documentation." Walder Decl., Exhibit B at 19. The ASA establishes that Microsoft has delegated certain administrative functions to Premera, including claims adjudication like determining the medical necessity of the claim at issue here. See Ex. 1. Therefore, both the Plan Instrument and the ASA make clear that the Defendants collectively possess authority and discretion to decide claims, which establishes the abuse of discretion standard. See *Ingram*, 244 F.3d at 1112 ("The de novo standard is appropriate 'unless the benefit plan gives the administrator **or** fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'") (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989))

Plaintiff claims that it is the Plan documents that determine the administrator's authority. He then contends that since he has not seen the Plan Instrument, it cannot be used as evidence to support Defendants' arguments on the standard of review. Yet, Plaintiff has always had access and been entitled to view the Plan Instrument. *See DiGregorio v. Hartford*

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 10
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600  FAX: 206.623.6793

*Comprehensive Employee Ben. Serv. Co.*, 423 F.3d 6, 14–15 (1st Cir. 2005) ("In the Preamble to the regulation, the Department of Labor expressed its view that '[a]s part of the review the participant must be allowed to see all plan documents and other papers which affect the claim,' and that 'plan procedures for review of claim denials must include the right of a claimant to ... review pertinent documents relating to the denial.'") (quoting 42 Fed.Reg. 27426, 27426–27 (May 27, 1977)). There is no evidence that Plaintiff was denied or prevented from this document. And, Plaintiff admits that he has had access to the SPD, which similarly grants such discretionary authority to Microsoft. Dkt 42 at 12-13. It is available on the Microsoft internal website. J. Walder Decl. at ¶ 5.

The fact that Plaintiff may never have reviewed the Plan Instrument, despite having been able to request it, does not affect the standard of review here. Indeed, to the best of the undersigned's knowledge, no court has applied de novo review because the plaintiff had not seen the plan instrument, which would otherwise call for an abuse of discretion standard. *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1171 (9th Cir. 2015), upon which Plaintiff relies, is inapposite, because there the Court reviewed the plan instrument and concluded that it was inconsistent with the SPD. *See id.* at 1171 (construing an "insurance certificate" to constitute the governing plan document, and concluding that "[b]ecause the official insurance certificate contains no discretion-granting terms, we will not, consistent with *Amara*, hold that the SPD's grant of discretion constitutes an additional term of the Plan"). However, here the SPD and the Plan Instrument are consistent—both documents unambiguously designate Microsoft with discretionary authority to interpret plan documents and decide benefit claims. *See* Walder Decl., Exs. A and B.

Finally, Plaintiff contends that the Plan Instrument is not part of the administrative record. But it is well established that the Court may consider plan documents, including to determine the standard of review, even if such documents were not part of the administrative record. In *Brooking v. Hartford Life and Acc. Ins. Co.*, 167 Fed.Appx. 544, 547 n. 4 (6th Cir. 2006), the Court held:

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 11
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793

> Hartford Life argues that we should be barred from considering the SPD [summary plan description] because it was not a part of the administrative record. In *Bass v. TRW Employee Welfare Benefits Trust*, 86 Fed.Appx 848, 851 (6th Cir.2004), we held that the rule preventing a reviewing court from considering evidence outside the administrative record does not preclude consideration of the plan documents. "The case law makes clear ... that the rule was intended to prevent the courts from looking past the evidence of disability-medical reports, correspondence, test results, and the like-considered by the plan administrator."

*Id*. at 547, n. 4; *see also, Helton v. AT & T Inc*., 709 F.3d 343, 353 (4th Cir. 2013) (same); *Zalduondo v. Aetna Life Ins. Co*., 941 F. Supp. 2d 125, 134 (D.D.C. 2013) ("Zalduondo's arguments, coupled with persuasive interpretations of *Amara* in the courts of appeal and district courts in sister circuits, convince the Court that amidst the emerging case law, it is prudent to deny Aetna's motion without prejudice and instruct Aetna to supplement the administrative record with the official Plan document(s)"); *Joyner v. Cont'l Cas. Co*., 837 F. Supp. 2d 233, 236 (S.D.N.Y. 2011) ("plaintiff may seek discovery of any further plan documents that show whether defendant Hartford was a proper 'named fiduciary' identified in 'the plan instrument' as required by ERISA. See 29 U.S.C. 1102(a)(2)"). Thus, the Plan Instrument is properly before the Court, even if it was not part of the administrative record, and this evidence further supports that the appropriate standard of review is abuse of discretion.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the Defendants and dismiss this case.

DATED:   October 16, 2017.

Kilpatrick Townsend & Stockton LLP

By  *s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
Address:  1420 5th Avenue, Suite 3700
Seattle, WA  98101
Telephone:  206.467.9600
Fax:  206.623.6793

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 12
CASE NO. 2:16-CV-01904-BAT

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA  98101
206.467.9600  FAX: 206.623.6793

Lane Powell PC

By *s/ Jessica N. Walder*
    Jessica N. Walder, WSBA No. 47676
    walderj@lanepowell.com
    1420 5th Avenue, Suite 4200
    Seattle, WA 98101
    Telephone: 206.223.7000
    Fax: 206.223.7101

*Attorney for Microsoft Corporation and Microsoft Corporation Welfare Plan*

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 13
CASE NO. 2:16-CV-01904-BAT

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600  FAX: 206.623.6793

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury of the laws of the State of Washington that on October 16, 2017, I caused to be served a copy of the attached documents to the following person(s) in the manner indicated below at the following address(es):

Brian S. King
BRIAN S. KING, PC
336 South 300 East, Ste 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facscimile: (801) 532-1936
Brian@briansking.com

☑ **by CM/ECF**
☐ **by Electronic Mail**
☐ **by Facsimile Transmission**
☐ **by First Class Mail**
☐ **by Hand Delivery**
☐ **by Overnight Delivery**

                                            s/*Gwendolyn C. Payton*
                                            Gwendolyn C. Payton

REPLY RE DEFENDANTS' MOT. FOR SUMMARY JUDGMENT - 14
CASE NO. 2:16-CV-01904-BAT

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WA 98101
206.467.9600 FAX: 206.623.6793