# EXHIBIT A

**MICROSOFT CORPORATION**

**WELFARE PLAN**

**AS AMENDED AND RESTATED EFFECTIVE  JANUARY 1, 2013**

# TABLE OF CONTENTS

Page

**PREAMBLE** ................................................................................. 3

SECTION 1 - DEFINITIONS ........................................................... 4
  1.1   Appendix ................................................................... 4
  1.2   Code ......................................................................... 4
  1.3   Component Plan ........................................................ 4
  1.4   Dependent ................................................................. 4
  1.5   Eligible Employee ..................................................... 4
  1.6   Employee .................................................................. 7
  1.7   Employer .................................................................. 7
  1.8   ERISA ..................................................................... 7
  1.9   Participant ................................................................ 7
  1.10 Plan ......................................................................... 7
  1.11 Plan Administrator ................................................... 7
  1.12 Plan Year ................................................................. 7
  1.13 Trust ........................................................................ 7
  1.14 Retail Store Employee ............................................... 8

SECTION 2 - PARTICIPATION ..................................................... 9
  2.1   Eligibility and Enrollment ......................................... 9
  2.2   Termination of Participation ...................................... 9
  2.3   Continuation Coverage Rights .................................... 9
  2.4   Election Against Participation .................................... 9

SECTION 3 - BENEFITS ............................................................... 11

SECTION 4 - FUNDING ............................................................... 12
  4.1   Employer Contributions ............................................ 12
  4.2   Employee Contributions ............................................ 12

SECTION 5 - ADMINISTRATION .................................................. 13
  5.1   Named Fiduciary and Plan Administrator ..................... 13
  5.2   Duties and Authority of Plan Administrator ................. 13
  5.3   Forms ...................................................................... 14
  5.4   Examination of Documents ........................................ 14
  5.5   Reports .................................................................... 14
  5.6   Claims Procedure ..................................................... 14
  5.7   Expenses .................................................................. 23
  5.8   Bonding and Insurance .............................................. 23
  5.9   Use and Disclosure of Protected Health Information ....... 24

Table of Contents
(Continued)                                                                                    <u>Page</u>

SECTION 6 – AMENDMENT AND TERMINATION ................................................ 25
  6.1   Amendment or Termination ................................................................ 25
  6.2   Exclusive Benefit of Participants ......................................................... 25
  6.3   Surplus Assets After Plan Termination ..................................................... 25

SECTION 7 – GENERAL PROVISIONS ............................................................. 26
  7.1   Entire Document .......................................................................... 26
  7.2   Legally Enforceable ...................................................................... 26
  7.3   Participation by Affiliated Employers ....................................................... 26
  7.4   No Additional Rights ...................................................................... 26
  7.5   Representations ........................................................................... 26
  7.6   Notice ................................................................................... 27
  7.7   Masculine and Feminine, Singular and Plural ................................................ 27
  7.8   Severability .............................................................................. 27
  7.9   Governing Law ........................................................................... 27
  7.10 Disclosure to Participants .................................................................. 27
  7.11 Facility of Payment ....................................................................... 27
  7.12 Correction of Errors ...................................................................... 28
  7.13 Nondiscrimination Rules ................................................................... 28
  7.14 Application of ERISA ..................................................................... 28

APPENDIX I – PARTICIPATING EMPLOYERS ..................................................... 29

APPENDIX II – COMPONENT PLANS ............................................................. 30

APPENDIX III – ACCESS, USE & DISCLOSURE OF PROTECTED HEALTH
       INFORMATION ................................................................... 32

**PREAMBLE**

This employee benefit plan (hereinafter "Plan" and known as the Microsoft Corporation Welfare Plan was originally adopted effective January 1, 1994 by Microsoft Corporation (hereinafter "Employer" or "Company").  The Employer does hereby amend and restate the Plan as set forth in the following pages, attached Appendices, and documents which are incorporated herein by reference, effective January 1, 2013 (or such other date as may be set forth herein).

# SECTION 1

## DEFINITIONS

The following terms, when used herein, shall have the following meaning, unless a different meaning is clearly required by the context.  Capitalized terms are used throughout the Plan for terms defined by this and other sections.

1.1     Appendix

"Appendix" means each of the appendices to the Plan.  Each Appendix shall be considered a part of the Plan and may be amended by the Employer at any time for any reason without consent of any person except as otherwise provided by law.

1.2     Code

"Code" means the Internal Revenue Code of 1986, as amended, and including all regulations promulgated pursuant thereto.

1.3     Component Plan

"Component Plan" means a written plan identified in the Appendices and incorporated herein by reference.  For an insured plan, the written plan is the certificate of coverage. Where there is an inconsistency or ambiguity between the terms of the Plan and the terms of this certificate of coverage, the terms of the certificate of coverage control.  For a self-funded plan, the written plan is the summary plan description.  Where there is an inconsistency or ambiguity between the terms of the Plan and this summary plan description, the terms of the Plan document control.

1.4     Dependent

"Dependent" means a dependent as defined or otherwise specified in the applicable Component Plan.

1.5     Eligible Employee

 "Eligible Employee" means a "Regular Employee" of the Employer who is in an approved full-time budgeted headcount "regular" employment position with the Employer.  For purposes of this Plan, a "Regular Employee" of the Employer is an Employee who is in an approved headcount "regular" employment position with the Employer and on the Employer's U.S. payroll.  An approved headcount "regular" employment position is one that is (1) authorized in writing during the annual or out-of-cycle budgeting process as a "regular" employment position and approved by an officer of Microsoft (or by a Regional Director for positions in subsidiaries of Microsoft) and (2) reflected on the official human resources database of Microsoft or one of its subsidiaries as a "regular" employment position (e.g., "hourly regular" or "salaried regular").  For example, a worker who is

4

reflected on the human resources database as "contingent" or an "agency temp" is not in an approved headcount "regular" employment position even though the contingent or agency temp position was authorized as part of Microsoft's budgeting process.   An Employee is on an Employer's U.S. payroll if the Employee is paid from a payroll department of the Employer where such payroll department is located within the United States of America, and the Employer withholds U.S. employment taxes (e.g., income tax, FICA) from the Employee's pay.  Under no circumstances are the payroll departments of the Employer's foreign branches and subsidiaries treated as U.S. payroll departments of the Employer for purposes of this Plan.

