THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

PETER B., individually and as guardian of
M.B., a minor

      Plaintiff,

vs.

PREMERA BLUE CROSS, MICROSOFT
CORPORATION, and MICROSOFT
CORPORATION WELFARE PLAN,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:16-cv-01904-JCC

**PLAINTIFF'S REPLY IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Plaintiff Peter B. ("Peter"), individually and as guardian of M.B., a minor, through his undersigned counsel and pursuant to F.R.C.P. 56, files the following Reply in Support of his Motion for Summary Judgment filed on September 20, 2017.

## ARGUMENT

### I.    PBC CANNOT SHOW THAT IT HAS DISCRETIONARY POWER AND THE APPROPRIATE STANDARD OF REVIEW IS *DE NOVO*

There is no disagreement between Peter and PBC that under any ERISA plan the standard of review is *de novo* unless the plan-governing document grants discretionary authority to a plan administrator to interpret the terms of the plan and determine eligibility for benefits under the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Peter B., however,

PLAINTIFF'S REPLY IN SUPPORT OF – Page 1
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1  disagrees with PBC that "the Plan contains a clear, unambiguous grant of discretionary authority

2  to interpret the Plan's terms and determine benefits eligibility through the Administrative

3  Services Contract between [PBC] and Microsoft." Defendants' Opposition to Plaintiff's Motion

4  for Summary Judgment ("PBC Opp Memo"), docket #43, pp. 2-3. PBC cites Sections 1.02 and

5  1.03 of the Administrative Service Contract to support its argument that "discretion was

6  successfully conferred to [PBC]." *Id.* But Administrative Service Contract cannot effectively

7  grant any discretionary authority to PBC.

8          The application of a proper standard of review is a matter determining whether the plan

9  "unambiguously" provide discretion to the administrator. *Abatie v. Alta Health & Life Ins. Co.*,

10  458 F.3d 955, 963 (9th Cir. 2006) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th

11  Cir. 1999)). The analysis must start with an inquiry of whether there is a master plan document

12  in the record before the Court because "the record that was before the administrator furnishes the

13  primary basis for review." *Kearney* at 1090. Here, there is no master plan document in the record

14  for the Court to determine whether PBC has discretionary authority. Peter B.'s Opening Memo,

15  docket #42, pp. 12-13. ERISA requires that "[e]very employee benefit plan shall be established

16  and maintained pursuant to a written instrument.  29 U.S.C. 1102(a)(1). The record before this

17  Court only contains copies of the 2015 and 2016 SPDs, which are summaries of the governing

18  plan documents, not the documents themselves. *CIGNA Corp v. Amara*, 563 U.S. 421, 436-438

19  (2011). Also, there is nothing in the record indicating the SPDs are part of the master Plan either.

20  Because the SPDs are not made a part of the master plan documents, under both *Amara* and

21  *Prichard v. Metropolitan Life Ins. Co.,* 783 F.3d 1166, 1169 (9th Cir. 2015), the SPDs cannot be

22  considered part of the documents governing the contractual relationship between the parties.

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 2**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1       More importantly, the Administrative Service Contract on which PBC relies for its grant

2   of discretionary authority is clearly not a governing document for purposes of the relationship

3   between Microsoft, the Plan sponsor, and Peter B., the employee, because there is no reason to

4   believe that the Administrative Services Contract was ever disclosed to Peter B. Assuming that

5   document is one that relates to the operation of the Plan, it does not provide any basis to grant

6   discretionary authority in this case. The terms of an administrative service contract between an

7   ERISA plan sponsor and a third party administrator are not enforceable against the plan

8   participants and beneficiaries when those individuals do not have notice of the terms of the

9   administrative service contract. *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.,*

10  813 F.3d 420, 429 (1st Cir. 2016) (holding that the terms of an undisclosed administrative

11  services contact for a self-funded plan are not sufficient to establish discretionary authority and

12  trigger an abuse of discretion standard of review). There is no evidence that PBC ever provided

13  or disseminated the terms of Administrative Service Contract to the Plan participants.

14      ERISA makes very clear that plan sponsors must give notice to the participants and

15  beneficiaries of the plan of their rights and obligations under the ERISA benefit plan. *Curtiss-*

16  *Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Because there is no governing Plan

17  document before this Court and the terms of Administrative Service Contract are not enforceable

18  to establish discretionary authority in connection with a claimant's action to enforce the terms of

19  the Plan, PBC has failed to carry its burden of proof and move the standard of review away from

20  the default under *Bruch*. Consequently, this Court should apply a *de novo* standard.

