UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER B., individually and as guardian of M.B., a minor,<br><br>                    Plaintiff,<br>     v.<br><br>PREMERA BLUE CROSS, *et al.*,<br><br>                    Defendants. | CASE NO. C16-1904-JCC<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 37) and Plaintiff's cross-motion for summary judgment (Dkt. No. 42). Having thoroughly considered the parties' briefing, the relevant record, and finding oral argument unnecessary, the Court hereby GRANTS Defendants' motion for summary judgment (Dkt. No. 37) and DENIES Plaintiff's cross-motion for summary judgment (Dkt. No. 42) for the reasons explained herein.

**I.    BACKGROUND**

Plaintiff brings this cause of action against his employer, Microsoft Corporation; its employee welfare plan ("Plan"); and the Plan Administrator, Premera Blue Cross (collectively "Defendants"). (Dkt. No. 2.) Plaintiff asserts Defendants breached the terms of the Plan and violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, when they failed to pay for continued sub-acute psychological residential treatment for Plaintiff's

dependent son, M.B., and failed to provide a full and fair review of their denial decision. (*Id*. at 8–9.)

M.B. was diagnosed with Asperger's Disorder, Obsessive Compulsive Disorder, Persistent Depressive Disorder, and impaired social functioning. (Dkt. No. 2 at 6.) On the advice of mental health professionals, Plaintiff admitted M.B. to Daniels Academy ("Daniels"), a sub-acute psychological residential treatment facility, on January 1, 2015. (Dkt. No. 2 at 6.) Premera made payment to Daniels under the Plan for services rendered from January 1 through March 11, 2015. (Dkt. No. 2 at 6.) Premera then informed Plaintiff it would make no further payment to Daniels because further treatment at Daniels would not meet Plan requirements as being "medically necessary." (Dkt. No. 39-2 at 2.)

Plaintiff internally appealed Premera's decision. (Dkt. No. 2 at 6.) Premera denied the appeal, issuing its final determination on October 2, 2015. (Dkt. No. 39-3 at 15.) On January 28, 2016, Plaintiff informed Premera that he wished to avail himself of external review by an Independent Review Organization ("IRO"), as mandated by Revised Code of Washington Section 48.43.535. (Dkt. Nos. 2 at 7, 42 at 19.) Paul Hartman, M.D., performed the review, issuing findings on February 12, 2016. (Dkt. No. 39-3 at 27.) He concluded M.B. did not have an acute condition requiring residential care and therefore continued residential treatment was not "medically necessary." (*Id*. at 25–26.)

Following IRO review, Plaintiff brought suit against Defendants for Plan and ERISA violations with the District Court for the District of Utah, who transferred the case to this Court. (Dkt. No. 12.) Plaintiff and Defendant now move for summary judgment (Dkt. Nos. 37, 42).

## II. DISCUSSION

### A. Legal Standard

ERISA, 29 U.S.C. § 1132(a)(1)(B), provides an employee a cause of action for the improper denial of benefits under an employee welfare plan. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 956 (9th Cir. 2016). The Court, in reviewing the administrative record for a

plan administrator's denial decision, applies a *de novo* standard of review "unless the plan provides to the contrary." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants the administrator "discretionary authority to determine eligibility for benefits," the administrator's decision is reviewed for an abuse of discretion. *Id.* Whether an administrator abused its discretion is a question of law, not fact. *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009). A motion for summary judgment is "the conduit to bring [that] legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Plaintiff and Defendants disagree on what standard of review applies. (Dkt. Nos. 37 at 9, 42 at 11.) Based on the the Plan Instrument (Dkt. No. 48-1), the Summary Plan Description (Dkt. No. 48-2), and the Master Administrative Services Contract between Microsoft and Premera (Dkt. No. 39-1), the Court concludes that the administrative record should be reviewed for an abuse of discretion. Premera, acting as Plan Administrator on Microsoft's behalf, possesses sufficient discretionary authority under the Plan.[1]

Plaintiff contends *de novo* review should apply because the Court cannot consider the Plan's governing documents, as they are not part of the administrative record. (Dkt. No. 42 at 12.) This assertion is untenable and unsupported by legal authority. An administrative record