Notwithstanding the foregoing, the following are not Eligible Employees and are not eligible to participate in this Plan even if they meet the definition of Regular Employee of the Employer:

(a)      interns and visiting researchers;

(b)      cooperatives;

(c)      apprentices;

(d)      nonresident aliens with no U.S. source income;

(e)      employees covered by a collective bargaining agreement resulting from negotiations in which welfare benefits were the subject of good faith bargaining and participation in this Plan was not provided for;

(f)      leased employees.  For purposes of this Section 1.4(f), a leased employee includes any person who provides services to the Employer (as defined in Plan Section 1.6, which in the rest of this Section 1.4 may also be referred to as "recipient" or "recipient Employer") pursuant to an agreement between such recipient and any other person  ("leasing organization"), regardless of (i) the length of time the person has performed such services for the recipient (or for the recipient and related persons), (ii) whether or not the person is an employee of the recipient, (iii) whether or not the person has performed such services for the recipient (or for the recipient and related persons) on a part-time or full-time basis, and (iv) whether or not the person performed services under the primary direction or control by the recipient.  This definition of leased employee includes, without limitation, "leased employees" as defined in Code §414(n)(2) and any Treasury Regulations thereunder;

(g)      temporary workers engaged through or employed by temporary or leasing agencies, irrespective of the length of time that the workers perform or are expected to perform services at or for the recipient Employer, and even if the workers are, or may be reclassified by the courts, the Internal Revenue Service ("IRS") or the U.S. Department of Labor ("DOL") as, employees of the recipient Employer;

(h)    temporary employees of the Employer.  For purposes of this Plan, a temporary employee of the Employer is an Employee who is hired by the Employer to work on a specific project or series of projects which in the aggregate is not expected to exceed six (6) months; and

(i)    workers who hold themselves out to the recipient Employer as being independent contractors, or as being employed by another company while providing services to the recipient Employer, even if the workers are, or may be reclassified by the courts, the IRS or the DOL as, employees of the recipient Employer.

Notwithstanding the foregoing, an Employee who is otherwise eligible to participate in this Plan, except for the fact that the Employee is on Long Term Disability Status and thus is performing no services for the Employer, is eligible for continued group medical benefits and group life insurance benefits for the Employee under this Plan, as long as the Employee is employed by the Employer and receiving long-term disability benefits from the Employer's group long-term disability plan.

Notwithstanding the foregoing, if a common law employee of the Employer (i) resides in the State of Hawaii, (ii) is on the Employer's U.S. payroll (as described in the first paragraph of this Section 1.4) but does not meet the definition of an Eligible Employee set forth above, and (iii) has completed four consecutive weeks of service as an employee of the Employer during which the employee worked at least 20 hours each week, such employee will be eligible to participate in the Hawaii Only Plan (Premera) medical coverage option pursuant to Section 4.1(a)(iii)(2) of the Benefits@Microsoft Program, and have his or her eligible dependents participate in the Hawaii Only Plan (Premera) medical coverage as well.  Such an employee will not be eligible for any medical benefits under the Plan except participation in the Hawaii Only Plan (Premera).  Furthermore, if an employee who resides in Hawaii would otherwise lose medical coverage under Section 4.1(a)(iii)(2) of the Benefits@Microsoft Program while hospitalized or otherwise prevented by sickness from working, such medical coverage for the employee will not be terminated prior to (i) the end of the third month following the month in which the employee first became unable to work due to hospitalization or sickness, or (ii) the date the Employer ceases to pay the employee's regular wages in such case, whichever occurs later.  During such period of continued coverage, the Employer shall contribute the same amount per month towards the cost of such medical coverage that the Employer contributed per month for the employee prior to the employee becoming sick.

Notwithstanding the foregoing, an Employee who is a Retail Store Employee regularly scheduled to work at least 32 hours per week shall become an Eligible Employee on the Employee's 31st day of employment with the Employer, and an Employee who is a Retail Store Employee regularly scheduled to work between 20 and 31 hours per week shall become an Eligible Employee on the Employee's 91st day of employment with the Employer.

1.6     Employee

"Employee" means any common law employee of the Employer who receives remuneration for personal services rendered to the Employer, and any "leased employee" as defined in Code Section 414(n)(2).

1.7     Employer

"Employer" means Microsoft Corporation, a Washington corporation, and, for purposes other than Sections 5 and 6, the subsidiaries and affiliates of Microsoft Corporation listed as Participating Employers in Appendix I.

1.8     ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and including all regulations promulgated pursuant thereto.

1.9     Participant

"Participant" means an Eligible Employee who is covered under the Plan pursuant to Section 2.

1.10    Plan

"Plan" means the Microsoft Corporation Welfare Plan, either in its previous or present form or as amended from time to time.

1.11    Plan Administrator

"Plan Administrator" means the person or entity authorized to administer the Plan pursuant to Section 5.1.

1.12    Plan Year

"Plan Year" means the calendar year.

1.13    Trust

"Trust" means the Microsoft Corporation Employee Welfare Benefit Plan Trust into which may be paid part or all of the contributions and from which certain benefits may be paid under this Plan.  No obligation to establish or maintain a trust shall be construed from the provisions of this Plan except as expressly provided herein.

1.14   <u>Retail Store Employee</u>

"Retail Store Employee" means an Eligible Employee who works in a Microsoft store or as a Retail District Manager of Microsoft stores, and who is identified in the Employer's payroll system as a "Retail Salaried" or "Retail Hourly" employee, but not including any Eligible Employee whose employment position is in the Employer's retail stores business but who does not spend the majority of his or her time on retail store operations.

**SECTION 2**

**PARTICIPATION**

2.1   Eligibility and Enrollment

The terms and conditions for eligibility to participate and procedures for enrollment for each benefit provided under the Plan, as well as the period during which participation with respect to such benefit continues, shall be as provided in the applicable Component Plan(s).  Participation in the Plan commences when an individual first becomes covered for a benefit under any Component Plan.

2.2   Termination of Participation

Participation in this Plan shall terminate when a Participant fails to make required contributions to the Plan, or is no longer eligible for any benefit provided under the Plan as provided in the applicable Component Plan(s).

2.3   Continuation Coverage Rights

Notwithstanding any other Plan provision regarding termination of coverage, a Participant may continue coverage under the Plan as required under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.  An eligible domestic partner, as defined in the applicable insurance policy or summary plan description, shall be treated as if the partner were the Employee's eligible spouse for purposes of continuation coverage, and a child of an eligible domestic partner shall be treated as if the child were an eligible child of an eligible spouse of the Employee for purposes of continuation of coverage.

2.4   Election Against Participation

(a)   Non-Retail Store Employees

Within the first 30 days of becoming an Eligible Employee, an Eligible Employee who is not a Retail Store Employee, may elect not to participate in this Plan for any reason by providing a waiver of Plan participation in the form and manner prescribed by the Company.  An Eligible Employee who is not a Retail Store Employee who has been an Eligible Employee for at least 30 days may not thereafter waive participation.  Notwithstanding the foregoing, an Eligible Employee who is not a Retail Store Employee who terminates employment with the Employer and is later reemployed as an Eligible Employee who is not a Retail Store Employee may waive participation in this Plan within the first 30 days of reemployment.

(b)      <u>Full-Time Retail Store Employees</u>

An Eligible Employee who is a Retail Store Employee regularly scheduled to work at least 32 hours per week may, within 30 days of the Eligible Employee's first day of employment with the Employer, elect not to participate in this Plan for any reason by providing a waiver of Plan participation in the form and manner prescribed by the Company.   An Eligible Employee who is a Retail Store Employee regularly scheduled to work at least 32 hours per week who has been employed by the Employer for at least 30 days may not thereafter waive participation.   Notwithstanding the foregoing, an Eligible Employee who is a Retail Store Employee regularly scheduled to work at least 32 hours per week who terminates employment with the Employer and is later reemployed as an Eligible Employee who is a Retail Store Employee regularly scheduled to work at least 32 hours per week may waive participation in this Plan within the first 30 days of reemployment.