21      PBC cites *Daniel v. UnumProvident Corp.,* 261 Fed. Appx. 316, 318 (2nd Cir. 2008), for

22  the proposition that the Administrative Service Contract should be considered because it is

23  necessary "to establish which entity actually decided her claim and therefore which standard of

**PLAINTIFF'S REPLY IN SUPPORT OF** – Page 3
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1   review was applicable in federal court." PBC Opp Memo, p. 3. But in *Daniel* the claimant did

2   not assert that the failure to disclose the terms of an administrative services contract barred the

3   court from considering its terms. The decision in *Daniel* did not reach the question before this

4   Court: whether a discretionary authority clause in an administrative services contract not

5   routinely distributed to plan participants and beneficiaries is sufficient to trigger an abuse of

6   discretion standard of review. Even if this Court takes into consideration the terms of the

7   Administrative Service Contract, the question is whether that undisclosed document confers any

8   discretionary authority on PBC for purposes of binding a claimant to an abuse of discretion

9   standard of review in a recovery of benefits claim under 29 U.S.C. § 1132(a)(1)(B). ERISA's

10  notice and disclosure requirements, outlined in *Schoonejongen* and *Stephanie C.,* make clear that

11  the Administrative Services Contract doesn't have that effect. And *Daniel* does not address that

12  question. It is of no assistance to PBC.

## II.   M.B'S MEDICAL RECORDS CONTAIN EVIDENCE DEMONSTRATING HIS TREATMENT WAS MEDICALLY NECESSARY

### A.   Peter B. Provided Ample Evidence Showing M.B.'s Declining Mental Health Condition Necessitated Residential Treatment and the Degree the Treatment Helped M.B.'s Symptoms.

20  PBC makes a broad statement in its Opposition that Peter B. "failed to provide any

21  support that the treatment received by M.B. was medically necessary." PBC Opp Memo, p. 5.

22  PBC also argues that Peter B. "offers no evidence or authority to support [the] assertion" that

23  discontinuing coverage violated the terms of the Plan. *Id*. Apparently PBC wants this Court to

24  completely disregard the medical information provided by Peter B. in his extensive appeal letters

25  and the references to them in Peter B.'s Opening and Opposition Memoranda. Be that as it may,

26  this statement by PBC cannot be reconciled with M.B.'s medical record and treatment history, let

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 4**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    alone with arguments Peter B. presented, that show how ill his M.B. was and that residential

2    treatment was the appropriate level of care to treat his condition. M.B's symptoms were not

3    pronounced to the degree that he required hospitalization at an acute, inpatient level of care. At

4    the same time, his condition was declining to the point that his Obsessive Compulsive Disorder

5    ("OCD") and Autism Spectrum Disorder ("ASD") symptoms made life for his parents and

6    siblings almost unbearable.

7    　　　PBC argues that it had independent psychiatrists who are free from conflict of interest

8    support its denial. But this is not accurate. The psychiatrists employed or retained by PBC are not

9    free from taint simply because they say they are. Those individuals, whether employees or

10   contractors, know who hires and pays them. A more conflict free opinion comes from Dr. Steve

11   DeBois, Ph.D., M.B.'s treating psychologist at Second Nature. He personal knowledge of M.B.'s

12   treatment needs in the immediate time frame before M.B.'s admission to Daniels Academy. He

13   was not giving an opinion that related to either his own or Second Nature's existing or future

14   treatment relationship with M.B.

15   　　　Dr. DeBois' opinion, provided to PBC by Peter B. in his first appeal letter dated

16   September 3, 2015, makes clear that he has both personal knowledge of M.B.'s condition and

17   symptoms and that this personal knowledge was gained at the most relevant time in prescribing

18   medically necessary treatment: immediately before his admission to Daniels Academy. See

19   PRE_BER000068. Dr. DeBois states that he is "extremely concerned" about M.B. relapsing if he

20   returned directly to home after completing the wilderness program at Second Nature. *Id*. Dr.

21   DeBois unequivocally recommends residential treatment so that M.B. can "practice and

22   internalize the tools he learned at Second Nature." *Id*. He goes on to state that for M.B. to return

23   home, even "even with intensive outpatient therapy or school accommodations, would almost

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 5**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    certainly result in significant regression and return to his previous level of functioning." *Id.* Dr.