---

[1] *See* (Dkt. No. 48-1 at 15) (the Plan Administrator possesses "sole discretionary authority to . . . determine eligibility for an amount of benefits for any Participant" and to "delegate and allocate, specific responsibilities, obligations and duties imposed by the Plan, to . . . persons as the Plan Administrator deems appropriate."); (*id.* at 15–16) ("Any interpretation or construction of or action by the Plan Administrator with respect to the Plan and its administration shall be conclusive."); (*id.* at 16) ("Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them.); (Dkt. No. 48-2 at 20) (the Plan Administrator "has the exclusive responsibility and complete discretionary authority to control the operation and administration of this plan . . . including, but not limited to, the power to construe and interpret the terms of this summary plan description and any other plan documentation."); (Dkt. No. 39-1 at 5) ("The Plan Sponsor shall have final discretionary authority to determine eligibility for benefits and the amount to be paid by the benefit program(s).").

includes all facts known to a plan administrator at the time of the administrator's decision. *See, e.g.*, *Jones v. Aetna U.S. Healthcare*, 136 F. Supp. 2d 1122, 1132 (C.D. Cal. 2001); *Helton v. AT & T Inc.*, 709 F.3d 343, 352 (4th Cir. 2013); *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989). The Plan's governing documents surely represented facts know to Premera. Without them it would have been unable to make benefit determinations consistent with Plan standards.

Plaintiff also contends that *de novo* review should apply because IRO review is an option mandated by state law, *see* Wash. Rev. Code § 48.43.535, and therefore Washington has effectively removed the Plan Administrator's discretionary authority. (Dkt. No. 44 at 9) (citing *K.F. ex rel. Fry v. Regence Blueshield*, C08-0890-RSL, slip op., at *2 (W.D. Wash. Sept. 10, 2008)). This Court does not find Plaintiff's argument persuasive in light of *Yox v. Providence Health Plan*, 659 Fed. Appx. 941, 943–44 (9th Cir. 2016) (reviewing a plan administrator's benefit denial decision for an abuse of discretion, despite the existence of a comparable IRO review mandate).

Normally, the standard for an abuse of discretion is high. A plan administrator abuses its discretion when its decision is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir 2011). However, where a plan administrator is also the insurer, as is the case here, a more searching analysis is required. *Id.* at 674. The Court must consider case-specific factors such as "the administrator's conflict of interest," the "quality and quantity of medical evidence," and whether "the administrator provided its independent experts with all of the relevant evidence." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008)) (internal quotations marks omitted). A court must make "something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a

particular set of medical and other records." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006).

### B. Premera's Coverage Determination

Plaintiff contends that Premera's denial of coverage is not supported by the terms of the Plan, and that by giving shifting rationales for denying coverage, Premera's decision was arbitrary and capricious. (Dkt. No. 42 at 13, 16.) Defendants counter that Premera's coverage decision was consistent with Plan requirements and that no evidence of shifting rationales for denying coverage exists. (Dkt. No. 43 at 4, 5, 13.) The Court agrees with Defendants.

#### 1. Consistency with Plan Requirements

Premera approved payment under the Plan for M.B.'s treatment at Daniels from January 1 through March 11, 2015. (Dkt. No. 2 at 6.) At that point, Premera did not approve further payment to Daniels because it deemed residential treatment no longer "medically necessary." (Dkt. No 39-2 at 2.) The Plan only covers "medically necessary" treatment. (Dkt. No. 38-1 at 44.) Treatment is "medically necessary" if it produces sufficient evidence to "draw conclusions about the positive effect of the health intervention on health outcome." (*Id.* at 46.)

In its March 11, 2015 initial benefit determination letter, Premera explained that for M.B.'s residential psychological treatment to be "medically necessary," it must also meet the Plan's requirements for short-term residential psychological stabilization treatment, consistent with policy number 3.01.508 (Dkt. No. 39-2 at 2.) According to policy number 3.01.508, Behavioral Health: Psychiatric Residential Treatment, "medically necessary" stabilization treatment is "generally considered to be [care of] 90 days or less, or up to 150 days for clinically extenuating cases." (Dkt. No. 38-1 at 48.) Premera noted in its benefit determination letter that M.B.'s "stay [at Daniels] is expected to be 14 months." (Dkt. No. 39-2 at 2.) On its face, Premera's initial benefit determination was consistent with Plan requirements.