(c)      <u>Part-Time Retail Store Employees</u>

An Eligible Employee who is a Retail Store Employee regularly scheduled to work between 20 and 31 hours per week may, within the 30-day period immediately preceding the date the Retail Store Employee shall become an Eligible Employee, elect not to participate in this Plan for any reason by providing a waiver of Plan participation in the form and manner prescribed by the Company. An Eligible Employee who is a Retail Store Employee regularly scheduled to work between 20 and 31 hours per week, who has been an Eligible Employee for at least 30 days, may not thereafter waive participation.   Notwithstanding the foregoing, an Eligible Employee who is a Retail Store Employee regularly scheduled to work between 20 and 31 hours per week who terminates employment with the Employer and is later reemployed as an Eligible Employee who is a Retail Store Employee regularly scheduled to work between 20 and 31 hours per week may waive participation in this Plan within the 30-day period immediately preceding the date the Retail Store Employee shall again become an Eligible Employee.

**SECTION 3**

**BENEFITS**

Each Participant may elect to receive coverage under the benefit coverages described in the Appendices.   The terms, conditions and limitations of benefits offered under this Plan are contained in the applicable Component Plans referenced in the Appendices and which are incorporated herein in full, as amended from time to time.   The insurer, contract number, or funding method of providing certain benefits may change from time to time and shall be reflected in the applicable Component Plans.

## SECTION 4

## FUNDING

4.1 <u>Employer Contributions</u>

The benefits described in Section 3 shall be funded in whole or in part by Employer contributions as determined by the Plan Sponsor in its discretion.  Contributions shall be paid to the Trust, an insurance carrier or other third party administrator, or, with respect to a self-funded, self-administered benefit, amounts will be paid directly to or on behalf of a Participant or covered dependent.

4.2 <u>Employee Contributions</u>

The benefits described in Section 3 shall be funded in whole or in part by Participant contributions as determined by the Plan Sponsor in its discretion.  Participant contributions may be deducted from a Participant's wages on an after-tax basis or pre-tax basis in accordance with the Benefits@Microsoft Program, a cafeteria plan maintained by the Employer pursuant to Section 125 of the Code, and shall be forwarded by the Employer to the Trust, an insurance carrier or other third party administrator, or, with respect to a self-funded, self-administered benefit, will be paid directly to or on behalf of a Participant or covered dependent.  Contributions may be returned to a participant or the Employer as appropriate if the contribution is made by reason of a mistake of fact (or law if permitted by applicable federal law) and such contribution to the extent of the mistaken amount is returned within one year of its payment.

# SECTION 5

# ADMINISTRATION

5.1   <u>Named Fiduciary and Plan Administrator</u>

The Employer shall be the Named Fiduciary and the Plan Administrator of this Plan.

5.2   <u>Duties and Authority of Plan Administrator</u>

(a)   <u>Administrative Duties</u>

The Plan Administrator shall administer the Plan for the exclusive benefit of Participants and their beneficiaries.  The Plan Administrator shall perform all such duties as are necessary to supervise the administration of the Plan and to control its operation in accordance with the terms thereof, including, but not limited to, the following:

(i)   make and enforce such rules and regulations as it shall deem necessary or proper for the efficient administration of the Plan;

(ii)   interpret the provisions of the Plan and determine any question arising under the Plan, or in connection with the administration or operation thereof;

(iii)   determine all considerations affecting the eligibility of any Employee to be or become a Participant;

(iv)   determine eligibility for and amount of benefits for any Participant;

(v)   authorize and direct all disbursements of benefits under the Plan;

(vi)   employ and engage such persons, counsel and agents and obtain such administrative, clerical, medical, legal, audit and actuarial services as it may deem necessary in carrying out the provision of the Plan; and

(vii)   delegate and allocate, specific responsibilities, obligations and duties imposed by the Plan, to one or more employees, officers or such other persons as the Plan Administrator deems appropriate.

(b)   <u>General Authority</u>

The Plan Administrator shall have all powers necessary or appropriate to carry out its duties, including, without limitation, the sole discretionary authority to take the actions described in Section 5.2(a) and to interpret the provisions of the Plan and the facts and circumstances of claims for benefits.  Any interpretation or

construction of or action by the Plan Administrator with respect to the Plan and its administration shall be conclusive and binding upon any and all parties and persons affected hereby, subject to the exclusive appeal procedure set forth in Section 5.6. Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them.

5.3     Forms

All forms and other communications from any Participant or other person to the Plan Administrator required or permitted under the Plan shall be in the form prescribed from time to time by the Plan Administrator, shall be mailed by first-class mail or delivered to the location specified by the Plan Administrator, and shall be deemed to have been given and delivered only upon actual receipt thereof. Each Participant shall file with a form such pertinent information as the Plan Administrator may specify.

5.4     Examination of Documents

The Plan Administrator shall make available to each Participant or beneficiary this Plan document, including the Appendices and Component Plans, for examination at reasonable times during normal business hours. In the event a Participant or beneficiary requests copies of documents, the Plan Administrator may charge a reasonable amount to cover the cost of furnishing such documents in accordance with ERISA.

5.5     Reports

The Plan Administrator shall file or cause to be filed all annual reports, returns, and financial and other statements required by any federal or state statute, agency or authority within the time prescribed by law or regulation for filing said documents; and to furnish such reports, statements or other documents to such Participants and beneficiaries as required by federal or state statute or regulation, within the time prescribed for furnishing such documents.

5.6     Claims Procedure

Except as otherwise set forth below or provided in an applicable insurance policy or other document incorporated by reference into the Plan, a Participant or covered dependent shall apply for Plan benefits in writing on a form provided by the Plan Administrator, or in such other manner as prescribed by the Plan Administrator. A communication regarding benefits that is not made in accordance with these procedures will not be treated as a claim under these procedures. A claim for reimbursement of expenses must be submitted within the time period specified in the applicable Component Plans. Claims shall be evaluated by the Plan Administrator or such other person or entity designated by the Plan Administrator as specified in the applicable Component Plans and shall be approved or denied in accordance with the terms of the Plan including the Component Plans. All references to the Plan Administrator in this Section 5.6 shall include such delegate. No Participant or covered dependent shall be entitled to benefits unless the

Plan Administrator (or its delegate, such as an insurer providing benefits under this Plan) determines in its discretion that the Participant or covered dependent is entitled to benefits.  With respect to benefits subject to ERISA, the following claims procedures shall apply:

(a)     Claims Procedure for ERISA Group Health Plans

        (1)     Initial Determination.  The Plan Administrator shall notify a Participant or Beneficiary (hereinafter "Claimant") of the Plan's benefit determination as follows:

                (a)     Post-Service Claims.  The Plan Administrator shall notify the Claimant of the Plan's benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim. This period may be extended one time by the Plan for up to 15 days, provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information and the period for making the benefit determination shall be tolled from the date on which the notice of extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

                (b)     Pre-Service Claims.  The Plan Administrator shall notify the Claimant of the Plan's benefit determination within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after receipt of the claim by the Plan. This period may be extended one time by the Plan for up to 15 days, provided that the Plan Administrator both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to the expiration of the initial 15-day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision.  If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information and the period for making the benefit determination shall be tolled from

15

the date on which the notice of extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(c)    <u>Urgent Care Claims</u>.   The Plan Administrator shall notify the Claimant of the Plan's benefit determination as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the claim by the Plan, unless the Claimant fails to provide sufficient information.   In the case of such a failure, the Plan Administrator shall notify the Claimant as soon as possible, but not later than 24 hours after receipt of the claim by the Plan, of the specific information necessary to complete the claim.   The Claimant shall be afforded a reasonable amount of time, taking into account the circumstances, but not less than 48 hours, to provide the specified information.    The Plan Administrator shall notify the Claimant of the Plan's benefit determination as soon as possible, but in no case later than 48 hours after the earlier of:  (A) the Plan's receipt of the specified information, or (B) the end of the period afforded the Claimant to provide the specified additional information.