2    DeBois provides the most trustworthy professional evaluation of whether M.B.'s treatment at

3    Daniels Academy was medically necessary.

4         PBC also revisits yet another one of its shifting rationale for why the claim was denied

5    (this one raised for the first time in litigation), that M.B. is not being provided meaningful mental

6    health treatment at all but is just attending what it characterizes as "boarding school."[1] However,

7    as pointed out in Peter B.'s Opp Memo, PBC's jump to yet another different reason for why it

8    was justified in denying the claims arising out of M.B.'s treatment simply highlights the degree

9    to which PBC is an adversary bent on denial of the claims. *Friedrich v. Intel Corp.*, 181 F.3d

10   1105, 1110 (9th Cir. 1999). The reality is that Peter B. has been shooting at a moving target

11   throughout the entire pre-litigation claim and appeal process as well as in litigation. After Peter

12   B. addresses a concern PBC raises, PBC abandons that reason and trots out a new and different

13   argument for denying the claim.

14        PBC refers to as "cryptic references to web pages and case citations" at p. 5 of its Opp

15   Memo in response to the information Peter B. provides about the nature of residential treatment

16   and the care M.B. received at Daniels Academy. But the decreasing levels of intensity of

17   treatment that accompany stepped down levels of care from acute inpatient to sub-acute

18   residential treatment to intensive outpatient mental health treatment are outlined in PBC's own

19   criteria. And the citations to the Substance Abuse and Mental Health Services Administration

---

[1] PBC asserts that "the parties agree that Daniels Academy is a 'boarding school for boys,'" PBC Opp. Memo, p. 4, without citing anything for the authority that Peter B. agrees with this characterization. In fact, Daniels Academy is licensed as a residential treatment center under Utah law and PBC accepted that characterization of Daniels Academy in the pre-litigation appeal process.

PLAINTIFF'S REPLY IN SUPPORT OF – Page 6
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    (SAMSHA) description of residential treatment corresponds with generally accepted standards of

2    medical practice.

3          As Peter B. detailed in his pre-litigation appeal correspondence and at his Opp Memo, pp.

4    12-15, M.B. suffered from co-occurring OCD and ASD disorders which made it harder for his

5    providers to diagnose and treat his condition. PBC ignores that entirely. But M.B.'s treatment

6    team members were well aware of the increased complexity M.B.'s co-morbid conditions

7    presented and Peter B.'s appeal letters made it clear those challenges were one of the reasons his

8    providers recommended continued long-term treatment at Daniels Academy.

9          In its Opp Memo, PBC contends that M.B. did not meet PBC's continued residential stay

10   criteria, because there was no evidence that M.B. made progress "even after 90 days, much less

11   the thirty days required by the foregoing criteria." *Id*. at 7. PBC contradicts its March 11, 2015,

12   denial letter where PBC stated that residential treatment is medically necessary "only when the

13   plan is stabilize your difficulties in a short term stay, usually approximately 90 days or less, and

14   then transfer to another level of care," pointing also to the lack of discharge planning.  PRE_BER

15   001377. The denial letter reasoning is premised on the assumption that M.B. in fact was

16   stabilized, which logically presupposes some improvement in his condition from the time he was

17   admitted. The only continued stay criteria PBC mentions in its March 11, 2015, denial letter is

18   the lack of an early discharge planning, which PBC never discussed in any of the denial letters or

19   its briefing in this action.

20         PBC also contradicts its October 2, 2015, denial letter, where PBC denied coverage based

21   on M.B.'s apparent lack of improvement, but where Dr. William Holmes stated that "the

22   patient's functioning is noted to be relatively better while away from home. However, he

23   continues to have problems related to his obsessive – compulsive disorder, along with poor

PLAINTIFF'S REPLY IN SUPPORT OF – Page 7
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    social interactions, which are characteristic of autism spectrum disorder." PRE_BER000039. If

2    the requirement for continued treatment is to show signs of improvement and a positive response

3    to the treatment, presence of symptoms should not have been a reason to deny coverage.