On September 3, 2015, Plaintiff notified Premera that he wished to appeal the initial benefit decision. (Dkt. No. 2 at 6.) In support of his appeal, Plaintiff provided a detailed history

of M.B.'s development and behavior issues (Dkt. No. 42 at 8); a letter from Peter Weiss, MA, LMHC, who treated M.B. for a nine-month period ending in September 2014, indicating that M.B. needed "more support and intensive care than he could receive in an outpatient setting" (Dkt. No. 39-3 at 5); notes from Steve Debois, Ph.D., who treated M.B. at a 90 day wilderness program from September 30, 2014 to January 1, 2015, indicating that "if any log-term [sic] gains are to be made [from the treatment he received at the wilderness program], [M.B.] must be in a residential treatment setting" (Dkt. No. 44 at 11) (quoting pre-litigation record PRE_BER000280); and a letter from Douglas Maughan, LCMHC, who treated M.B. during his stay at Daniels beginning on January 1, 2015 (Dkt. No. 39-3 at 2). Maughan's letter, dated August 11, 2015,[2] recommended that M.B.'s treatment at a residential level of care be continued. (*Id*. at 3.)

Under policy number 3.01.508, for continued indefinite residential treatment to be medically necessary, the patient must have "impaired functioning . . . that requires 24/7 containment and treatment" with "observable clinical progress" within "thirty days." (Dkt. No. 38-1 at 49.) Increased "participation in treatment . . . discussion of problems or issues . . . insight . . . working on past or present issues . . . *are not* to be considered to be clinical progress in the absence of symptom reduction, functional improvement, or improvement in behavioral control." (*Id*.) (emphasis added).

As part of the internal appeal process, Premera engaged an independent physician, William Holmes M.D., to review the case and opine on whether continued residential care was "medically necessary" for M.B., as defined by the Plan. (Dkt. Nos. 37 at 7, 39-3 at 8). Dr. Holmes concluded that residential care was not "medically necessary" because "[t]here is no

---

[2] Plaintiff provided Premera a second letter from Maughan, dated January 23, 2016, for purposes of the IRO review. (Dkt. Nos. 44 at 14, 49 at 8–9) (citing pre-litigation record PRE_BER000692–93). But Premera would not have seen this letter prior to making its final benefit determination on October 2, 2015. (Dkt. No. 39-3 at 15.) Therefore, it is not relevant in considering whether Premera abused its discretion in making a final benefit determination.

evidence of consistent improvement with the use of [sic] residential treatment center, and there is no clear idea when improvement might occur." (Dkt. No. 39-3 at 9.) According to Dr. Holmes, while "[t]he patient is in need of chronic treatment . . . this does not need to take place in the residential treatment setting." (*Id*. at 11.) He also noted that "ongoing problems in the residential setting makes it clear that the patient is not displaying the continued improvement from residential treatment . . . [t]he patient's ongoing level of difficulty reveals the relative lack of benefit from the residential setting." (*Id*. at 10.)

Perhaps the most relevant piece of the record is Maughan's August 11, 2015 letter. He indicates that M.B. had achieved what Maughan described as the first clinical treatment step—taking "accountability and responsibility for his choices rather than assigning blame to external things or people." (Dkt. No. 39-3 at 3.) But he also indicates that M.B. "continues to struggle daily and engages in continual boundary testing, pushing and crossing . . . [M.B.] consistently needs redirection and teaching around healthy and appropriate choices and spends an inordinate amount of time with these two precautions . . . ." (*Id*.) Furthermore the "observable clinical progress" Maughan describes in his letter lacks an "absence of symptom reduction, functional improvement, or improvement in behavioral control"—a requirement under policy number 3.01.508 for continued residential treatment. (Dkt. No. 38-1 at 49.)

Dr. Hartman's IRO review, while occurring after Premera's final benefit determination, is informative. Dr. Hartman reviewed 137 documents related to M.B.'s case. (Dkt No. 39-3 at 22–23.) Based on these documents, Dr. Hartman concluded that further residential care was "not medically necessary" because M.B.'s condition has "stabilized to a baseline behavioral state" and his "clinical status as documented did not indicate the necessity for 24 hour care." (*Id*. at 25–26.)