(d)    <u>Concurrent Care Claims</u>.   If the Plan has approved an ongoing course of treatment to be provided over a period of time or number of treatments, any request by a Claimant to extend the course of treatment beyond the period of time or number of treatments that is a claim involving urgent care shall be decided as soon as possible, taking into account the medical exigencies, and the Plan Administrator shall notify the Claimant of the benefit determination, whether adverse or not, within 24 hours after receipt of the claim by the Plan, provided that any such claim is made to the Plan at least 24 hours prior to the expiration of the prescribed period of time or number of treatments.   Any other request to extend a concurrent care decision shall be decided in the otherwise applicable timeframes for pre-service, urgent care or post-service claims.

(2)    <u>Notice of Denial</u>.   If the claim is denied in whole or in part, the Claimant will receive a written notice setting forth, in a manner calculated to be understood by the Claimant: (a) the specific reason or reasons for the denial; (b) reference to the specific Plan provisions on which the denial is based; (c) a description of any additional material or information needed from the Claimant in connection with the claim and the reason such material or information is needed; (d) an explanation of the claims review procedures and the applicable time limits, including a statement concerning the Claimant's right to bring a civil action under ERISA § 502(a)(1)(B) following an adverse determination on review; (e) a

statement regarding any internal rule, guideline, protocol or other criterion that was relied upon in making the adverse determination (a copy of which will be provided free upon request); (f) if the denial is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment that led to this determination (a copy of which will be provided free upon request); and (g) if the claim is an urgent care claim, a description of the expedited review process applicable to such claims. Additionally, as soon as administratively practicable, but no later than July 1, 2011, the written notice will also include (a) information sufficient to identify the claim involved, including the date of service, health care provider, claim amount, if applicable, (b) the denial code and its meaning; (c) a description of the Plan's standard for denying the claim; (d) information regarding available internal and external appeals, including how to initiate an appeal, and (e) the availability of any contact information for an applicable office of health insurance consumer assistance or ombudsman to assist participants with internal and external appeals processes.

In the case of an urgent care claim, the notice of the benefit determination may be made orally, provided that a written notification is furnished to the Claimant not later than three days after the oral notification.

(3) <u>Right to Request Review: Internal ERISA Appeal</u>. The Claimant must make a written request for review to the Plan Administrator within 180 days of the initial denial of the claim. If a written request for review is not made within such 180 day period, the Claimant shall forfeit his or her right to review. The Claimant's written request for review may (but is not required to) include issues, comments, documents, and other records the Claimant wants considered in the review. All the information the Claimant submits will be taken into account on review, even if it was not reviewed as part of the initial decision. No deference will be given to the initial decision. The Claimant may ask to examine or receive free copies of all pertinent Plan documents, records, and other information relevant to the claim by asking the Plan Administrator. Additionally, as soon as administratively practicable, but no later than July 1, 2011, the Plan will provide the Claimant with any new or additional evidence or rationale considered in connection with the claim sufficiently in advance of the appeals determination date to give the Claimant a reasonable opportunity to respond.

The Claimant will be given the identity of medical or vocational experts if requested, whose advice was obtained by the Plan in connection with the Claimant's initial claim denial, if any, even if their advice was not relied upon in making the initial decision. Where an adverse determination is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug or other item is

experimental, investigational, or not medically necessary or appropriate, the Plan will consult with a health care professional who has experience in the field of medicine involved in the medical judgment to decide the Claimant's appeal.  The Plan Administrator may, in its discretion, hold one or more hearings.  The Claimant may, at the Claimant's own expense, have an attorney or other representative act on the Claimant's behalf, but the Plan Administrator requires a written authorization.  The Plan Administrator reserves the right to delegate its authority to make decisions.

In the case of an urgent care claim, the Claimant may provide a request for an expedited appeal of an adverse benefit determination either orally or in writing and all necessary information, including the Plan's benefit determination on review, shall be transmitted by telephone, facsimile, or other available similarly expeditious method.

(4)   <u>Decision Upon Review: Internal ERISA Appeal</u>. The Plan Administrator shall notify a Claimant of the Plan's benefit determination on review as follows:

    (a)   <u>Post-Service Claims</u>.   The Plan Administrator shall notify the Claimant of the Plan's benefit determination on review within a reasonable period of time. Such notification shall be provided not later than 60 days after receipt by the Plan of the Claimant's request for review of the adverse determination.

    (b)   <u>Pre-Service Claims</u>. The Plan Administrator shall notify the Claimant of the Plan's benefit determination on review within a reasonable period of time appropriate to the medical circumstances.  Such notification shall be provided not later than 30 days after receipt by the Plan of the Claimant's request for review of the adverse determination.

    (c)   <u>Urgent Care Claims</u>.   The Plan Administrator shall notify the Claimant of the Plan's benefit determination on review as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt by the Plan of the Claimant's request for review of the adverse determination.

    (d)   <u>Concurrent Care Claims</u>.  The Plan Administrator shall notify the Claimant of the Plan's decision to reduce or terminate an initially-approved course of treatment before the proposed reduction or termination takes place.  The Plan Administrator shall decide the appeal of a denied request to extend a concurrent care decision in the appeal timeframe for pre-service, urgent care, or post-service claims described above, as appropriate to the request.

(5)     <u>Notice of Denial of Internal ERISA Appeal</u>.  If the decision on the ERISA appeal is denied, the Claimant will receive a written notice setting forth, in a manner calculated to be understood by the Claimant:  (a) the specific reason or reasons for the denial; (b) reference to the specific Plan provisions on which the denial is based; (c) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits; (d) a statement explaining the voluntary appeal procedures offered by the Plan and the Claimant's right to bring a civil action under ERISA § 502(a)(1)(B); (e) a statement regarding any internal rule, guideline, protocol or other criterion that was relied upon in making the adverse determination (a copy of which will be provided free upon request); and (f) if the denial is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment that led to this determination (a copy of which will be provided free upon request).   Additionally, as soon as administratively practicable, but no later than July 1, 2011, the written notice also will include: (a) information sufficient to identify the claim involved, including the date of service, health care provider, claim amount, if applicable, (b) the denial code and its meaning; (c) a description of the Plan's standards for denying a claim; (d) information regarding availability of internal and external appeals, including how to initiate an appeal; and (e)the availability of any contact information for an applicable office of health insurance consumer assistance or ombudsman to assist participants with the internal and external appeals processes.

Notification of denial of the ERISA appeal of an urgent care claim may be provided orally, but written notification shall be furnished not later than three days after the oral notice.

(6)     <u>External Appeal Process</u>.  As soon as administratively practicable, but no later than July 1, 2011, if a Claimant's internal appeal for benefits under the Plan is denied, the Claimant may choose to further appeal the claim pursuant to independent external review process established under the Patient Protection and Affordable Care Act.  The external appeal will be conducted by an independent review organization not affiliated with the Plan.   The independent review organization may overturn the Plan's decision, and the independent review organization's decision will be binding on the Plan.  A Claimant must file a claim for external review within four (4) months of the date the Claimant receives the internal appeal denial notice.  Filing a request for external review will not affect a Claimant's ability to bring a legal claim in court.  When a Claimant files a request for external review, the Claimant will be required to authorize release of any medical records that may be required to be reviewed for the purpose of reaching a decision on the external review.

(b)    Claims Procedure for Disability Claims

(1)    Initial Determination.  The Plan Administrator shall notify a Claimant of the Plan's benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the Plan.  This period may be extended for up to 30 days, provided that the Plan Administrator notifies the Claimant, prior to the expiration of the initial 45-day period, of the reason for the extension and the date by which a decision on the claim can be expected.  If, prior to the end of the first 30-day extension period, the Plan Administrator determines that a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the Plan Administrator notifies the Claimant, prior to the expiration of the first 30-day extension period, of the reason for the extension and the date as of which a decision on the claim can be expected.  With respect to any extension under this paragraph, the notice of extension shall explain the standards on which entitlement to a benefit issue is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues.  The Claimant shall be afforded at least 45 days within which to provide the specified information and the period for making the benefit determination shall be tolled from the date on which the notice of extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(2)    Notice of Denial.  If the claim is denied in whole or in part, the Claimant will receive a written notice setting forth, in a manner calculated to be understood by the Claimant: (a) the specific reason or reasons for the denial; (b) reference to the specific Plan provisions on which the denial is based; (c) a description of any additional information needed from the Claimant in connection with the claim and the reason such information is needed; (d) an explanation of the claims review procedure and the applicable time limits, including a statement concerning the Claimant's right to bring a civil action under ERISA § 502(a)(1)(B) following an adverse determination on review; (e) a statement regarding any internal rule, guideline, protocol or other criterion that was relied upon in making the adverse determination (a copy of which will be provided free upon request); and (f) if the denial is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment that led to this determination (a copy of which will be provided free upon request).

(3)    Right to Request Review.  The Claimant must make a written request for review to the Plan Administrator within 180 days of the initial denial of the claim.  If a written request for review is not made within such 180 day period, the Claimant shall forfeit his or her right to review.  The Claimant's written request for review may (but is not required to) include issues, comments, documents, and other records the Claimant wants

considered in the review.  All the information the Claimant submits will be taken into account on review, even if it was not reviewed as part of the initial decision.  No deference will be given to the initial decision.  The Claimant may ask to examine or receive free copies of all pertinent Plan documents, records, and other information relevant to the claim by asking the Plan Administrator.

The Claimant will be given the identity of medical or vocational experts whose advice was obtained by the Plan in connection with the Claimant's initial claim denial, if any, even if their advice was not relied upon in making the initial decision.  Where an adverse determination is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug or other item is experimental, investigational, or not medically necessary or appropriate, the Plan will consult with a health care professional who has experience in the field of medicine involved in the medical judgment to decide the Claimant's appeal.  The Plan Administrator may, in its discretion, hold one or more hearings.  The Claimant may, at the Claimant's own expense, have an attorney or other representative act on the Claimant's behalf, but the Plan Administrator requires a written authorization.  The Plan Administrator reserves the right to delegate its authority to make decisions.  For example, the carrier providing long term disability coverage under the Plan will make all decisions regarding a Participant's disabled status and eligibility to commence receiving disability benefits and the amount of such benefits.

(4)     Decision Upon Review.  The Plan Administrator shall notify a Claimant of the Plan's benefit determination on review within a reasonable period of time, but not later than 45 days after receipt of the Claimant's request for review by the Plan, unless the Plan Administrator determines that special circumstances (such as a hearing) require an extension of time for processing the claim.  If such an extension is required, written notice of the extension shall be furnished to the Claimant prior to the termination of the initial 45 day period.  In no event shall such extension exceed a period of 45 days from the end of the initial period.  The extension notice shall indicate the special circumstances requiring the extension and the date by which the Plan expects to render the determination on review.

(5)     Notice of Denial of Appeal.  If the decision on appeal is denied, the Claimant will receive a written notice specifying all of the information set forth in 5.6(a)(5) above.

(c) <u>Claims Procedure for All Other Claims</u>

 (1) <u>Initial Determination</u>.  The Plan Administrator shall notify a Claimant of the Plan's benefit adverse determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the Plan, unless the Plan Administrator determines that special circumstances require an extension of time for processing the claim.  If the Plan Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Claimant prior to the expiration of the initial 90-day period.  In no event shall such extension exceed a period of 90 days from the end of such initial period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan expects to render the benefit determination.

 (2) <u>Notice of Denial</u>.  If the claim is denied in whole or in part, the Claimant will receive a written notice setting forth, in a manner calculated to be understood by the Claimant: (a) the specific reason or reasons for the denial; (b) reference to the specific Plan provisions on which the denial is based; (c) a description of any additional information needed from the Claimant in connection with the claim and the reason such information is needed; and (d) an explanation of the claims review procedure and the applicable time limits, including a statement concerning the Claimant's right to bring a civil action under ERISA § 502(a)(1)(B) following an adverse determination on review.

 (3) <u>Right to Request Review</u>.  Any person who has had a claim for benefits denied by the Plan Administrator shall have the right to request review by the Plan Administrator.  Such request must be in writing, and must be made within 60 days after such person is advised of the Plan Administrator's action.  If a written request for review is not made within such 60 day period, the Claimant shall forfeit his or her right to review.  The Claimant's written request for review may (but is not required to) include issues, comments, documents, and other records the Claimant wants considered in the review.  All the information the Claimant submits will be taken into account on review, even if it was not reviewed as part of the initial decision.  The Claimant may ask to examine or receive free copies of all pertinent Plan documents, records, and other information relevant to the claim by asking the Plan Administrator.

 (4) <u>Decision on Review</u>.  The Plan Administrator shall notify a Claimant of the Plan's benefit determination on review within a reasonable period of time, but not later than 60 days after receipt of the Claimant's request for review by the Plan, unless the Plan Administrator determines that special circumstances (such as a hearing) require an extension of time for processing the claim.  If such an extension is required, written notice of

the extension shall be furnished to the Claimant prior to the termination of the initial 60 day period.  In no event shall such extension exceed a period of 60 days from the end of the initial period.  The extension notice shall indicate the special circumstances requiring the extension and the date by which the Plan expects to render the determination on review.

(5)     <u>Notice of Denial of Appeal</u>.  If the decision on appeal is denied, the Claimant will receive a written notice setting forth, in a manner calculated to be understood by the Claimant:  (a) the specific reason or reasons for the denial; (b) reference to the specific Plan provisions on which the denial is based; (c) a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records or other information relevant to the Claimant's claim for benefits; and (d) a statement explaining the voluntary appeal procedures offered by the Plan and the Claimant's right to bring a civil action under ERISA § 502(a)(1)(B).

(d)     <u>Limits on Right to Judicial Review</u>**.**  A claimant must follow the claims procedure described by this Section 5.6 (for ERISA group health plans described in Section 5.6(a), through the decision on the ERISA appeal) before taking legal action in any other forum regarding a claim for benefits under the Plan.  Any legal action initiated by a Claimant under the Plan must be brought by the Claimant no later than one year following a final decision on the claim for benefits under these claims procedures.  The one-year limitations period on claims for benefits applies in any forum where a Claimant initiates such legal action.  If a legal action is not filed within this period, the Claimant's benefit claim is deemed permanently waived and barred.

5.7     <u>Expenses</u>

Unless specified otherwise in a Component Plan, all reasonable expenses which are necessary to operate and administer the Plan shall be paid by the Plan, unless the Employer elects to pay such expenses.

5.8     <u>Bonding and Insurance</u>

To the extent required by law, with respect to benefits subject to ERISA, every fiduciary of the Plan and every person handling Plan funds shall be bonded.  The Plan Administrator shall take such steps as are necessary to assure compliance with applicable bonding requirements.  The Plan Administrator may apply for and obtain fiduciary liability insurance insuring the Plan against damages by reason of breach of fiduciary responsibility at the Plan's expense and insuring each fiduciary against liability to the extent permissible by law at the Employer's expense.

5.9     Use and Disclosure of Protected Health Information

The Company, in its capacity as sponsor of the Plan, shall have access to protected health information and electronic protected health information from the Plan only as permitted under Appendix III, attached hereto and incorporated herein by reference, or as otherwise permitted by the Health Insurance Portability and Accountability Act of 1996, as amended, ("HIPAA") and the Health Information Technology for Economic and Clinical Health Act, as amended ("HITECH Act"), and their respective implementing regulations. References to the "Plan" in this Section and in Appendix III are references to the components of the Plan that constitute functions covered by HIPAA and for which compliance with its provisions is required.  These components are listed on the Plan's HIPAA Hybrid Entity Designation of Health Care Components, attached as Exhibit III.3 to Appendix III and incorporated herein by reference.

**SECTION 6**

**AMENDMENT AND TERMINATION**

6.1     Amendment or Termination

The Employer reserves the right at any time and from time to time to amend any or all of the provisions of the Plan, or terminate the Plan and/or Employer contributions thereunder, in whole or in part, for any reason and without consent of any person and without liability to any person for such amendment or termination, provided that the payment of claims which are incurred at the time of any such amendment or termination shall not be adversely affected.  Any amendment shall be made in writing and be signed by either the senior corporate officer in charge of the Company's Human Resources department or the Company's Director, Global Benefits, and does not require action of the Board of Directors of the Employer.  However, the Board of Directors of the Employer may also amend the Plan by resolution of such Board of Directors. Termination of the Plan shall be made by resolution of the Board of Directors of the Employer.  Nothing in this Plan shall be construed to require continuation of this Plan with respect to existing or future Participants, dependents or beneficiaries.

6.2     Exclusive Benefit of Participants

The Employer establishes this Plan for the exclusive benefit of Participants and covered dependents.  No Plan amendment or termination shall be made which would cause or permit benefits to be provided other than for the exclusive benefit of such individuals, unless such amendment is made to comply with federal or local law.

6.3     Surplus Assets After Plan Termination

If a benefit is terminated and surplus assets attributable to that benefit remain after all liabilities regarding such benefit have been paid, such surplus shall revert to the Employer to the extent permitted by applicable law, unless otherwise specified in the Component Plans for such benefit.

**SECTION 7**

**GENERAL PROVISIONS**

7.1     <u>Entire Document</u>

This Plan document, including the attached Appendices and Component Plans incorporated herein by reference, sets forth the entire provisions of the Plan.  No oral statements shall vary the terms of the Plan.  The Plan shall be read in its entirety and not severed except as provided in Section 7.8.  Subject to Section 7.14, the Plan is intended to be construed and administered in accordance with applicable law, including ERISA and the Code.  To the extent any Plan provision conflicts with the requirements of applicable law, the Plan shall be deemed amended to the extent the senior corporate officer in charge of the Company's Human Resources Department or the Director, Global Benefits of Microsoft Corporation in his or her sole discretion, deems necessary to comply with the requirements of applicable law.

7.2     <u>Legally Enforceable</u>

The Employer establishes this Plan with the intention that it be legally enforceable.

7.3     <u>Participation by Affiliated Employers</u>

The Employer may permit any of its subsidiaries or affiliates to participate in one or more benefits under the Plan.  Any such participating employer shall be listed in Appendices to the Plan.

7.4     <u>No Additional Rights</u>

No person shall have any legal or equitable rights against the Employer or the Plan Administrator, except as, and only to the extent, expressly provided for in the Plan or provided by law.  Neither the establishment or amendment of the Plan or the creation of any fund or account, or the payment of benefits, nor any action of the Employer or the Plan Administrator shall be held or construed to confer upon any person any right to be continued as an Employee, or to affect his or her terms of employment in any way, or, upon dismissal, to confer any right or interest in any account or fund other than as herein provided.  The Employer expressly reserves the right to discharge any Employee at any time.

7.5     <u>Representations</u>

The Employer does not represent or guarantee that any particular federal or state income, payroll, personal property, Social Security or other tax consequences will result from participation in this Plan.  A Participant should consult with professional tax advisors to determine the tax consequences of participation.

7.6     <u>Notice</u>

All notices, statements, reports and other communications from the Employer to any Employee or other person required or permitted under the Plan shall be deemed to have been duly given when delivered to, or when mailed by first-class mail, postage prepaid and addressed to, such Employee, or other person at the address last appearing on the Employer's records.

7.7     <u>Masculine and Feminine, Singular and Plural</u>

Whenever used herein, a pronoun shall include the opposite gender and the singular shall include the plural, and the plural shall include the singular, whenever the context shall plainly so require.

7.8     <u>Severability</u>

If any provision of this Plan is held illegal or invalid for any reason, such determination shall not affect the remaining provisions of this Plan which shall be construed as if the illegal or invalid provision had never been included.

7.9     <u>Governing Law</u>

This Plan shall be construed in accordance with applicable federal law and, to the extent otherwise applicable, the laws of the State of Washington.

7.10    <u>Disclosure to Participants</u>

Each Participant shall be advised of the general provisions of the Plan and, upon written request addressed to the Plan Administrator, shall be furnished any information requested regarding the Participant's status, rights and privileges under the Plan as may be required by law.

7.11    <u>Facility of Payment</u>

In the event any benefit under this Plan shall be payable to a person who is under legal disability or is in any way incapacitated so as to be unable to manage his or her financial affairs, the Plan Administrator may direct payment of such benefit to a duly appointed guardian, committee or other legal representative of such person, or in the absence of a guardian or legal representative, to a custodian for such person under a Uniform Gifts to Minors Act or to any relative of such person by blood or marriage, for such person's benefit.  Any payment made in good faith pursuant to this provision shall fully discharge the Employer and the Plan of any liability to the extent of such payment.

7.12   Correction of Errors

In the event an incorrect amount is paid to or on behalf of a Participant or Beneficiary, any remaining payments may be adjusted to correct the error.  The Plan Administrator may take such other action it deems necessary and equitable to correct any such error.

7.13   Nondiscrimination Rules

The Plan shall comply with all applicable nondiscrimination rules under the Code. Should the Plan or any benefit offered through the Plan be subject to nondiscrimination testing under the Code or any other applicable law, the Plan Administrator may make any decisions or elections, whether voluntary or required by law, necessary to facilitate such testing.  For Code Section 105(h) nondiscrimination testing purposes only, the self-insured medical and dental benefits available under or through the Plan shall consist of the four plans, divided as follows:  (i) full-time Employees who are not Retail Store Employees; (ii) part-time Employees who are not Retail Store Employees; (iii) full-time Retail Store Employees regularly scheduled to work at least 32 hours per week; and (iv) part-time Retail Store Employees regularly scheduled to work between 20 and 31 hours per week.  This Plan is intended to meet all applicable requirements of the Code, as well as rulings and regulations issued or promulgated thereunder.  Nothing in this Plan shall be construed as requiring compliance with Code provisions to the extent not otherwise applicable.

7.14   Application of ERISA

This Plan provides certain benefits which are subject to ERISA, and other benefits, such as dependent care reimbursement benefits, which are not subject to ERISA.  Only those benefits identified in ERISA Sections 3(1) and 4 are subject to ERISA.  This Plan shall not be construed to subject any non-ERISA benefits to the requirements of ERISA.

IN WITNESS WHEREOF, the Employer has caused this Plan to be executed on this _____ day of _____, 2012.

**FOR MICROSOFT CORPORATION**

_____
Fred Thiele
Senior Director, Global Benefits

## APPENDIX I

## PARTICIPATING EMPLOYERS

The following employers shall be considered participating Employers under the Microsoft Corporation Welfare Plan:

1. Vexcel Corporation

2. Microsoft Payments, Inc.

3. Microsoft Open Technologies, Inc.

4. Microsoft Licensing, GP

5. Microsoft Operations Licensing Center

6. Microsoft Online, Inc.

Microsoft subsidiaries other than the employers named above may participate in the Plan as follows:  solely with respect to the flu shot program or health screening programs, as determined under the guidelines for those programs.

## APPENDIX II

## COMPONENT PLANS

The terms, conditions and limitations of the benefits described in Section 3 of the Plan are contained in the summary plan description(s) for the Component Plans listed in this Appendix II, which are incorporated herein by reference.

The Component Plans are:

A.  the following health care programs:

1.  HMO Plan (Group Health Cooperative)
2.  HMO Plan (Kaiser Permanente – for California participants)
3.  Hawaii Only Plan (Premera- for Hawaii participants)
4.  Health Savings Plan (Premera)
5.  Access Health Savings Plan (Premera)
6.  Health Assurance Plan (Premera)
7.  Group Health Cooperative Medical Coverage, as described in Agreement for MS Group No. 1723.
8.  Dental Plus
9.  Dental Basic
10. Employee Assistance Program
11. 24-Hour Health Line
12. Health benefits provided through the following Company prevention/health screening programs: flu shot, mammography screening, other health screenings
13. The Microsoft Healthcare Reimbursement Plan and the Microsoft Limited Purpose Healthcare Reimbursement Plan) parts of the Benefts@Microsoft Program

These health care programs listed in this Section A are the designated "health care components" within the meaning of the HIPAA Privacy Rule and Exhibit III.3 to the Plan.

B. The following non-health care benefit programs:

1.  Long-term disability benefits insured by Prudential Insurance Company of America.
2.  Accidental death and dismemberment benefits insured by Prudential Insurance Company of America.
3.  Employee term life coverage insured by Prudential Insurance Company of America.
4.  Dependent term life coverage insured by Prudential Insurance Company of America.
5.  Group legal services benefits, ARAG Group contract number 3181-420.

These non-health programs listed in this Section B are not "health care components" within the meaning of the HIPAA Privacy Rule and Exhibit III.3 to the Plan.

## APPENDIX III

## ACCESS, USE & DISCLOSURE OF PROTECTED HEALTH INFORMATION

1. **Definitions and References.**  Capitalized terms used, but not otherwise defined in this Appendix or the Plan, shall have the same meaning as those terms in the "HIPAA Privacy Rule," codified at 45 C.F.R. Parts 160 and 164, as amended, and the "HIPAA Security Rule," codified at 45 C.F.R. Parts 160, 162 and 164, as amended (jointly the "HIPAA Rules").  References to specific regulatory sections refer to the applicable sections of the HIPAA Rules as are currently in effect and any successor provisions of similar import.

   a. "**HIPAA**" means the Health Insurance Portability and Accountability Act of 1996, as amended.

   b. "**HITECH Act**" means the Health Information Technology for Economic and Clinical Health Act, passed as part of the American Recovery and Reinvestment Act of 2009, as amended.

   c. "**Plan**" means, for purposes of this Appendix III only, the health care components set forth in the HIPAA Hybrid Entity Designation of Health Care Components, attached as Exhibit III.3 to this Appendix and incorporated herein by reference.

   d. "**Plan Sponsor**" means Microsoft Corporation.

2. **Requirements**

   a. The Plan shall disclose PHI other than Summary Health Information to the Plan Sponsor only upon receipt of a certification that the provisions of this Appendix have been incorporated into the Plan documents, and the Plan Sponsor agrees to comply with the provisions of this Appendix.

   b. The Plan Sponsor shall not use or disclose PHI except (i) as authorized pursuant to a valid Authorization under the Privacy Rule by an individual who is the subject or the representative of the subject of the PHI or (ii) to the extent that such uses and disclosures (A) are consistent with the Privacy Rule and either (B) are required by law; or (C) are specifically set forth in the Schedule of Permitted Uses and Disclosures attached as Exhibit III.1 to this Appendix and incorporated herein by reference.

   c. Plan Sponsor shall not disclose PHI to its employees or other persons under its control except for plan administration functions that meet the definitions of "payment" or "health care operations" stated in 45 C.F.R. § 164.501, as such terms relate to the Plan.  The Plan Sponsor shall restrict access or use of PHI by individuals under its control for the above-described purposes to employees or other persons in the classes or positions more particularly set forth in the Schedule of Personnel Classifications attached as Exhibit III.2 hereto and incorporated herein by

32

reference.  For purposes of this Paragraph 2c, "plan administration functions" do not include employment-related actions or decisions or activities in connection with any other benefit or employee benefit plan of the Plan Sponsor.

d.  Notwithstanding the permitted uses and disclosures set forth in Paragraphs 2a, 2b and 2c above, the Plan Sponsor shall not use or further disclose PHI received from the Plan in a manner that would violate the requirements of the Privacy Rule, including if the use or disclosure were done by the Plan.

e.  The Plan Sponsor will ensure that any agents, including any and all subcontractors, of the Plan Sponsor to whom it provides PHI received from the Plan agree to the same restrictions and conditions that apply to the Plan Sponsor with respect to such information.

f.  The Plan Sponsor will not use or disclose the information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan sponsored by the Plan Sponsor, except to the extent a use or disclosure may otherwise be permitted by the Privacy Rule with respect to PHI about a Participant who signs an authorization document that complies with 45 C.F.R. § 164.508, or with respect to PHI disclosed for the health care operations of an organized health care arrangement in which the Plan participates, as referenced at 45 C.F.R. § 164.506(c)(5) and to the extent permitted under the Privacy Rule.

g.  The Plan Sponsor will report to the Plan any use or disclosure of PHI that is inconsistent with the uses or disclosures provided for in this Appendix of which it becomes aware.

h.  The Plan Sponsor will provide access to PHI at the request of the Plan, and in the time, manner, and place designated by the Plan, to the Plan or, as directed by the Plan, to an individual in order to meet the requirements under 45 C.F.R. § 164.524. The obligations of the Plan Sponsor in this Paragraph apply only to PHI in "designated record sets" in the Plan Sponsor's possession or control as such term is defined at 45 C.F.R. § 164.501.

i.  The Plan Sponsor will make PHI available to the Plan in the time, manner, and place designated by the Plan, to the extent required for amendment and incorporate any amendments to PHI in accordance with 45 C.F.R. § 164.526, which describes the requirements applicable to an individual's request for an amendment to the PHI relating to the individual.  The obligations of the Plan Sponsor in this Paragraph apply only to "designated record sets" in the Plan Sponsor's possession or control as such term is defined at 45 C.F.R. § 164.501.

j.  The Plan Sponsor will make PHI and information related to disclosures of PHI by the Plan Sponsor available to the Plan in the time, manner, and place designated by the Plan, to the extent required to provide an accounting of disclosures in accordance with 45 C.F.R. § 164.528, which describes the requirements applicable to an

individual's request for an accounting of disclosures of PHI relating to the individual. The Plan Sponsor agrees to document such disclosures of PHI and information related to such disclosures as would be required for the Plan to respond to a request by an individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. § 164.528.

k.  If the Plan Sponsor receives a request, made on behalf of the Secretary, the Plan Sponsor will make its internal practices, books, and records relating to the use and disclosure of PHI available to the Secretary for purposes of determining the Plan's compliance with the HIPAA Privacy Rule, then the Plan Sponsor will promptly comply with the request; provided, however, that this provision shall not apply in the event a court of competent jurisdiction determines, in response to a challenge raised by the Plan, that the Privacy Rule provision requiring the inclusion of this provision in this Appendix is void or otherwise unenforceable.

l.  If feasible, the Plan Sponsor will return or destroy all PHI received from the Plan that the Plan Sponsor still maintains in any form, and retain no copies of such information when no longer needed for the purpose for which disclosure was made (or if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible); and

m.  The Plan Sponsor will ensure adequate separation between the Plan Sponsor and the Plan, as required by 45 C.F.R. § 164.504 (f)(2)(iii).  This adequate separation shall be further established as follows:

   i.  The Plan Sponsor will cause the Plan to adopt policies and procedures regarding permissible PHI disclosures to the Plan Sponsor for plan administration or other lawful purposes.  Such policies and procedures will include requirements for using and for disclosing only the minimum necessary PHI.

   ii.  Plan Sponsor shall restrict access to and use of PHI by the employees and other persons identified on Exhibit III.2 to the plan administration functions that the Plan Sponsor performs for the Plan.

n.  The Plan Sponsor will comply with the requirements of the HITECH Act and its implementing regulations to provide notification to affected individuals, the Secretary of the Department of Health and Human Services, and the media (when required) if the Plan or one of its business associates discovers a breach of unsecured PHI.

3.  **Electronic Disclosure Requirements.**  PHI shall include "electronic protected health information" or "ePHI" to the extent provided under HIPAA.  As required by HIPAA, no later than April 20, 2005, the Plan Sponsor will take additional action with respect to the implementation of "security measures" (as defined in 45 C.F.R. § 164.304) for ePHI.  Specifically, the Plan Sponsor will:

   a.  implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the ePHI that it creates, receives, maintains, or transmits on behalf of the Plan;

   b.  ensure that the adequate separation between the Plan and Plan Sponsor (i.e., the firewall), required by 45 C.F.R. § 164.504(f)(2)(iii) is supported by reasonable and appropriate security measures;

   c.  ensure that any agent, including a subcontractor, to whom it provides ePHI agrees to implement reasonable and appropriate security measures to protect the information; and

   d.  report to the Plan any security incident of which it becomes aware, including any successful unauthorized access, use, disclosure, modification, or destruction of ePHI or interference with systems operations in an information system containing ePHI.

4.  **Compliance.**  The Plan Sponsor will provide an effective mechanism for resolving any issues of noncompliance by the persons described in Exhibit III.2 with the requirements of this Appendix III.  The Plan Sponsor will take disciplinary action as appropriate against any employee who improperly uses or discloses PHI in violation of this Appendix, the Plan's policies and procedures, or the HIPAA Rules.  The Plan Sponsor will provide a process whereby individuals may make complaints concerning the Plan Sponsor's compliance with this Appendix, the Plan's policies and procedures, and the requirements of the HIPAA Rules.

## EXHIBIT III.1

SCHEDULE OF PERMITTED USES AND DISCLOSURES

Plan Sponsor may use or disclose PHI received from the Plan as follows:

1.  To perform functions, activities or services for or on behalf of the Plan as specified in the Plan documents

2.  For enrollment eligibility

3.  For individual eligibility determinations

4.  To assist participants and/or dependents in resolving coverage concerns

5.  To assist participants and/or dependents with submitting claims or checking the status of a submitted claim

6.  For business and strategic planning regarding the Plan

7.  To provide or arrange for legal services for the Plan

8.  To comply with the requirements of valid and applicable government regulation

9.  To participate in claims appeals

10. To respond to a subpoena of Plan records or other compulsory legal process on behalf of the Plan

11. To address emergency situations

12. To respond to valid requests from governmental entities on behalf of the Plan

13. To provide a benefit to participants or dependents under the Plan funded by the Plan Sponsor's general revenues

14. Summary health information that summarizes the claims history, claims expenses, or type of claims experienced by Plan, to obtain premium bids from health plans for providing health insurance coverage under the Plan or to review and modify, amend, or terminate the Plan

Exhibit III.1 – 1

## **EXHIBIT III.2**

SCHEDULE OF PERSONNEL CLASSIFICATIONS

1.      Privacy Official

2.      Privacy and Security Operations Officials

3.      Global Benefits Management Team

4.      Certain members of Global Benefits Team

5.      Certain members of Readiness and Operations Team

6.      Readiness and Operations Customer Service – Tier 1 Team

7.      Contingent Staff Assigned to Benefits positions

8.      LCA Attorneys and staff servicing Benefits functions

9.      Information Technology Personnel

Exhibit III.2 – 1

## <u>EXHIBIT III.3</u>

SCHEDULE OF
HIPAA HYBRID ENTITY DESIGNATION OF HEALTH CARE COMPONENTS

The Microsoft Corporation Welfare Plan is a "hybrid entity," a single legal entity that is a covered entity whose business activities include both HIPAA covered and noncovered functions and that designates health care components in accordance with the requirements of the HIPAA Privacy Rule.  Each Component Plan that, pursuant to  Appendix II, Section A, to the Plan, is designated a "health care component" will be treated as a health plan and a covered entity under HIPAA.  The Component Plans listed in Appendix II, Section B, to the Plan will not be treated as such.

Exhibit III.3 – 1