4    Considering M.B.'s struggle with his OCD and ASD symptoms, Dr. Holmes' acknowledgement

5    of an improvement in M.B.'s condition is significant. *Id.*

6         Peter Weiss, a licensed mental health counselor, who treated M.B. for OCD from

7    December 31, 2013 through September 24, 2014, on an outpatient basis described those struggles

8    as "a particularly severe case, which was made more complicated and difficult to treat due to

9    [M.B.'s] persistent denial that he had OCD. Mr. Weiss described M.B.'s compulsions as those

10   that could "quickly become violent and destructive in nature," and "directed toward property and

11   a times his parents." PRE_BER000495 . Mr. Weiss observed that during the course of treatment

12   M.B.'s "physical aggression escalated [] to a degree that [M.B.] needed more support and

13   intensive care than he could receive in an outpatient setting." *Id.*

14        What Mr. Weiss recognized as "a particularly severe case," referring only to M.B.'s OCD

15   symptoms, was subsequently confirmed and explained by Douglas Maughan, LCMHC, M.B.'s

16   primary therapist at DA, as M.B. suffering from co-occurring disorders, making his condition

17   exceptionally difficult to treat. PRE_BER000492.

18        PBC argues that Peter B. "only includes passing, fragmentary, and conclusory quote

19   from Mr. Maughan's opinion" referring to his August 11, 2015, letter, in his Opp Memo. PBC

20   Opp Memo, p. 6. In fact, Peter B. provided numerous quotes from Mr. Maughan's August 11,

21   2015, and January 23, 2016, letters, along with the quotes from Mr. Weiss and Dr. Debois dated

22   August 6, 2015, and January 1, 2015, respectively. PER_BER0000492-493, PER_BER0000692-

23   693, PER_BER0000495, PER_BER0000278-281. The evidence offered is in stark contrast to

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 8**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    PBC's assertion that "Peter offered two letters from M.B's threating therapists discussing and

2    recommending the need for residential treatment." PBC's Opp Memo, p. 8. As Peter B. argued in

3    his Opp Memo, PBC ignored the second letter from Mr. Maughan, dated January 23, 2016,

4    providing an extensive update on the progress M.B made as a result of the therapy he received at

5    DA, and the opinion of Dr. Debois. PRE_BER000693-692, PRE_BER000278-280. Dr. Debois

6    was M.B.'s treating clinician from Second Nature wilderness program where M.B was treated

7    from September 30, 2014, through January 1, 2015. PRE_BER000278-280. It is therefore

8    incorrect that Peter B. "has not offered, designated, or disclosed any other treating therapists."

9    PBC's Opp Memo, p. 9.

10       At various times, PBC asserts that the information Peter B. presented in the pre-litigation

11   process was "irrelevant," "lacks foundation," or lacks "reliability." PBC Opp Memo, p. 9. PBC

12   has no legal basis to make these assertions. The pre-litigation appeal process is designed to allow

13   for an expeditious and efficient exchange of information that will allow claims to be resolved

14   without undue expense. *Mack v. Kuckenmeister*, 619 F.3d 1010, 1020 (9th Cir. 2010) (exhaustion

15   of pre-litigation appeal obligations is required to "help reduce the number of frivolous lawsuits

16   under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-

17   adversarial method of claims settlement; and to minimize the costs of claims settlement to all

18   concerned"). The information intended to be provided in that pre-litigation appeal process is not

19   intended to meet the standards or requirements of the Federal Rules of Evidence. More

20   important, "[i]f a court reviews the administrator's decision, whether *de novo* [], or for abuse of

21   discretion, the record that was before the administrator furnishes the primary basis for

22   review. *Kearney* at 1090. Dr. DeBois, Mr. Weiss, and Mr. Maughan's letters are already part of

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 9**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1   the administrative record before the Court. PBC's discussion about their relevancy is, in fact,

2   irrelevant.

3       The only ERISA case PBC cites to support its argument on this point, *Mason v.*

4   *Equitable*, 32 Fed. Appx. 289 (9th Cir. 2002) in unpublished. The idea that the evidentiary

5   standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) apply to the

6   pre-litigation appeal process flies in the face of the well established precedent in the Ninth and

7   other Circuits outlining the need and reasons for requiring pre-litigation appeal exhaustion.

8       Finally, PBC does not explain why letters from M.B.'s treating physicians would be any less

9   reliable and relevant than the opinions of PBC's physicians who did not have the privilege and

10  opportunity to treat and observe M.B. It is especially improper to ignore the findings and

11  conclusions of health care professionals when dealing with the treatment of individuals who have

12  mental health conditions. When the information from a medical record arises out of an

13  examination of a mental health patient, the treating physician is in the best position to evaluate

14  and come to valid conclusions about the symptoms and diagnoses of a patient. *Javery v. Lucent*

15  *Technologies, Inc. LTD Plan*, 741 F.3d 686, 702 (6th Cir. 2014) (file reviews are of questionable

16  validity when evaluating a patient with mental illness); *Smith v. Bayer Corp. LTD Plan*, 257 Fed

17  Appx. 495, 505-509 (6th Cir. 2008) (courts discount "for obvious reasons" the opinions of

18  medical file reviewers who have not seen the patient); *Sheehan v. Metropolitan Life Ins. Co*., 368

19  F.Supp.2d 228, 254-255 (S.D.N.Y. 2005) ("courts routinely discount or entirely disregard the

20  opinions of psychiatrists who had not examined the individual in question at all or for only a

21  limited time"); *Westphal v. Eastman Kodak Co*., 2006 U.S. Dist. LEXIS 41494, *12-17

22  (W.D.N.Y. 2006) ("the opportunity to interview and interact with a psychiatric patient is crucial

23  to the diagnosis" of a mental health disorder).

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 10**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    PBC tries to discredit Mr. Weiss' professional opinion expressed in his August 6, 2015,

2    letter because Mr. Weiss' letter was dated nearly a year after he last treated M.B. PBC's Opp

3    Memo, pp. 8-9. Mr. Weiss treated M.B. on an outpatient basis while M.B. was at Daniels

4    Academy and his opinion was primarily based on his observations and professional judgement

5    from that time. PER_BER000495. The only reference in Mr. Weiss' letter to the time outside

6    M.B's outpatient treatment is when he said: "It is my hope that [M.B.], with a

7    therapeutic/residential level of support, will be able to regain important aspects of his life and

8    return home and mainstream school program." *Id*. If anything, the distance in time arguably gave

9    Mr. Weiss greater objectivity and independence of judgment than if his letter had been written at

10   the same time he was treating M.B.

11    PBC also tries to downplay Mr. Maughan's opinion as reporting M.B.'s "modest

12   progress" by expressing that "[M.B.] has recently started to take accountability and responsibility

13   for his choices." PBC Opp Memo, p. 8. PBC tries to equate M.B.'s taking "accountability and

14   responsibility for his choices rather than assigning blame to external things or people" with

15   "increased participation in treatment…attendance …compliance with treatment

16   recommendations, increased compliance with facility/program rules..," factors that, according to

17   PBC's guidelines, are not considered a clinical progress. *Id*. PBC ignores equally valid and more

18   likely possibility that M.B.'s increased accountability and responsibility are result of the

19   treatment M.B. received at Daniels Academy.

20    In response to PBC's argument that "[a]s an employee of Daniels Academy, Mr.

21   Maughan has an interest in this appeal, PBC Opp Memo, p. 9, Peter B. argued in his Opp Memo,

22   p. 18, that PBC does not distinguish Mr. Maughan's alleged conflict of interest from the conflict

23   of interest of Dr. Robert Small, an employee of PBC signing the March 11, 2015, as well as PBC

1   hiring MRIoA and AMR to perform an external review on PBC's behalf. PRE_BER001378,

2   000037, 000934. In fact, the inquiry into a possible conflict of interest in ERISA claims

3   generally concern actions of a plan administrator. Even under an abuse of discretion standard

4   "[a] court may weigh a conflict more heavily if, for example, the administrator provides

5   inconsistent reasons for denial." *Abatie* at 968.

6         Finally, the point PBC tries to make with its counter analysis of *Harlick v. Blue Shield of*

7   *California*, 686 F.3d 699 (9th Cir. 2012) at pp. of its Opp Memo is unclear. In his Opening

8   Memo, p. 15, Peter B. relies on *Harlick* for the proposition "that 'residential care' has a fairly

9   well-established meaning in the context of the treatment of mental illness," as a non-hospital,

10  inpatient care. PBC on the other hand, argues that "the residential treatment center at issue in

11  *Harlick*, provided the claimant urgently needed medical care in response to her doctors'

12  recommendations," and that this was "[i]n contrast to the boarding school experience provided to

13  M.B. while he was in a relatively stable, sub-acute condition by Daniels Academy- which had

14  not been referred to M.B. by his doctors." PBC Opp Memo, p. 10. But the point of *Harlick* is

15  that, regardless of the specific nature of the patient's condition and needs in that case, the case

16  supports the proposition that residential treatment is a sub-acute inpatient level of care for mental

17  health conditions.

18        Contrary to PBC's claim that Daniels Academy is merely a boarding school, that facility

19  is registered as a licensed residential treatment center where charges are as for medical services,

20  not boarding school tuition. https://hslic.utah.gov/db-search/?id=14845 (last checked

21  10/14/2017). PBC's argument rests on two premises that are flawed: because M.B. did not

22  require urgent care and his doctors did not recommend residential treatment his treatment at

23  Daniels Academy was not medically necessary. This is a novel rationale for the denial and is

PLAINTIFF'S REPLY IN SUPPORT OF – Page 12
MOTION FOR SUMMARY JUDGMENT
Case No. 2:16-cv-01904 JCC

THE WOOD LAW FIRM, PLLC
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1  hard to reconcile with the Plan differentiating between acute and residential levels of mental

2  health care providing corresponding admission and continued stay criteria for each of levels.

3  PRE_BER000743-744, PRE_BER000744-746, PRE_BER000140-144. It is also in contrast to

4  M.B.s medical record where all three of his therapists, Mr. Peter Weiss, Dr. Steve Debois from

5  Second Nature and Mr. Douglas Maughan from Daniels Academy, recommended residential

6  treatment for M.B. PRE_BER001278, PRE_BER000278-281, PRE_BER000492.

7      **B.    PBC's Conflicting Rationales for the Denial of Benefits Based on Different**
8           **Criteria  Cannot Constitute an Agreement that M.B.'s Treatment was not**
9           **Medically Necessary.**
10
11      PBC's contention that "the Court should give no weight to the opinions of the only two

12  expert opinions in the record supporting Plaintiff's case," PBC Opp Memo, p. 11, misstates

13  M.B.'s treatment history and the Record before this Court. PBC never explains why this Court

14  should ignore treatment records compiled in the course of his care at Daniels Academy. First,

15  considering only the opinions of Mr. Weiss and Mr. Maughan ignores the opinion of the

16  individual whose opinion about the medical necessity of M.B.'s treatment at Daniels Academy

17  was, perhaps, most probative: Dr. DeBois. Beyond that, the argument that the opinions of Mr.

18  Weiss and Mr. Maughan "are contradicted by the opinions in the record of two independent

19  psychiatrists" could only be seriously entertained if PBC's "independent psychiatrists" indeed

20  agreed based on the same rationale and criteria. But their opinions differ in their rationale and

21  apply different criteria for medical necessity for M.B.'s treatment.

22      As Peter B. pointed out, *supra* pp. 9-10, in ERISA claims, regardless of the standard of

23  review, the court reviews the record that was before the plan administrator. ERISA claims are

24  generally brought because there is a disagreement on the availability of benefits based differing

25  opinions whether there was a medical necessity for the treatment in question. The line of PBC's

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 13**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    reasoning that "[s]ummary judgment is improper where there is a conflict between expert

2    opinions," suggests that summary judgments in ERISA cases would be precluded because there

3    is always "a conflict between expert opinions." PBC Opp Memo, p. 11. To support this novel

4    proposition as it applies to ERISA benefit recovery actions, PBC cites two patent cases *Hodosh*

5    *v. Block Drug Co*., 786 F.2d 1136, 1143 (Fed. Cir. 1986) and *Hilgraeve Corp. v. McAffee*

6    *Assocs*., 224 F.3d 1349, 1353 (Fed. Cir. 2000). Neither case discusses ERISA claims.

7         In fact, a number of Circuits hold that when dealing with ERISA benefit denial cases,

8    "summary judgment is merely a vehicle for deciding the case; the factual determination of

9    eligibility for benefits is decided solely on the administrative record, and 'the non-moving party

10   is not entitled to the usual inferences in its favor.'" *Gilliam v. Nev. Power Co*., 488 F.3d 1189,

11   1192, n.3 (9th Cir. 2007) (quoting *Bard v. Boston Shipping Association*, 471 F.3d 229, 235 (1st

12   Cir. 2006)); *LaAsmar v. Phelps Dodge Corp. Life AD&D, and Dependent Life Ins. Plan*, 605

13   F.3d 789, 796 (10th Cir. 2010) (same).

14        *Tedesco v. I.B.E.W. Local 1249 Ins. Fund*, 2017 U.S. Dist. LEXIS 133080 (S.D.N.Y.

15   August 21, 2017) is another case PBC cites to support its argument that summary judgment is

16   improper when faced with competing expert opinions in ERISA benefit cases. *Tedesco*

17   specifically provided that "it is inappropriate for a court to grant summary judgment where the

18   resolution of an ERISA benefits dispute entails adopting one medical expert's opinion over

19   another." *Id* *32. *Tedesco* concludes "'[w]hen using *de novo* review, the Court 'stands in the

20   shoes of the original decisionmaker, interprets the terms of the benefits plan, determines the

21   proper diagnostic criteria, reviews the medical evidence, and reaches its own conclusion about

22   whether the plaintiff has shown, by a preponderance of the evidence, that she is entitled to

23   benefits under the plan.'" *Id*. *15 (citing *Tretola v. First Unum Life Ins. Co*., Case No. 13-cv-

1   231, 2015 U.S. Dist. LEXIS 14666, 2015 WL 509288, at *22 (S.D.N.Y. Feb. 6, 2015)). The

2   decision in this case turns on whether PBC's decision to deny coverage for M.B.'s continued

3   residential treatment based on the Plan's criteria and the conflicting rationales PBC provided in

4   each of its denials of benefits was improper. To that point, it is not necessary to weigh

5   conflicting expert opinion.

6           In its Opp Memo, PBC repeats the facts describing the appeal process in which it denied

7   coverage for M.B.'s continued residential treatment, without providing a substantive analysis and

8   response to Peter B.'s argument that PBC's denial was based on shifting rationales. *Id*. at 11-13.

9   Especially troublesome is the lack of response to Peter B.'s argument that a new denial rationale

10  was provided in the final denial letter by Advanced Medical Reviews ("AMR"), an external

11  review organization, based on the Residential Acute Level of Care admission criteria.

12  PER_BER000935-939. Peter B. argued in his Opening Memo that those were the wrong criteria

13  to apply because M.B. was already admitted to Daniels Academy, and the denial of M.B.'s

14  coverage because "M.B. did not have psychosis, hallucinations, delusions and mania"

15  demonstrated that the reviewer either did not understand the difference between acute and sub-

16  acute levels of care or made a mistake in applying the wrong criteria. *Id.* at 18. PBC responds by

17  addressing, as discussed below, whether AMR's action constituted a procedural violation. But

18  PBC never satisfactorily responds to Peter B.'s substantive argument that AMR utilized the

19  wrong criteria in evaluating M.B.'s claim.

20          **C.      PBC's Violations of ERISA Claim Procedures Call for Reversal of the Denial**
21                  **of Coverage.**
22
23          PBC fails to respond in a meaningful way to Peter B.'s argument that PBC engaged in

24  ERISA claim procedures violations when it did not address Peter B.'s arguments and information

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 15**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1   he included in his appeals.  Peter B.'s Opening Memo, pp. 19-21. PBC claims that "this assertion

2   is unsupported by the evidence," completely failing to address the fact that PBC was required by

3   ERISA to engage is a meaningful dialogue during the appeal process, respond to Peter B.'s

4   questions, and take into account the information he presented. *Booton v. Lockheed Medical*

5   *Benefit Plan,* 110 F.3d 1461, 1463 (9th Cir. 1997). Instead, PBC insists that it relied on its policy

6   and criteria and that "[t]o the extent that the rationale used  by [AMR] diverged from that of

7   [PBC's] internal reviews- which it did not in any significant way – that is irrelevant to whether

8   [PBC] administered the ERISA claim consistently, because [AMR] was approved by the state of

9   Washington, and was unaffiliated with [PBC]." PBC's Opposition, pp. 14-15. That assertion

10   revels that PBC conflates the issue of ERISA claim procedures violation with the problem of

11   shifting rationales, which are two different arguments. Besides the fact that PBC did not

12   adequately respond to the former, there is also a problem with PBC addressing the latter

13   argument.

14       While distancing itself from AMR's rationale, PBC defines AMR's decision as "an

15   opinion which was rendered by an entity wholly independent of [PBC]" and that "[AMR's]

16   decision is not [PBC's]. PBC Opp. Memo, p. 14. The question that remains is how PBC is going

17   to reconcile that assertion with its previous argument that two independent psychiatrists agreed

18   that M.B.'s treatment was not medically necessary. Considering all the inconsistences in PBC's

19   arguments, PBC cannot claim that "all three rationales are consistent." *Id*. at 15. Simply asserting

20   that they are is not sufficient.

21       It is also inappropriate for PBC to engage in a discussion and analysis of a criterion that

22   was never mentioned in the appeal process, speculating that M.B. did not make any progress

23   after 30 days of treatment, and therefore should be grateful for the length of treatment PBC

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 16**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    covered. PBC Opp Memo, pp. 15-16. PBC's evidence that M.B. did not improve after first 30

2    days consists in citing the denial rationale expressed in PBC's second denial on October 2, 2015,

3    subsequent to PBC first denial on March 11, 2015, after covering 90 days of treatment.

4        Finally, despite trying to distance itself from AMR's decision, which was based on an

5    application of improper criteria for acute, inpatient treatment, PBC argues "[AMR'] criteria

6    referencing terms such as 'imminent danger to self,' or 'imminent danger to others,' are indeed a

7    part of the relevant residential treatment continued stay criterion." PBC Opp Memo, p. 16. While

8    it is correct that the Plan's Additional Criteria for Psychiatric Residential Treatment Admission

9    contain a requirement of "continued repetitive harm to self or others or active harm to self or

10   others," for the admission to residential treatment, there is no requirement that there be

11   "imminent danger," to self or others. PRE_BER000744. The presence of danger of harm to self

12   or other is not the same as presence of imminent danger to self or others.   The requirement of

13   imminent risk to self or others is in fact part of the Plan's acute criteria for inpatient admission.

14                                  **CONCLUSION**

15       The standard of review in this case is *de novo*. The Record reflects that treatment at

16   Daniels Academy was medically necessary and satisfied the Plan criteria for coverage. The

17   individuals in the best position to evaluate M.B.'s care were those individuals who had and were

18   treating him immediately before and at Daniels Academy. PBC's constantly shifting reasons for

19   denial of the claim demonstrate that it was acting in an adversarial manner. The reasons PBC and

20   its reviewers gave for denying M.B.'s claim are inconsistent both with the Plan's medical

21   necessity criteria and with each other. It is appropriate for this Court to reverse PBC's denial of

22   coverage for his son's residential treatment, order payment of the claims and Daniels Academy,

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 17**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)

1    and order payment of prejudgment interest and Peter B.'s attorney fees and costs under 29

2    U.S.C. § 1132(g).

3          Dated this 16th day of October, 2017.

4

5                    /s/ Brian S. King
6                    Brian S. King (admitted *pro hac vice*)
7                    BRIAN S. KING, P.C.
8                    336 South 300 East, Suite 200
9                    Salt Lake City, UT 84111
10                   (801) 532-1739 (telephone)
11                   (801) 560-0769 (cell)
12                   brian@briansking.com

13

14                   John Walker Wood (WSBA #39120)
15                   The Wood Law Firm, PLLC
16                   800 5th Avenue, Suite 4100
17                   Seattle, WA 98104
18                   (206) 447-1342 (telephone)
19                   (206) 650-0765 (cell)
20                   (206) 577-5380 (facsimile)
21                   john@woodfirm.com

22                   Attorneys for Plaintiff

23

24

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 16th day of October 2017, the foregoing document was presented to the Clerk of the Court for filing and unloading to the CM/ECF system. In accordance with the ECF registration agreement and the Court's rules, the Clerk of the Court will send email notification of such filing to the following:

Gwendolyn C. Payton
Kilpatrick Townsend & Stockton LLP
Suite 3700, 1420 Fifth Avenue
Seattle, WA 98101
(206) 626-7714
(206) 299-0414
GPayton@kilpatricktownsend.com

Dated this 16th day of October 2017.

/s/ John Walker Wood
John Walker Wood, WSBA #39120
The Wood Law Firm, PLLC
800 5th Ave, Ste 4100
Seattle, WA 98104
(206) 650-0765
(206) 577-5380 (fax)
john@woodfirm.com

**PLAINTIFF'S REPLY IN SUPPORT OF – Page 19**
**MOTION FOR SUMMARY JUDGMENT**
Case No. 2:16-cv-01904 JCC

**THE WOOD LAW FIRM, PLLC**
800 Fifth Avenue, Suite 4100
Seattle, WA 98104
206-447-1342; 206-577-5380 (fax)