On this basis, the Court finds that Premera's final benefit decision, dated October 2, 2017 (Dkt. No. 39-3 at 15), was consistent with Plan requirements.

//

2.   Shifting Rationales

Another factor in determining if Premera abused its discretion is whether it shifted its grounds for denial. *Salomaa*, 642 F.3d at 679. Doing so would "preclude the participant 'from responding to that rational for denial at the administrative level,' and insulate the rationale from administrative review." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 963 (9th Cir. 2014) (quoting *Abatie*, 458 F.3d at 974). Plaintiff asserts that each time Premera notified him of its coverage determination, Premera asserted a "different rational for why M.B.'s residential treatment . . . was not medically necessary." (Dkt. No. 42 at 17.) The Court disagrees.

Premera's initial benefit determination was based on what the Plan requires for medically-necessary short-term residential stabilization treatment—a duration less than 150 days. (Dkt. No. 39-2 at 2.) Premera's final benefit determination was based on what the Plan requires for medically-necessary indefinite residential treatment—clinical progress within a thirty day period. (Dkt. No. 39-3 at 15.) These are not shifting rationales. Both relate to the same issue: whether residential treatment was medically necessary under policy number 3.01.508. (Dkt. No. 38-1 at 48–49.) Any change in rationale was reasonable, reflecting changed circumstances implicating a different section of policy number 3.01.508. As M.B. continued treatment at Daniels, more information became available for a final benefit determination—much of it provided by Plaintiff. (Dkt. No. 2 at 8.) Maughan's August 11, 2015 letter is particularly instructive. It gives no timeline when clinical progress will be made, other than to indicate that M.B. will "soon start making choices that will diminish the need for correction." (Dkt. No. 39-3 at 3.) This is not consistent with the 30-day requirement for clinical progress provided by policy number 3.01.508.

The Court finds as follows: Premera's coverage determinations were consistent with Plan requirements, Premera relied on the advice of an independent physician in making its final coverage decision, there is no evidence of shifting rationales, and the IRO review validated Premera's final benefit determination. On this basis, the Court sees no indication that Premera's

potential conflict of interest resulted in an abuse of discretion.

## C. ERISA CONSIDERATIONS

Under ERISA, Plaintiff was entitled to a notice of denial "setting forth the specific reasons for such denial, written in a manner calculated to be understood" by Plaintiff, and a "reasonable opportunity . . . for a full and fair review by the . . . fiduciary of the decision denying the claim." 29 U.S.C. § 1133. Plaintiff claims that Premera violated ERISA when it used shifting rationales to deny coverage, failed to respond to information provided during the internal appeal, and did not provide an adequate explanation of the basis for its final benefit determination. (Dkt. No. 42 at 19.) The Court has already addressed the shifting rationale issue, *see supra* Part II.B.2., and disagrees with Plaintiff's characterization of Premera's communications.

Premera notified Plaintiff of its initial benefit determination on March 11, 2015. (Dkt. No. 39-2 at 2.) That notification indicated the basis of its denial—that the extended anticipated term of M.B.'s residential treatment precluded a finding of medical necessity under the Plan's short-term stabilization guidelines, as provided by policy number 3.01.508. (*Id*.) It further indicated that it made this decision based upon a review of information provided by Daniels. (*Id*.) Following an internal appeal at Plaintiff's request, Premera then notified Plaintiff of its final benefit determination on October 2, 2015. (Dkt. No. 39-3 at 15.) The notification also indicated the basis of its denial—a lack of clinical improvement precluded a finding of medical necessity under the Plan's guidelines for continued coverage, as provided by policy number 3.01.508. (*Id*.) Premera included a copy of the external reviewer's report with its final determination correspondence to Plaintiff. (*Id*. at 18.) The reviewer's report, in turn, indicated that his findings were based on the information Plaintiff provided to Premera, M.B.'s medical records, and Plan guidelines. (*Id*. at 7.)

On this basis, the Court finds that Premera adequately considered the information Plaintiff submitted and adequately explained its benefit determinations to Plaintiff. The Court sees no basis to conclude Premera violated ERISA.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (Dkt. No. 37) and DENIES Plaintiff's cross-motion for summary judgment (Dkt. No. 42). Plaintiff's claims are dismissed with prejudice. The Clerk is DIRECTED to close this case.

DATED this 26th day of October 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE